**Substitute FORM 12. Informal Opening Brief (District Court, Court of International Trade, and Court of Federal Claims)**

**Substitute Form 12
(pg. 1 of 2)**

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## INFORMAL BRIEF OF APPELLANT

**Case Number:** 26-1167

**Short Case Caption:** Nesarikar v. PTO

**Name of Appellant:** ASHLESHA A. NESARIKAR, ANIKA A. NESARIKAR, and ABHIJIT R. NESARIKAR

1. Have you ever had another case before this court? ☐ Yes ☒ No

   If yes, state the name and number of each case.

2. Did the trial court incorrectly decide or fail to take into account any facts? ☒ Yes ☐ No

   If yes, what facts?

   [For the Glossary of Abbreviations, see Addendum A at AA063.]
      Order (DC 36. Appx0001-0006) lacks any reference to USPTO's pernicious actions shown in Inventors' Complaint and exhibits (e.g., Notice of Payment Deficiency). Order's determination of lack of standing without express and reasoned analysis of the pernicious actions, the Complaint, and the evidence is in error.
      Order failed to take into account Inventors' patent applications other than '288, including '382 and '555. See attachment, including sections VI and VII.d.

3. Did the trial court apply the wrong law? ☒ Yes ☐ No

   If yes, what law should be applied?

      The district court's grant of USPTO's motion to dismiss was not in accordance with law and denied Inventors due process. See attachment, including sections II-IX. Also see arguments regarding *Perttu* in attachment.

4. Did the trial court fail to consider important grounds for relief? ☒ Yes ☐ No

   If yes, what grounds?

      See attachment, including section I.

5.  Are  there other reasons why the trial court's decision was wrong?

[x] Yes  [ ] No

If yes, what reasons?

> The district court disregarded Inventors' questions posed in objection to Report ("Report and recommendation of U.S. magistrate judge" by Magistrate Judge John D. Love of the district court on 08/01/2025) (DC 34, pg. 8-9. Appx0431-0432). These are issues of public interest, and disregarding them casts doubt on the constitutional patent rights of inventors.

6.  What action do you want this court to take in this case?

> Inventors respectfully request that CAFC, on *de novo* review and in a precedential decision: find that Inventors have standing and that the district court has subject matter jurisdiction, reverse Order (the district court order of US District Judge J. Campbell Barker), and grant the motion for preliminary injunction (DC 2. Appx0097-0104).
>
> Further, Inventors respectfully request CAFC find that USPTO's interpretations of 37 CFR 1.29(b) warrant no deference in their agency actions and the district court case; see attachment, including section III. Determination of both jurisdiction and merits of the district court case depend at least on the congressional intent of 35 USC 123 - Micro entity defined, including 35 USC 123(b).

Respectfully submitted,

_____          _____          _____

Ashlesha A. Nesarikar            Anika A. Nesarikar               Abhijit R. Nesarikar
8025 Ambiance Way                8025 Ambiance Way                8025 Ambiance Way
Plano, Texas 75024               Plano, Texas 75024               Plano, Texas 75024
469-371-4983                     469-371-4983                     469-371-4983
asedt0425@icloud.com             anedt0425@icloud.com             edt0425@nesarikar.com

Date: November 21, 2025                                           Inventors and Appellants

# I      Introduction

If CAFC were to affirm Order[1,2] (DC 36. Appx0001-0006), it would outright deny an inventor her constitutional patent rights if she were ever employed; she could only establish ownership by presenting all her past employment agreements in a court because USPTO avoids such ownership determinations for inventors. Patent infringers, including foreign entities, would have a foolproof defense without an evidentiary burden, patents would lose value, and our revered patent law and system would be rendered meaningless. An affirmance would irreversibly harm U.S. national priorities, particularly in the field of Inventors' applications, artificial intelligence.

Inventors respectfully appeal Order as erroneous as it violated law, contradicted precedence, and disregarded evidence (at least, e.g., Ex. A, Ex. G, DC 28, and Ex. J. Appx0024, Appx0235, Appx0304, Appx0308). Inventors remain owners of their applications until express transfer of ownership by assignment, per *Roche*[3] ("In most circumstances, an inventor must expressly grant his rights in an invention to his employer if the employer is to obtain those rights.").

---

[1]    Addendum A at AA065 contains a Table of Contents for Inventors' Brief. Addendum A at AA063 contains a Glossary of Abbreviations.

[2]    Order identifies a defendant as Coke Morgan "Steward". Inventors treat this as reference to Coke Morgan Stewart, who was sued in her official capacity as Acting Director of the USPTO.

[3]    *Board of Trustees of the Leland Stanford Junior Univ. v. Roche Molecular Systems, Inc*., 563 U.S. 776 (2011)

Congress intended "has assigned" and "is under an obligation to assign" to convey distinct meanings. Congress codified the distinction in 35 USC 123(b), stating: "... if the applicant has assigned, or is under an obligation by contract or law to assign…" (AA001). USPTO's pernicious agency actions against Inventors arise at least from USPTO's violation of 35 USC 123. USPTO's dismissal argument further violates 35 USC 123 and hinges on misdirection—obscuring the distinction and the context in which Inventors' statement of being under an obligation to assign arose (DC 1-1, pg. 25 and 47. Appx0048, Appx0070). Order failed to recover from the misdirection, undermining the congressional intent of 35 USC 123 and inventors' ownership rights under established patent law.

USPTO attempted to cover up pernicious illegal actions against Inventors by speculating in the district court that Inventors do not own Inventors' own patent applications. USPTO's pernicious illegal actions include, among others:

**1.** USPTO made material misrepresentations and disregarded evidence and statements provided by Inventors. USPTO has not denied making the material misrepresentations. For example, USPTO relied on fabricated evidence of an allegedly published patent application (10165455) (DC 1, pg. 9-10. Appx0016-0017). Inventors alerted USPTO to the fabrication. USPTO refused to reconsider (DC 1-1, pg. 18, 49, 54. Appx0041, Appx0072, Appx0077), even when Inventors

presented evidence from USPTO's own records (DC 1-2, pg. 9. Appx0091).

**2.** USPTO misappropriated payments (at least, e.g., in '382) (DC 30, pg. 2; DC 30-3, pg. 2. Appx0323, Appx0381). Over a year ago, under USPTO's threats (including refusing to examine Inventors' applications), excess fees were paid to USPTO. USPTO ignored Inventors' communications about the payments and continues to deny examination. USPTO has not denied the misappropriation.

**3.** USPTO trivialized the assignment of '844 (now U.S. Patent No. 11,741,562) to justify agency actions and district court arguments. USPTO did not deny that the '844 assignment was trivialized. USPTO justified trivializing the assignment because it resulted from small-business employment (DC 32, pg. 4-5; DC 34, pg. 4-5. Appx0403-0404, Appx0427-0428). USPTO is uninformed of small-business operations, including, e.g., under Texas law: a sole proprietor may own a patent arising from her employee, the nature and timing of an assignment may be at the sole discretion of an employer, etc.

**4.** The district court record shows that USPTO decisions in agency actions were inconsistent and non-transparent—exactly who made those decisions and why is unclear (DC 1, pg. 4; DC 1-1, pg. 33; DC 2, pg. 3-5; DC 30, pg. 8 and 14; DC 28, pg. 2-3. Appx0011, Appx0056, Appx0099-0101, Appx0329, Appx0335. Appx0305-0306). USPTO harmed many small inventors (e.g., individual inventors

and small businesses, see Ex. G, Appx0235-0280) and leveraged the impracticality for small inventors to pursue judicial review. USPTO acted against the public interest by violating statute and small inventors' rights.

USPTO has claimed *ad hoc*, retroactive, and indiscriminate authority to undermine previously accepted duly filed assignments and MES certifications, a result of at least USPTO's lack of expertise in small-business operations. In agency actions and the district court, USPTO indicated that small inventors' patent rights are subordinate to those of large entities. For example, USPTO's actions show at least that sole proprietors' rights and assignments as employers under 35 USC 123 are subordinate to those of large companies. However, Congress anticipated and expressly prohibited USPTO from enforcing such *de facto* regulations that harm small inventors in 35 USC 123(e) (e.g., see DC 21, pg. 11; DC 32, pg. 4-5, and 8. Appx0232, Appx0403-0404, Appx0407 ). Surprising small inventors by "the upending of reliance" (*Kisor*[4]) on, among others, recorded assignments and accepted MES certifications—without evidence and without due process—harms trust in USPTO and violates inventors' constitutional rights (see *Bell*[5]). USPTO violated due process rights, 35 USC 123, the APA, rights of Texas employees and their Texas employers, the Paperwork Reduction Act, and the Privacy Act.

---

[4]  *Kisor v. Wilkie*, 588 U.S. ___ (2019)
[5]  *Bell v. Hood*, 327 U.S. 678 (1946)

In the district court, the Complaint urged judicial review of USPTO's pernicious actions made under the guise of, and in violation of, 35 USC 123. USPTO did not answer the Complaint and moved to dismiss based on speculation that violates 35 USC 123. Order erred at least by disregarding 35 USC 123 and unduly deferring to USPTO's speculation, thereby adopting the violations of 35 USC 123 and erroneously precluding determination of merits of the case. Order violated the Supreme Court's mandate in *Perttu*[6]:

> ...we held that this authority [of a district court to dismiss an action for lack of subject matter jurisdiction] "obviously is not unlimited," "lest under the guise of determining jurisdiction the merits of the controversy between the parties be summarily decided without the ordinary incidents of a trial...
>
> [In] "the type of case where the question of jurisdiction is dependent on decision of the merits,"… the district court should have "proceed[ed] to a decision on the merits" rather than resolve the jurisdictional issue at a preliminary stage.

**II      Inventors are the owners of the unassigned patent applications.**

Except in Inventors' district court case, USPTO continues to treat inventors as owners of their patents unless assignments are recorded with USPTO. There is no controversy that Inventors are presumed owners of '288. There is no controversy between the designated assignee and Inventors as the assigners that:

- Inventors, in fulfilling their obligation to assign '844, assigned '844, and '844 is currently owned by the assignee.

---

6   *Perttu v. Richards*, 605 U.S. 460 (2025)

- Inventors currently continue to be under an obligation to assign '288, and '288 is currently owned by Inventors.

Inventors, in good faith, based on 35 USC 123(b), certified MES for applications including '288 under 35 USC 123. USPTO violated 35 USC 123(b) and 35 USC 123(e) in conflating "has assigned" with "is under an obligation to assign" (AA001-002). USPTO's motion to dismiss and Order's FRCP 12(b)(1) dismissal stand on these violations. Order disregards the violation of 35 USC 123(b) and 35 USC 123(e) and errs in dismissing under FRCP 12(b)(1).

Further, Order erred in disregarding the evidence (DC 1-1 pg. 25. Appx0048) of Inventors' original statement of obligation to assign and its context (partially reproduced below; footnotes omitted):

> The Notice of Payment Deficiency dated April 22, 2024 (hereinafter Notice) asserts that "*prima facie* evidence that the submitted certification is in error" has been provided. The assertion is in error. Notice omits 37 CFR 1.29(b) [parroting 35 USC 123(b)], which requires:
>> (b) An applicant, inventor, or joint inventor is not considered to be named on a previously filed application for purposes of paragraph (a)(2) of this section if the applicant, inventor, or joint inventor has assigned, or is under an obligation by contract or law to assign, all ownership rights in the application as the result of the applicant's, inventor's, or joint inventor's previous employment.
> In addition to the forgoing, on and before the filing date of the current application, each of the inventors of the USPTO provisional application No. 63265932 (entitled "Intelligent Awareness and Intent for Autonomous Vehicles", filed December 22, 2021), was obligated to assign the rights in the provisional patent application No. 63265932 and its child applications as a result of each of the inventors' previous employment in the state of Texas.

The child application (e.g., nonprovisional application) numbers are: 18069263, 18069288, 18069382, 18069474, 18069596, 18069721, 18069819, and 18069883, all filed on December 21, 2022.

In addition to the foregoing, see attached [USPTO guidance, Appx0065-0066], which on page 2 states:

> There is no limit on the number of previously-filed patent applications that may be excluded from the "four previously filed application" limit contained in the "gross income" definition for micro entity status on the basis of prior employment.

## III  Order conflates "has assigned" with "is under an obligation to assign", contradicting 35 USC 123(b).

Order notes that Inventors are under an obligation to assign '288. As shown at least in section II, Inventors made the statement of obligation to assign in good faith to respond to USPTO agency actions (DC 1-1, pg. 25. Appx0048). The statement is governed by 35 USC 123(b). Order erroneously disregards 35 USC 123 and misconstrues "is under an obligation to assign" as "has assigned".

Inventors' Complaint shows that USPTO misrepresented at least by equating "is under an obligation to assign" with "has assigned" during its pernicious agency actions in violation of 35 USC 123 (DC 1 # 46; DC 1-1, pg. 18-19. Appx0017-0018, Appx0041-0042). Order unduly relies on Report (DC 33. Appx0416-0423), which is an unduly deferential adoption of the misrepresentation. Order contradicts 35 USC 123(b). Order disregards the agency record (e.g., DC 1-1 pg. 25 and 47. Appx0048, Appx0070) and DC 34 (e.g., objections referencing "the obligation to assign in '288" on pg. 3 and 8. Appx0426, Appx0431), instead

discussing language unsupported by the record, including an erroneous allegation

of "the assignment to their previous employers" in '288 (DC 36, pg. 3. Appx003):

> Plaintiffs have admitted that they are, at a minimum, obligated to assign
> their rights in patent application no. 18/069,288 ... But as the report
> appreciates, an "assignment" of a patent to a previous employer can mean
> one of two things—automatic assignment or a promise to assign the patent
> in the future.[citing *Omni*[7]]. Plaintiffs leave the court to only speculate
> whether the assignment to their previous employers automatically assigned
> the rights to the '288 application or whether they maintained an interest in
> the patents when they filed suit.

Order conflates "has assigned" with "is under an obligation to assign". In 35 USC

123(b), Congress distinguishes "has assigned" from "is under an obligation ...to

assign" (AA001):

> (b) Applications Resulting From Prior Employment.—An applicant is not
> considered to be named on a previously filed application for purposes of
> subsection (a)(2) if the applicant **has assigned**, or **is under an obligation** by
> contract or law **to assign**, all ownership rights in the application as the result
> of the applicant's previous employment. [Emphasis added]

Further, Order misconstrued CAFC in *Omni*. For example, in *Omni*,

CAFC rejected exceptions to "the general rule that rights in an invention belong to

the inventor" in private party agreements:

> …these statutory provisions specify the *initial vesting* of rights in certain
> inventions in the government… These are statutory exceptions to the
> "general rule that rights in an invention belong to the inventor." Id. at 785.
> None of these statutes concerns assignments between private parties.

Inventors' obligations to assign (e.g., '288) and assignment ('844) are between

---

[7]    *Omni MedSci, Inc. v. Apple Inc.*, 7 F.4th 1148, 1152 (Fed. Cir. 2021)

private parties. At least for this reason, Order errs in misconstruing *Omni* to justify the dismissal.

Further, Order disregarded Inventors' objections (DC 34), including:

Inventors established a right to the presumption (Doc. 30, pg. 8-9 and Doc. 32, pg 3-4). Defendants concede that "Plaintiffs are correct that they, as inventors and applicants, are generally presumed to be the owner of an application" (Doc. 31, pg. 4) and rely only on speculation to argue against the presumption. According to Rule 301 of the Federal Rules of Evidence, "...the party against whom a presumption is directed has the burden of producing evidence to rebut the presumption".

Order also disregards Inventors' objection that *Omni* was misconstrued. In *Omni*, to overcome the presumption, Apple alleged an automatic assignment by the inventor to his employer and provided evidence (DC 34, pg. 2-3. Appx0425-0426). The *Omni* court did not entertain dismissal solely based on speculation. While Order acknowledges Inventors directed the presumption against the USPTO to show standing, Order disregards the shift in the "burden of producing evidence" to USPTO, at least by disregarding Federal Rule of Evidence 301 (AA039) over Inventors' objections, violating Inventors' due process (DC 34, pg. 4 and 9. Appx0427, Appx0432). Order does not identify any evidence allegedly produced by USPTO to rebut the presumption. Order does not analyze or explain how or why the presumption is allegedly overcome, instead stating simply "...it is the burden of the party invoking jurisdiction...to establish standing…" (DC 36, pg. 2.

9

Appx0002). Order's generic statement here fails to account for Article I, Section 8, Clause 8 of the Constitution, patent law (e.g., see Inventors' arguments regarding *Roche* in DC 30, pg. 9; DC 32, pg. 3-4; DC 34, pg. 2,3,4,8. Appx0330, Appx0402-0403, Appx0425-0427, Appx0431), and the specific facts of this case (e.g., USPTO admitted to not having evidence of an assignment in '288; see DC 1-1, pg. 13. Appx0036). While Order cites patent case *Omni*, Order summarily adopts Report's misconstruction of *Omni* without addressing Inventors' objections to the misconstruction made throughout DC 34. Order violated Inventors' due process. Further, Order's statement, "plaintiffs have not adequately pleaded that they have sufficient ownership rights of the '288 application" (DC 36., pg. 4. Appx0004), is conclusory and contradicts Article I, Section 8, Clause 8 and Supreme Court precedent presuming inventors own their patents (e.g. *Roche*).

Further, Order's undue reliance on Report, disregard for Inventors' arguments, and disregard for 35 USC 123(b) does not align with Order's own definition of a *de novo* review: "In conducting a *de novo* review, the court examines the entire record and makes an independent assessment" (DC 36, pg. 1. Appx0001). Order unduly defers to USPTO, violating Inventors' due process. Despite USPTO's reliance on 37 CFR 1.29, the regulation parrots at least 35 USC 123(b), and per the Supreme Court's ruling in *Kisor*, the

10

agency…gets no special authority to interpret its own words when, instead of using its expertise and experience to formulate a regulation, it has elected merely to paraphrase the statutory language.

Under *Kisor*, USPTO's interpretation merits no deference as it is a "convenient litigating position or *post hoc* rationalization advanced to defend past agency action against attack" and as "a court may not defer to a new interpretation… that creates unfair surprise to regulated parties" [internal quotes omitted] (e.g., USPTO's new interpretations contradict the '288 Transaction History for 1/12/2023: "Applicant Has Filed a Verified Statement of Micro Entity Status in Compliance with 37 CFR 1.29" and its confirmation in a filing receipt on 1/13/2023; see Appx0355, Appx0379, Appx0009). *Kisor* continues:

> the upending of reliance may happen without such an explicit interpretive change. This Court, for example, recently refused to defer to an interpretation that would have imposed retroactive liability on parties for longstanding conduct that the agency had never before addressed …

Further, USPTO's pernicious actions rely on interpretations that, in contradiction to *Kisor*: were not the official or authoritative position of the agency (e.g., the interpretations contradict USPTO's long-standing public guidance, stating: "There is no limit on the number of previously-filed patent applications that may be excluded from the "four previously filed application" limit"; see DC 1-1. pg. 25 and 43. Appx0048, Appx0066) and do not represent the agency's fair and considered judgment (see the Complaint, e.g., showing misrepresentations, lack of

11

public and vetted procedure, and due process violations). For at least these reasons, under 35 USC 123(b), "is under an obligation to assign" is not "has assigned" as claimed by USPTO and adopted in Report and Order. Being "under an obligation to assign" does not overcome that Inventors are the presumed current owners of '288 (see at least "Inventors' *obligation* to assign in the future does not alter current ownership or… standing" in DC 30, pg. 8-9. Appx0329-0330).

**IV     Order relies on anachronistic fallacy in determining lack of standing.**

Order disregards the timelines of when MES was certified on the basis of being "obligated to assign" (DC 1. pg. 12. Appx0019), and when and if assignments were executed. Order's claim of *de novo* review by examining the entire record does not align with its statement (DC 36, pg. 3. Appx0003):

> Although it is unclear as to whether plaintiffs reference the '288 or '844 application, plaintiffs claim that the assignment's language of "I hereby sell and assign unto Shalaka A. Nesarikar…," does not create an automatic assignment. Id. … the contractual language that plaintiffs cite in their objections shows an automatic assignment...

Order's statement misconstrues Inventors' statements. The misconstruction is at least based on anachronistic fallacy apparent in Order's disregard of "before" in (DC 34, pg. 3. Appx0426):

> There was no "automatic assignment" (as alleged in *Omni*) in '844 **before** the assignment to Shalaka A. Nesarikar, and there is no "automatic assignment" (as alleged in *Omni* or as speculated in Report) in '288. [emphasis added]

12

Relevant timelines of '844 juxtaposed against '288 are provided in the table below for convenience. The juxtaposition indicates ownership of '844 versus '288 on various dates (Appx0090, Appx0354).

| '844 | '288 | Relevant Timeline Event |
|---|---|---|
| 09/20/2022 | 12/21/2022 | Filing or 371(c) date. MES certification filed. |
| **Inventors** | **Inventors** | **Who is the owner on 07/12/2023?** |
| 07/13/2023 | N/A | Date Inventors executed assignment to assignee |
| 07/13/2023 | N/A | Date executed assignment was recorded by USPTO |
| **The assignee** | **Inventors** | **Who is the current owner?** |

Order's conclusion that the '844 assignment "casts further doubt on plaintiffs' standing to assert causes of action for rights associated with the '288 application" is an anachronistic fallacy. Order fails to address Inventors' argument in DC 34, pg. 3 (Appx0426):

> The assignment in '844 and the obligation to assign in '288 result from the same employment (Doc. 1-1, pg. 47, 49, and 13) ...Speculation of "automatic assignment" (as alleged in Omni) in Report constitutes an allegation that the '844 assignment is at least superfluous or invalid.

Further, Order (DC 36, pg. 3. Appx0003) cites partial quotes of Inventors' sentence regarding assignment language in '844 but unduly excludes later in the same sentence the citation to the assignment as available in the court record: "(Doc. 1-2, pg. 7-8)" (Appx0089-0090). That the subject patent application

13

of the official USPTO-recorded assignment was deemed "unclear", in light of at least the undue partial quote, indicates that a review of the record was at least incomplete, including failure to duly evaluate at least the assignment. Further, the alleged lack of clarity also stands on failure to distinguish "is under an obligation to assign" from "has assigned".

Order's anachronistic fallacy, erroneous adoption of the speculation, and allegation of "unclear" evidence relying on disregarding the citation to the evidence, indicate a failure in *de novo* review and violate Inventors' due process.

## V    Order's dismissal stands on violation of 35 USC 123(e).

Order disregarded evidence and arguments that USPTO violated 35 USC 123(e). Order disregarded at least: in DC 21, pg. 11. (Appx0232):

> Congress understands that small businesses and individual inventors lack recourse against an abuse of "broad authority" (Doc. 16 pg. 6 and 12) by the USPTO. Defendants' conclusory assertion of "broad authority to request additional information" in the form of a requirement on an applicant who certified MES (Doc. 16 pg. 6) is false. Instead, Congress required in 35 USC 123(e), regarding additional limits on who may qualify as a micro entity, that "[a]t least 3 months before any limits proposed to be imposed pursuant to this subsection take effect, the Director shall inform the Committee on the Judiciary of the House of Representatives and the Committee on the Judiciary of the Senate of any such proposed limits".

in DC 32, pg. 8 (Appx0407):

> Defendants appear to erroneously assert newly alleged requirements in order "to maintain micro entity status" as "regulations" (Doc. 31, pg 8). Defendants, "under the guise of interpreting a regulation…create *de facto* a new regulation" (*Christensen v. Harris County*, 529 U.S. 576 (2000)).

14

Defendants' alleged "regulations" are unlawful at least under 35 USC
123(e).

and in DC 30, pg. 24 (Appx0345):

Defendants continue to show their actions were and are out of touch with
independent inventors and small businesses, a deficiency that would have
been cured had Defendants exercised the statutorily-mandated practice of
notice, comment, and promulgation of rule-making (e.g., regarding 35 USC
123(f)).
Instead, Defendants violated the rights of independent inventors and small
businesses by strong-arming them for quick concessions that "the [micro
entity] certification was erroneous" (Doc 1-1. pg. 3) using *ad hoc* procedures
and newly-alleged limitations on certifying micro entity status that violate
statute. [footnote omitted]

Order disregards that USPTO's motion to dismiss relies on the violation

of 35 USC 123(e). Order's deference to USPTO contradicts *Kisor* and violates

Inventors' due process. *Kisor* states that an "agency's interpretation must in some

way implicate its substantive expertise, as the basis for deference ebbs when the

subject matter of a dispute is distant from the agency's ordinary duties". USPTO's

statements confirm that it lacks expertise regarding small-business operations.

## VI    Order disregards USPTO's contradictory stances on other applications.

Though Report relies on references to "[Inventors' patent] **applications**"

[emphasis added] to describe the Complaint, Report erroneously refused to

consider the other applications beyond '288 (DC 33, pg. 1-3. Appx0416-0418).

Inventors objected to Report's disregard for the other applications (DC 34, pg. 7.

Appx0430), including at least, e.g.: "The USPTO's record of '288 itself analyzes

15

other applications which Report disregards (e.g., Doc. 1-1, pg. 7-8 and 16)". Order disregarded the objections.

Further, Order disregarded that harm to Inventors in the other applications arises at least from USPTO's actions in '288 (DC 32, pg. 9-10. Appx0408-0409). For example, USPTO acknowledges it alleged a MES-based fee deficiency in 555', but USPTO has neither contested the evidence from USPTO's own official record proving the allegation erroneous (DC 28, pg. 2-3. Appx0305-0306), nor withdrawn the allegation. There is no obligation to assign '555 as a result of Inventors' prior employment. USPTO does not challenge that '555 is owned by Inventors. Order erred in granting USPTO's FRCP 12(b)(1) motion, at least due to the concrete harm to Inventors as owners of '555.

Further, USPTO attempted to leverage the impracticality for small inventors to seek judicial review (see section I). When Inventors sought judicial review in the district court, USPTO retaliated. Order errs in disregarding that USPTO retaliated by adding the Complaint into the USPTO public record of at least '555, publicizing a threat to Inventors' IP (DC 32, pg. 10; DC 32-1, pg. 3-4. Appx0409, Appx0414-0415). Order disregarded DC 32 (Appx0400-0411), including at least, e.g., pg. 10 (Appx0409):

> To evade accountability for the cascading errors and bad-faith arguments (e.g., see Doc. 28), Defendants on the one hand allege "the Court need not

consider [other] applications with respect to the present Motion. Plaintiffs' arguments for those applications being within the scope of the Complaint [does not meet] the pleading requirements of this Court" (Doc. 31, pg. 10) and on the other hand add the Complaint into the prosecution history of '555 (and Inventors' other applications) to justify changing the status of '555 to "Application Involved in Court Proceedings 06/10/2025" (Ex. M, pg. 3 and 4) from "Appeal Brief (or Supplemental Brief) Entered and Forwarded to Examiner 10/19/2024" (Doc. 2-4, pg. 2). The effects flowing from the status change affects the processing of '555, which is in an advanced stage of prosecution.

Order disregarded USPTO's reliance on contradictory stances in justifying the

motion to dismiss under FRCP 12(b)(1).

Further, Order disregards Inventors' argument in DC 30 (e.g., pg. 22-23.

Appx0343-0344):

Defendants claim "Plaintiffs also include reference to Notices of Payment Deficiency in connection with their claims for relief but do not identify those other applications or attach any adverse decisions from which they seek relief"...while concurrently conceding that evidence submitted by Inventors shows "Plaintiffs made reference to Notices of Payment Deficiency entered in connection with other applications, including the '288 application." (Doc. 17, pg. 9). Defendants selectively disregard Inventors' evidence identifying "those other applications" with a Notice of Payment Deficiency (Doc. 1-1, pg. 35, 38, and 39). Further, Defendants do not deny that "those other applications" were subject to "adverse decisions". As custodian of patent records, the USPTO possesses evidence of "those other applications [and] ... adverse decisions from which [Inventors] seek relief".

Evidence in other applications, e.g., of harm arising from USPTO's actions in '288,

shows as indicated in the Complaint: that "[the Notice of Payment Deficiency] and

the USPTO's actions flowing from [it] further harm Inventors" and their "rights

and interests" (DC 1, pg. 14. Appx0021), and that USPTO lacked published and

vetted provisions and processes (DC 2, pg. 2-5; DC 2-4, pg.4; DC 30, pg. 2-4 and

7; DC 30-3, pg. 2. Appx0098-0101, Appx0123, Appx0323-0325, Appx0328,

Appx0381). Accordingly, the Complaint requests relief from harm in other

applications, e.g., by requesting "reversal of Notices of Payment Deficiency... in

Inventors' applications" and "reversal of adverse consequences arising out of the

Notices of Payment Deficiency...". (DC 1, pg. 15-16. Appx0022-0023).

   Order disregards applications other than '288 and Inventors' arguments

for considering the other applications, violating Inventors' due process.

## VII    Inventors request *de novo* review by CAFC.

   Order failed to conduct a *de novo* review of the entire record. Inventors

did not waive the right to *de novo* review. Inventors do not waive their right to a

review of the entire record by CAFC *de novo*[8]. Depriving Inventors of *de novo*

review would violate at least Inventors' due process rights.

## VII.a Order's review was incomplete and erroneous.

   Inventors request *de novo* review in light of repeated indications that the

district court's review was incomplete and erroneous. Order errs in justifying

omissions in review: "plaintiffs' mere speculation that the magistrate judge did not

consider Doc. 21 is not grounds for error" (DC 36, pg. 2. Appx0002). Inventors did

---

[8]    Federal Circuit Rule 30(a)(1)(F)(iii)

not "speculate" about the magistrate judge's thought; Inventors objected to the omissions of Report. Order appears to assure Inventors that the record has been fully reviewed instead of providing analysis that supports the alleged full review.

Further, Order notes that "Plaintiffs first object that the magistrate judge disregarded plaintiffs' sur-reply [DC 32], that was filed the same day the report was published". However, Order merely responds that "the court cannot ascertain" how it would alter Report's conclusions (DC 36, pg. 2. Appx0002). Order characterizes its review as seeking to prove or disprove a foregone conclusion, rather than the *de novo* review alleged on pg.1 of Order. Further, Order omits that DC 32 was filed **before** Report. DC 32 was filed on 8/1/25 at 1:04 PM CDT (AA026). Report was filed, 18 minutes later, on 8/1/25[9] at 1:22 PM CDT (AA028). Inventors' timely-filed arguments in DC 32 in opposition to the motion to dismiss remain unaddressed, violating Inventors' due process rights.

**VII.b Order imposed improper requirements at the pleading stage.**

Congress intended "has assigned" and "is under an obligation to assign" to convey distinct meanings; Congress codified the distinction in 35 USC 123(b), stating: "... if the applicant has assigned, or is under an obligation by contract or law to assign…" (AA001). USPTO's pernicious agency actions against Inventors violated 35 USC 123, including 35 USC 123(b). Inventors opposed and detailed

_____

[9]   8/1/25 was the last day for Inventors to file the sur-reply.

the violation in the Complaint.

There is no evidence of ownership transfer by assignment in '288. Inventors' ownership of '288 and their other unassigned patents is a matter of law. Order speculated that "an obligation to assign" means "has assigned", disregarding the intent of Congress in 35 USC 123(b). Order errs because USPTO, under the guise of challenging jurisdiction, challenged the existence of federal causes of action. Order violates the Supreme Court's mandate in *Perttu* (see section I) and disregards at least the Fifth Circuit's ruling in *Williamson*[10], including:

> Where the defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper course of action for the district court ... is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case.[9] The Supreme Court has made it clear that in that situation no purpose is served by indirectly arguing the merits in the context of federal jurisdiction. Judicial economy is best promoted when the existence of a federal right is directly reached and, where no claim is found to exist, the case is dismissed on the merits. This refusal to treat indirect attacks on the merits as Rule 12(b)(1) motions provides, moreover, a greater level of protection to the plaintiff who in truth is facing a challenge to the validity of his claim...

Inventors' "obligation to assign" statement is governed by 35 USC 123. The Complaint shows that USPTO's pernicious actions violated the congressional intent of 35 USC 123, including regarding "obligation to assign". Order's dismissal under FRCP 12(b)(1) is based on the same violation and disregards the intertwinement of jurisdiction and cause of action. Relying on *Williamson,* the

---

[10]  *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir.1981)

Fifth Circuit in *Montez*[11] ruled:

> ...there is a dispute with respect to a fact that is determinative of both the federal jurisdiction question and the underlying federal cause of action. Because the federal cause of action and federal jurisdiction are interdependent, the district court erred in dismissing the case under Federal Rule of Civil Procedure 12(b)(1)...

Order errs in disregarding the intertwinement of merits of the case and the jurisdictional challenge, particularly after USPTO acknowledged intertwinement (DC 17. pg. 15; DC 31, pg. 3 and 4. Appx0213, Appx0389-0390).

Further, Order cites *Lujan*[12] to justify dismissal, but disregards in *Lujan*:

> … each element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i. e.*, with the manner and degree of evidence required at the successive stages of the litigation… At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we "presum[e] that general allegations embrace those specific facts that are necessary to support the claim." ... And at the final stage, those facts (if controverted) must be "supported adequately by the evidence adduced at trial." *Gladstone, supra*, at 115, n. 31.

Inventors made at least "factual allegations of injury resulting from the defendant's conduct" as required by *Lujan*. Order disregards "the degree of evidence required at the successive stages of the litigation" by disregarding: that USPTO has not answered the Complaint, that the need for judicial determinations—at least, e.g., on congressional intent distinguishing "has assigned" and "is under an obligation

---

11   *Montez v. Department of the Navy*, 392 F.3d 147 (5th Cir. 2004)
12   *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)

to assign"—remains, and that Inventor-submitted evidence is not controverted.

Further, Inventors have maintained that at least '288 is "currently owned by Inventors" (DC 30, pg. 8. Appx0329) based on law and evidence. Even if the district court case were at the "final stage", there has been no evaluation of "evidence [from the USPTO record or discovery] adduced at trial". Order violated Inventors' due process rights.

## VII.c Even if Inventors were not owners, Inventors are still harmed as patent applicants and objects of USPTO's adverse actions.

The Constitution and Congress conferred inventors with the right to apply for and prosecute their patent applications, codified in (AA004, AA007):

Article I, Section 8, Clause 8: "Intellectual Property: To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries"

35 USC 111(a)(1): "Written application.—An application for patent shall be made, or authorized to be made, by the inventor…"

35 USC 116(a): "Joint Inventions.—When an invention is made by two or more persons jointly, they shall apply for patent jointly…".

Filing and prosecuting '288, and the resultant granted patent, would directly contribute to Inventors' professional reputation as AI inventors (DC 8, pg. 1-4; DC 34, pg. 7. Appx0138-0141, Appx0430) (AA044-045). USPTO, through its pernicious agency actions, denied Inventors' right to apply for and prosecute '288

and denied Inventors' right to due process. USPTO now erroneously claims that a federal district court lacks jurisdiction over USPTO's constitutional and due process rights violations.

Denying Inventors' rights conferred by the Constitution and Congress is an "injury in fact" as described in *Lujan*. Order disregards Inventors' objection (DC 34, pg. 5. Appx0428) supported by *Lujan.* USPTO's Notice of Payment Deficiency (e.g., of 04/22/24) and communications (e.g., of 08/08/24 and 10/23/24) (DC 1-1, pg. 2-15. Appx0025-0038), show that USPTO subjected Inventors personally to indiscriminate inquiry spanning "sensitive, proprietary, or nonpublic information regarding Inventors or Inventors' prior employers" (DC 1-1, pg. 19. Appx0042). Order disregards this evidence of harm to Inventors, which is not predicated on Inventors owning '288, but on Inventors' role as "objects" of the agency actions (*Lujan*). USPTO demanded information from Inventors personally, not as the owners, but as the inventors and applicants of at least '288.

**VII.d Order errs in finding no reputational harm to Inventors.**

Order misconstrues "*pro se* applicants" in a patent application. The district court appears to miss that the "*pro se* applicants" are the inventors. Order disregarded case law citations, evidence, and arguments in stating (DC 36, pg. 4. Appx0004):

23

> … the court is unaware of any legal precedent that has found that harm to a person's reputation as a "*pro se* applicant" is enough to constitute a concrete, particularized, and actual or imminent injury.

Order disregards that Inventors argued reputational harm of an inventor based on *Chou*[13] in DC 32 (pg. 9-10. Appx0408-0409) and that CAFC in *Shukh*[14] ruled that reputational loss for an inventor is sufficient for Article III standing (Appx0212).

Order trivializes Inventors' arguments as "general contention" that is "insufficient" but disregards provided evidence (DC 34, pg. 7. Appx0430):

> See for example, "The USPTO is aware that discontinuing examination of an application (e.g., '288) is harmful to Inventor's reputation as *pro se* applicants. The USPTO publicly discredited the *pro se* applicants by unlawfully abandoning patent applications (e.g., '288)" (Doc. 2, pg. 6). Further, Report disregards arguments and evidence in Doc. 32. Report disregards evidence that Inventors' patents, including '288, and reputation are intertwined, e.g., in Doc. 1, Doc. 8, Doc. 30-2 (e.g., pg. 16 indicating '288 is in the field of artificial intelligence), and Doc. 32-1 (with pg. 2 showing industry interest).

USPTO as an institution measures its success by inventors' gains in professional reputation (e.g., increasing marketability in: raising money for startups, employment, industry collaborations, and academic collaborations) from securing U.S. patents for their inventions (AA030-031, AA044-045). A loss of reputation, especially in the fast-moving field of AI, translates into concrete financial harm for inventors (AA044-045). USPTO does not deny that the

---

[13] *Chou v. Univ. of Chicago*, 254 F.3d 1347 (Fed. Cir. 2001)
[14] *Shukh v. Seagate Technology, LLC*, Appeal No. 2014-1406 (Fed. Cir. October 2, 2015)

pernicious agency actions in at least '288 harmed Inventors' reputations. Order disregarded that Inventors provided evidence of harm based on all of Inventors' applications. For example, Inventors have been confidentially prospecting large industrial conglomerates, nationally and internationally, regarding implementing '555 (DC 32, pg. 9. Appx0408). However, harm to Inventors' reputation resulting from USPTO's actions (including in '288—see DC 32, pg. 9. Appx0408) harms Inventors' prospecting efforts. This is even more apparent considering USPTO's cascading errors in '555 (DC 32, pg. 9-10; DC 28, pg. 2-3. Appx0408-0409, Appx0305-0306) arise from USPTO's adverse agency action in '288.

**VII.e  Order erred in disregarding PRA evidence and arguments.**

Order errs in disregarding Inventors' evidence (e.g., Ex. G. Appx0235-0280 ) and arguments regarding the PRA (e.g, 44 USC 3512, AA009-010). Order adopts USPTO's footnoted (DC 17, pg.18. Appx0216) argument ("PRA does not create a private right of action for alleged violations of the act, only a defense to an administrative or judicial enforcement action" in DC 36, pg. 5. Appx0005) while disregarding 44 USC 3512, 5 CFR 1320.6(b)[15], and Inventors' responses to the footnoted argument in DC 21, 30 and 34. See, e.g. (DC 30, pg. 21. Appx0342):

---

[15]  Order contradicts official OMB guidance (AA054-055), which states (AA056): "Litigants may raise [PRA] public protections at any time during an administrative process or judicial action. See 44 U.S.C. § 3512(b); *Center for Auto Safety v. NHTSA,* 244 F.3d 144 (D.C. Cir. 2001)*; Saco River Cellular Inc. v. FCC,* 133 F.3d 25 (D.C. Cir. 1998)".

Defendants assert that a PRA claim requires government administrative action ... and Defendants did take administrative action against at least 10 persons at least, e.g., by issuing the Notice of Payment Deficiency (e.g., Doc. 1-1, pg. 3 and Ex. L, pg. 6). Defendants' allegation that the PRA "is only a defense" ... disregards 44 USC 3512 - Public protection ("The protection provided by this section may be raised in the form of a complete defense, **bar, or otherwise at any time** during the agency administrative process **or judicial action applicable thereto**."). [Emphasis added.]

USPTO did not rebut Inventors' response despite multiple opportunities, effectively conceding to Inventors' response in DC 30. In summarily adopting a conceded argument, Order violated Inventors' due process rights.

Further, Order disregards Inventors' specific objections (DC 34, pg. 5-6. Appx0428-0429) to Report. For example, Inventors disputed Report's interpretation of case law, failure to address Inventors' arguments, and failure to consider specific facts of this case. However, Order repeats Report's conclusion while disregarding Inventors' arguments and explanation of how, in fact: Report's cited case law supports Inventors' PRA argument, and Report enables USPTO's illegal collection of information (DC 34, pg. 5-6. Appx0428-0429). Order disregards all MES-based administrative action USPTO took against Inventors (including DC 1-1 and 1-2; see, e.g., Appx0026-0038, Appx0047, Appx0082, Appx0084-0088) and that Inventors did raise the PRA as a defense, bar, and otherwise (e.g., in requesting relief from USPTO's pernicious actions) to USPTO's administrative actions during judicial action applicable thereto. Further, the

26

inclusion of at least the language "or otherwise" in 44 USC 3512 shows that the

PRA is not limited to "only a defense" as summarily asserted in Order (AA010).

**VII.f  Order violated due process in construing Inventors' Complaint.**

Further, Order errs in alleging that because 5 USC 552a (the Privacy Act)

"cannot be found anywhere on the face of plaintiffs' complaint", that "plaintiffs

failed to plead a claim under § 552a". However, the district court's instructions

(AA032) for *pro se* plaintiffs filing a complaint include "Do not give any legal

arguments or cite cases or statutes" and "Make no legal arguments and do not cite

cases or statutes" (AA036-037). Harm to Inventors from violations of 5 USC 552a

(including, e.g., 5 USC 552a(e), "Agency Requirements" (AA014)) is shown in the

Complaint and accompanying exhibits, e.g, showing that USPTO: lacked

"published and vetted provisions" for its demands for information and lacked

"procedural safeguards, erroneously depriv[ing] Inventors of their rights" (DC 1.

pg. 14. Appx0021); demanded Inventors provide "sensitive, proprietary, or

nonpublic information" in the patent application record, subjecting it to publication

(DC 1-1, pg. 19. Appx0042); and imposed adverse determinations on Inventors,

unlawfully precluding Inventors from MES, including in applications not under an

obligation to assign due to prior employment—based on allegations of personal

information known by USPTO to be erroneous (DC 1, pg. 10; DC 1-1, pg. 19-20,

49 and 54. Appx0017, Appx0042-0043, Appx0072, Appx0077) (see 5 USC 552a, AA011-025).

## VIII   Order disregarded USPTO's overt attempt to subvert judicial review.

In USPTO's agency actions based on 35 USC 123, USPTO concluded that there was no assignment in '288, leaving Inventors as the owners of at least '288. USPTO asserted this stance to exercise pernicious agency actions against Inventors. Later in the district court, USPTO misdirected away from 35 USC 123. To subvert judicial review of the pernicious agency actions, USPTO's motion to dismiss was predicated on a contradictory stance that alleged Inventors do not own '288 due to Inventors' statement regarding the applicability of 35 USC 123(b). Order disregarded the contradiction and failed to recover from the misdirection, violating Inventors' due process rights.

## IX     Order violated FRCP 8(f).

Order, in construing Inventors' pleadings, evidence, and arguments (e.g., see sections VI, VII.d, VII.e, and VII.f), contradicted *Erickson*[16]:

> The Court of Appeals' departure from the liberal pleading standards set forth by Rule 8(a)(2) is more pronounced in this particular case because petitioner has been proceeding, from the litigation's outset, without counsel. A document filed *pro se* is "to be liberally construed," *Estelle*, 429 U. S., at 106, and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," *ibid*. (internal quotation marks omitted). Cf. Fed. Rule Civ. Proc. 8(f) ("All pleadings shall be so construed as to do substantial justice").

---

[16]   *Erickson v. Pardus*, 551 U.S. 89 (2007)