Appeal No. 2026-1167

**IN THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

---

ASHLESHA A. NESARIKAR, ANIKA A. NESARIKAR, ABHIJIT R. NESARIKAR,

Plaintiffs-Appellants,

v.

THE UNITED STATES PATENT AND TRADEMARK OFFICE, JOHN A. SQUIRES, Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office,

Defendants-Appellees.

On Appeal from the United States District Court for the Eastern District of Texas in Case No. 4:25-cv-00423-JCB-JDL, District Judge J. Campbell Barker

---

# BRIEF OF DEFENDANTS-APPELLEES

---

BRETT A. SHUMATE
Assistant Attorney General

SCOTT BOLDEN
Director

PHILIP CHARLES STERNHELL
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, DC 20005
(202) 353-0522

January 23, 2026

## Table Of Contents

STATEMENT OF RELATED CASES .......... 1
STATEMENT OF JURISDICTION .......... 2
INTRODUCTION .......... 3
STATEMENT OF THE ISSUES .......... 6
COUNTER-STATEMENT OF THE CASE .......... 7
I. Patent Prosecution in General .......... 7
II. Micro Entity Status .......... 8
III. Prosecution of the ’288 Application .......... 12
IV. The Nesarikars’ Complaint And Motion .......... 20
V. The Government’s Motion to Dismiss And Opposition .......... 24
VI. The District Court’s Dismissal of the Complaint .......... 26
SUMMARY OF THE ARGUMENT .......... 32
ARGUMENT .......... 35
I. Standard of Review .......... 35
II. The Nesarikars Have Not Established Standing .......... 36
A. Plaintiffs Have the Burden to Establish Standing .......... 36
B. The Nesarikars Have Not Adequately Pleaded an Ownership Interest .......... 38
C. The District Court Did Not Impose an Improper Standard at the Pleading Stage .......... 45
D. The Nesarikars’ Remaining Objections Regarding Ownership Lack Merit .......... 48
E. The Nesarikars Have Not Established a Financial or Reputational Interest to Support Standing .......... 54
F. The Paperwork Reduction Act Does Not Provide Standing .......... 58
III. No Privacy Act Claim Was Adequately Pleaded .......... 60

IV. The Nesarikars' Remaining Arguments on Appeal Are Unavailing ........ 61

V. The Nesarikars' Claimed Relief Is Unsupported and Unavailable........ 67

CONCLUSION ........ 69

## Table Of Authorities

### Cases

*Abraxis Bioscience, Inc. v. Navinta LLC*,
625 F.3d 1359 (Fed. Cir. 2010) .......... 37

*Ad Glob. Fund, LLC v. United States*,
No. 2024-1252, 2025 U.S. App. LEXIS 21491 (Fed. Cir. Aug. 22, 2025) .......... 38

*Alberico v. United States*,
783 F.2d 1024 (Fed. Cir. 1986) .......... 66

*American Mfrs. Mut. Ins. Co. v. Sullivan*,
526 U.S. 40 (1999) .......... 66

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009) .......... 35

*Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*,
563 U.S. 776 (2011) .......... 37, 41

*Beech Aircraft Corp. v. EDO Corp.*,
990 F.2d 1237 (Fed. Cir. 1993) .......... 37

*Breaux v. U.S. Postal Serv.*,
202 F.3d 820 (5th Cir. 2000) .......... 35

*Chapa v. U.S. Dep't of Justice*,
339 F.3d 388 (5th Cir. 2003) .......... 36

*Choice Inc. of Texas v. Greenstein*,
691 F.3d 710 (5th Cir. 2012) .......... 35

*Chou v. Univ. of Chicago*,
254 F.3d 1347 (Fed. Cir. 2001) .......... 56

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) .......... 38

*Cleveland Bd. of Educ. v. Loudermill*,
470 U.S. 532 (1985) .......... 67

*Dep't of Com. v. New York*,
139 S. Ct. 2551 (2019) .......... 47, 69

*Erickson v. Pardus*,
551 U.S. 89 (2007) .......... 60

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
582 F.3d 1288 (Fed. Cir. 2009) .......... 61, 66, 68

*Huster v. j2 Cloud Services, Inc.*,
682 F. App'x 910, 916 (Fed. Cir. 2017) .......... 57

*In re TLI Commc'ns LLC Pat. Litig.*,
823 F.3d 607 (Fed. Cir. 2016) .......... 35

*Kamdem-Ouaffo v. PepsiCo, Inc.*,
657 F. App'x 949, 954 (Fed. Cir. 2016) .......... 57

*King v. United States Postal Serv. Agency*,
No. 25-10442, 2025 WL 2683994 (5th Cir. Sep. 19, 2025) .......... 60

*Kisor v. Wilkie*,
588 U.S. 558 (2019) .......... 62

*Larson v. Correct Craft, Inc.*,
569 F.3d 1319 (Fed. Cir. 2009) .......... 36, 42

*Longoria v. Dretke*,
507 F.3d 898 (5th Cir. 2007) .......... 60

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .......... 36, 38, 55

*Montez v. Department of the Navy*,
392 F.3d 147 (5th Cir. 2004)........................................................45, 47

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983)..............................................................................69

*Omni MedSci, Inc. v. Apple Inc.*,
7 F.4th 1148 (Fed. Cir. 2021) ................................................... passim

*Perttu v. Richards*,
605 U.S. 460 (2025)......................................................................45, 46

*R2 Investments LDC v. Phillips*,
401 F.3d 638 (5th Cir. 2005)...............................................................35

*Shukh v. Seagate Tech., LLC*,
803 F.3d 659 (Fed. Cir. 2015).......................................................55, 56

*Smith v. United States*,
No. 08-10288, 2008 WL 5069783 (5th Cir. Dec. 2, 2008) .....................59

*Springer v. I.R.S. ex rel. U.S.*,
231 F. App'x 793 (10th Cir. 2007) .......................................................59

*Sutton v. Providence St. Joseph Med. Ctr.*,
192 F.3d 826 (9th Cir. 1999)...............................................................59

*Ulead Sys., Inc. v. Lex Comput. & Mgmt. Corp.*,
351 F.3d 1139 (Fed. Cir. 2003)...........................................................10

*Williamson v. Tucker*,
645 F.2d 404 (5th Cir.1981)..........................................................45, 46

*Winfrey v. U.S. Dep't of Com.*,
No. 2024-1260, 2024 WL 4284692 (Fed. Cir. Sep. 25, 2024) .................2

*Wittman v. Personhuballah*,
578 U.S. 539 (2016).............................................................................38

**Statutes**

28 U.S.C. § 1295 .......... 2

28 U.S.C. § 1331 .......... 20

28 U.S.C. § 1361 .......... 20

35 U.S.C. § 101 .......... 7

35 U.S.C. § 123 .......... passim

44 U.S.C. § 3512 .......... 59

5 U.S.C. § 552a .......... 60

5 U.S.C. § 702 .......... 8

5 U.S.C. § 704 .......... 8

**Other Authorities**

H.R. Rep. No. 112-98, pt. 1 (2011) .......... 8

Manual of Patent Examining Procedure § 711 .......... 7

Manual of Patent Examining Procedure § 771 .......... 8

**Regulations**

37 C.F.R. § 1.104 .......... 7

37 C.F.R. § 1.135 .......... 7

37 C.F.R. § 1.137 .......... 8

37 C.F.R. § 1.16 .......... 8

37 C.F.R. § 1.17 .......... 8

37 C.F.R. § 1.18 .......... 8

37 C.F.R. § 1.181 ........................................ 7

37 C.F.R. § 1.29 ........................................ 9, 10, 15, 18

37 C.F.R. § 1.51 ........................................ 7

**Constitutional Provisions**

U.S. Const. Amend. V ........................................ 66

## STATEMENT OF RELATED CASES

No appeal has been previously before this or any other appellate court under the same or similar title. To counsel's knowledge, no other cases pending before this or any other court will directly affect or be directly affected by the Court's decision in this appeal.

## STATEMENT OF JURISDICTION

This Court exercises exclusive jurisdiction "of an appeal from a final decision of a district court of the United States . . . in any civil action arising under . . . any Act of Congress relating to patents." 28 U.S.C. § 1295(a)(1). Plaintiffs-Appellants' Complaint before the district court alleged that the United States Patent and Trademark Office (USPTO) wrongfully deemed their application to be abandoned, and this Court thus has exclusive jurisdiction over this appeal. *See, e.g., Winfrey v. U.S. Dep't of Com.*, No. 2024-1260, 2024 WL 4284692, at *2 (Fed. Cir. Sep. 25, 2024) (exercising jurisdiction over an appeal transferred from the Eleventh Circuit and affirming the district court's dismissal for failure to exhaust administrative remedies).

## INTRODUCTION

Despite Plaintiffs-Appellants' (collectively, the Nesarikars') claim that "an affirmance would irreversibly harm U.S. national priorities" and mean that the "patent law and system would be rendered meaningless," the issue on appeal is narrow and straightforward: whether the district court properly dismissed the Nesarikars' Complaint without prejudice for lack of standing.

The district court's determination that the Nesarikars failed to plead an ownership interest in patent application no. 18/069,288 ('288 application) that would establish standing was correct and well supported. The holding that "it is the burden of the party invoking jurisdiction—here, plaintiffs—to establish standing once a defendant has filed a motion to dismiss under Rule 12(b)(1)," Appx2, is well-grounded in established precedent. And the district court's dismissal follows directly; where plaintiffs have alleged an obligation to assign all rights but have failed to "provide, plead, or include anywhere in their various filings" the contractual language supporting that alleged obligation, their standing to proceed "is too speculative considering defendants' motion". *See* Appx3.

The Nesarikars, as the listed inventors, assert that Defendants-Appellees (collectively, the Government) arbitrarily and capriciously removed the ’288 application from the examination queue, ultimately deeming it abandoned due to a failure to respond to a Notice of Payment Deficiency the Nesarikars considered improper. Despite being listed as inventors on more than a dozen applications, the Nesarikars averred to the USPTO that they are entitled to reduced fees as micro entity applicants because they are obligated to assign all rights in many of their applications as a result of former employment. They refused, however, to respond to a Notice of Payment Deficiency and substantiate their entitlement to micro entity status—and the accompanying reduced fees—thus leading to abandonment of their application for failure to respond to the USPTO. The Nesarikars subsequently brought a claim under the Administrative Procedure Act (APA) claim alleging error.

In their Complaint, the Nesarikars included no statement of ownership while claiming an obligation to assign all rights in the ’288 application as a result of former employment. Faced with the Government’s Motion to Dismiss, alleging a failure to adequately plead standing, the Nesarikars opted not to provide any information regarding

the claimed obligation to assign or factual basis on which the district court could find standing. Rather, the Nesarikars chose to leave the ownership of the ’288 application clouded, attempting to support the assertion that their ownership rights are simultaneously ***sufficiently impaired*** or transferred such that their applications remain entitled to reduced fees ***but sufficiently retained*** to the extent necessary to support their argument that they have standing.

In the absence of any disclosure of the terms or language of the alleged assignment agreement, the district court appropriately found that the Nesarikars failed to establish standing and dismissed the Complaint without prejudice.

To the extent the Nesarikars have in fact retained sufficient ownership rights in the ’288 application such that they have standing to proceed with a claim against the Government, pleading and corroborating the details of their interest and the asserted obligation should present no difficulty. But having refused to do so—and thus failing to meet a plaintiff’s burden to establish standing—dismissal without prejudice was the correct and appropriate result. This Court should affirm the district court’s judgment.

## STATEMENT OF THE ISSUES

The magistrate judge in the United States District Court for the Eastern District of Texas recommended dismissal of the Nesarikars' Complaint because, *inter alia*, the Nesarikars had "failed to sufficiently allege that they either currently maintain an ownership interest, a concrete financial, or reputational interest in the '288 [application]." Appx421.

The district court accepted the magistrate judge's Report and Recommendation, granted the Government's Motion to Dismiss, and issued a final judgment dismissing the Nesarikars' claims without prejudice for lack of standing and denying the outstanding preliminary injunction motion as moot. Appx5–7.

The issue on appeal is:

Whether the district court correctly found that the Nesarikars had failed to carry their burden in establishing standing to assert their claims and thus properly dismissed their complaint without prejudice?

## COUNTER-STATEMENT OF THE CASE

### I. Patent Prosecution in General

Once filed, a patent application is examined by an examiner to determine whether the application meets various regulatory requirements set out in 37 C.F.R. § 1.51 *et seq*. as well as the statutory requirements for patenting set forth in 35 U.S.C. § 101 *et seq*. If an application is objected to or rejected for failing to satisfy any of these requirements, the examiner will issue an Office action informing the applicant of the grounds of objection or rejection and set a time period for the applicant to respond. *See* 37 C.F.R. § 1.104.

If at any time during the examination process an applicant fails to timely or properly respond to an Office action, the application will become abandoned. *See* 37 C.F.R. § 1.135. If the applicant wishes to challenge an examiner's holding of abandonment, the applicant must file a petition to withdraw the holding of abandonment under 37 C.F.R. § 1.181 (a). *See also* Manual of Patent Examining Procedure § 711.03 (c).[1]

[1] The MPEP "is published to provide U.S. Patent and Trademark Office (USPTO) patent examiners, inventors, applicants, attorneys, and agents with a reference work on the practices and procedures relative to the

Alternatively, where the applicant seeks to revive the abandoned application, a petition to revive must be filed under 37 C.F.R. § 1.137. *See also* MPEP 771.03(c)(I). If the petition decision confirms that the original abandonment was proper or refuses to revive the application, that decision is the USPTO's final determination that can be challenged judicially under the APA, 5 U.S.C. §§ 702, 704.

## II. MICRO ENTITY STATUS

Applicants and owners are responsible for the payment of fees associated with certain events that occur during the patent application process. Some applicants and patent owners can benefit from an 80% reduction on most fees charged by the USPTO if they qualify and file the appropriate papers in their application or patent. *See, e.g.*, 37 C.F.R. §§ 1.16, 1.17, 1.18. The legislative history of the America Invents Act, *see* 35 U.S.C. § 123, confirms that micro entity status was intended for "only truly independent inventors" who have "very little capital, and just a few inventions, as they are starting out." H.R. Rep. No. 112-98, pt.1, at 50

---

prosecution of patent applications and other proceedings before the USPTO." MPEP Foreword

(available at https://www.uspto.gov/web/offices/pac/mpep/index.html).

(2011). And the USPTO recognizes that "[w]hen entities ineligible for the small or micro entity status fee reductions pay fees in an unentitled reduced amount, they take improper advantage of the fees paid by other entities." Appx296.

The qualifications for establishing micro entity status are set forth in 37 C.F.R. § 1.29 (implementing 35 U.S.C. § 123) and require certain criteria be met, including size restrictions, income restrictions, and that neither the applicant nor the inventor nor a joint inventor has been named as the inventor or a joint inventor on more than four previously filed patent applications. *See* § 1.29(a)(2). The number of previously filed applications that count towards an applicant's or inventor's limit may be adjusted, however, by obligations or assignments as a result of former employment. § 1.29(b); *see also* Appx296. Specifically, an application does not count for the purposes of § 1.29(a) "if the applicant, inventor, or joint inventor has assigned, or is under an obligation by contract or law to assign, all ownership rights in the application as the result of the applicant's, inventor's, or joint inventor's previous employment." § 1.29(b). Micro entity status is not a static classification to be conferred on an applicant; rather, it is established on an application-by-application

basis such that an inventor or applicant is not necessarily entitled to micro entity status across multiple applications. *See* § 1.29(e).

To maintain the integrity of micro entity status designations, the USPTO has broad authority to ensure it is not improperly claimed or certified. *See, e.g.*, Appx296–298 (citing 35 U.S.C. §§ 41(j) and 123(f)). In particular, rule 129 states that "[a]ny attempt to fraudulently establish status as a micro entity, or pay fees as a micro entity, shall be considered as a fraud practiced or attempted on the Office." 37 C.F.R. § 1.29(j). "Improperly, and with intent to deceive, establishing status as a micro entity, or paying fees as a micro entity, shall be considered as a fraud practiced or attempted on the Office." *Id.*; *see also* 35 U.S.C. § 123(f) (providing for penalties for entities that are found to have falsely made a certification of micro entity status of "not less than 3 times the amount that the entity failed to pay as a result of the false certification"); *Ulead Sys., Inc. v. Lex Comput. & Mgmt. Corp.*, 351 F.3d 1139, 1146 (Fed. Cir. 2003) (finding that a "false declaration of small entity status" in an effort to reduce the required maintenance fees satisfied the materiality prong of the inequitable conduct test).

A recent USPTO notice summarizes the applicable regulations and highlights the agency's existing authority to collect additional information and levy fines where appropriate.[2] Appx296–299. That notice explains that "the USPTO may review a micro entity status certification claim to determine whether the entity is compliant with the limit of filing no more than five nonprovisional applications." Appx298. And further, "[i]f an applicant, inventor, or joint inventor has been named as the inventor or a joint inventor on more than five prior nonprovisional applications, the applicant may be required to establish that a certification under the gross income basis as a micro entity is appropriate, *e.g.*, establishing that the exceptions in 37 CFR 1.29(b) apply to a sufficient number of prior applications that the certification was not falsely made." Appx296. During this review and information collection process, "the USPTO will remove the application from examination" and

[2] While the requirements for micro entity status have been in place since the passage of the America Invents Act in 2011, "[a]n entity is subject to the penalty provisions of 35 U.S.C. 41(j)) and 123(f) only when inappropriately discounted fees were paid on or after December 29, 2022." Appx299. The Nesarikars filed the '288 application on December 21, 2022, and have paid numerous fees in connection with that prosecution after December 29, 2022. *See, e.g.,* Appx26–27; Appx363–375.

"[t]he USPTO will not return the application to examination until both the fee deficiency and fine are resolved." Appx298. Finally, the notice explains that "[t]he statutory penalty system of 35 U.S.C. 41(j) and 123(f) promotes the submission of compliant assertions and certifications of small and micro entity status, reduces the revenue loss from false assertions and certifications that would otherwise be borne by all entities, and discourages inappropriate conduct related to making false assertions and certifications." Appx296.

## III. PROSECUTION OF THE '288 APPLICATION

While the sufficiency of the Nesarikars' Complaint is on appeal, as opposed to the merits of their dispute with the USPTO, we provide a summary of Nesarikars' interactions with the USPTO for context and to assist with understanding the district court's lack of standing determination and dismissal of Nesarikars' Complaint.

On December 21, 2022, concurrent with the filing of the '288 application, the Nesarikars submitted a Certification of Micro Entity Status (Gross Income Basis), affirming that each of the listed inventors met the requirements to pay only micro entity fees. Appx354–355.

On April 22, 2024, a Notice of Payment Deficiency was entered, identifying that at the time of filing the ’288 application, “the applicant, the inventor, or a joint inventor was named on more than four previously filed patent applications” and that the USPTO considered this to be *prima facie* evidence that the micro entity status certification for the ’288 application was made in error. Appx26–27.

The Notice of Payment Deficiency identified two paths that the Nesarikars could take in response. *Id.* If the certification was in error, the Nesarikars could complete a form and pay any difference in the fees due under the appropriate classification. *Id.* Or, if the Nesarikars asserted that “the certification of micro entity status was not made in error, [they] must reply with an explanation and any necessary evidence that is sufficient to rebut the *prima facie* evidence of an erroneous certification.” Appx27. The Nesarikars were cautioned of a two-month deadline to file a response to the Notice in accordance with the options outlined, else the application would be abandoned. *Id.* And because of the fee deficiency status, the application was removed from the examination queue pending resolution of the issue. *Id.*

On May 23, 2024, the Nesarikars responded to the Notice with the assertion that "the certifications of micro entity status are valid" and that their "arguments in support of [their] certifications of micro entity status accompany this paper." Appx63–64. The Nesarikars claimed that they were each "obligated to assign the rights in the provisional parent application No. 63265932 and its child applications as a result of each of the inventors' previous employment in the state of Texas" and identified eight applications, including the '288 application, as the referenced child applications.[3] Appx48. They also asserted that "no further arguments are required at this time." *Id.*

On August 8, 2024, the USPTO responded with a letter explaining why the identified "*prima facie* evidence [shows] that the certification of micro entity status was erroneous," explaining why the Nesarikars'

---

[3] The Nesarikars' assertion that ***other, prior applications*** were obligated to be assigned is directly relevant to the number of prior applications that counted towards the Nesarikars' limit with respect to the ***'288 application***.

And the claim that the ***'288 application*** itself was subject to an obligation to be assigned is relevant to both the Nesarikars' standing and their claim that ***other, later applications*** were also entitled to micro entity status.

response was insufficient, and identifying what information was needed to proceed with micro entity certification. Appx29–32. Specifically, the USPTO identified twelve applications listing Abhijit Nesarikar as an inventor, and eleven applications listing Anika and Ashlesha Nesarikar as inventors. Appx29–30.

While the USPTO acknowledged the "assigned" or "obligation to assign" exception for counting prior applications under § 1.29(b), it articulated that such exception was only available where an inventor "was a former employee of the previous employer, and that the assignment or obligation to assign was the result of such previous employment." *Id.* And the USPTO noted that the Nesarikars' paper "fails to provide an explanation and the necessary evidence to demonstrate its entitlement to this exception." *Id.* The USPTO also identified additional issues unaddressed by the Nesarikars' May 23 submission—including other applications for which no exception was claimed, no recorded assignments, no identification of a previous employer, and no indication that employment had concluded—that appeared to preclude micro entity status for the '288 application. Appx31–32.

Finally, the USPTO reminded the Nesarikars that their time to reply to the Notice of Payment Deficiency was ***not*** extended by their deficient response and that "[u]nless applicant submits a persuasive explanation and the necessary evidence to rebut the *prima facie* evidence of an erroneous certification, or itemizes and pays the payment deficiency" then the application will be abandoned. Appx31–32.

On September 9, 2024, the Nesarikars accused the USPTO of material misrepresentations and contended that their prior submission was sufficient to demonstrate entitlement to micro entity status. Appx69. They additionally alleged that Ashlesha and Anika Nesarikar "have been obligated to assign the rights" in applications including the '288 application as a result of each of their prior employment with My Dentist, PLLC" and that Abhijit Nesarikar has been obligated to assign the same "as a result of his prior employment with Advantech Consulting, Inc." Appx70. And they claimed that "from before the filing date of the current application through today," none of the inventors have been employed by these companies. *Id.* But the Nesarikars ***did not*** identify when they were allegedly employed by (or departed from) the relevant companies, let alone provide any documentation corroborating

either actual employment—as opposed to a joint venture—or an employment-based assignment.[4] Nor did they provide any details as to the terms of the asserted obligation.

On October 23, 2024, the USPTO responded, first noting that the September submission was untimely and failed to include an application for an extension of time to respond or the appropriate fees. Appx34–38. The period for the Nesarikars to respond continued to run from April 22, 2024, and could not be extended for more than five months—to November 22, 2024. *Id.* The USPTO included a listing of the applicable fees to be paid if the Nesarikars were to request an extension to November 22, 2024. *Id.* And the USPTO stated explicitly that any response to this

[4] The Nesarikars also attached an email they sent to the USPTO's Patent Ombudsman in which they claimed that they did not recognize or recall "application #10165455". Appx72. The Nesarikars make the claim on appeal that the USPTO "fabricated" evidence of the existence of this application. Nesarikars' Informal Brief ("IB."), ECF7, at 2. But despite this claim, the Nesarikars are aware that the referenced application is an unpublished application listing Abhijit R. Nesarikar of Texas. *See, e.g.,* Appx176.

Regardless, any issue regarding this other application is irrelevant to the question of standing with respect to the '288 application.

communication would require submission of an appropriate extension of time fee. Appx38.

The USPTO also responded that the Nesarikars' submissions failed to demonstrate both the assignment and prior employer components of § 1.29(b). Appx35–37. With respect to any exclusion of a previously filed application due to an assignment or obligation to assign, the USPTO noted that no assignment was recorded for the parent to the '288 application, nor had any support been provided for the contention that a sufficient number of prior applications are under an obligation to be assigned. Appx36–37.

For the lone assignment of an application that the Nesarikars identified, the USPTO observed that it "gives rights to Shalaka A. Nesarikar," an apparent family member residing at the same address as the Nesarikars, not "My Dentist, PLLC and Advantech Consulting, Inc., the [alleged] prior employers of the three joint inventors." Appx37. The Nesarikars' response was specifically identified as "insufficient because applicants have not provided adequate evidence that all ownership rights in a sufficient number of the prior filed applications have been assigned

or are under an obligation by contract or law to be assigned to a previous employer." *Id.*

The USPTO again identified types of evidence that would support an obligation to assign their applications to a prior employer: "***Applicants must provide evidence of employment-related contractual or legal obligations to assign rights in the previously filed applications to a prior employer.*** A copy of an assignment or a copy of contract showing an obligation to assign would suffice." *Id.* (emphasis in original). And the USPTO again reminded the Nesarikars that the assignment or obligation to assign must have been the result of previous employment, as opposed to an inventors' own enterprise. *Id.*

On November 19, 2024, the Nesarikars continued their assertion that no extension or fee was required, that they had sufficiently demonstrated micro entity status, and that the Notice of Payment Deficiency and following USPTO communications should be withdrawn. Appx39–42. And the Nesarikars reiterated their claim that the USPTO had materially misrepresented facts, now with the additional accusation that the USPTO acted arbitrarily and capriciously in requesting additional information. *Id.*

On February 11, 2025, the USPTO issued a Notice of Abandonment with the notation that "[t]he responses to the fee notice were not accepted (see petition decision mailed Oct 23, 2024 [Appx33–38] for details) and the period for reply has expired." Appx82.

In a March 6, 2025, letter, the USPTO explained that Plaintiffs' "November 19, 2024 reply was not accompanied by an appropriate extension of time under 37 C.F.R. 1.136(a), and the maximum extendable period for timely reply to the April 22, 2024 Notice has expired." Appx46–47. The USPTO thus considered the reply "untimely filed" and stated that it would not be addressed on the merits. Appx47.

No further petition was made challenging the Notice of Abandonment or the decision to reject the untimely November 2024 submission.

## IV. THE NESARIKARS' COMPLAINT AND MOTION

On April 24, 2025, the Nesarikars filed their Complaint in the United States District Court for the Eastern District of Texas, alleging jurisdiction under 28 U.S.C. § 1331 and § 1361, and claiming that the Government waived sovereign immunity under the APA. Appx8–9. The

Complaint purports to detail a series of misrepresentations, errors, and violations of law and USPTO procedure in connection with the prosecution of the ’288 application. Appx09–22. As a result of those alleged errors, the Nesarikars claim that they were subjected to delay in the prosecution of the ’288 application, as well as inappropriate costs and fees associated with that prosecution. Appx10; Appx21–23.

As relief, the Complaint demanded: (1) reversal of the Notice of Payment Deficiency; (2) an order that the USPTO Director “issue a written statement ratifying Inventors’ micro entity status for the dates on which micro entity fees were paid in Inventors’ applications”; (3) reversal of any fees paid in excess of micro entity fees; (4) prohibiting the Government from effectuating any adverse consequences arising out of the Notice of Payment Deficiency; (5) an order that any patent term adjustment claimed by the Nesarikars be granted without fee; and (6) prohibiting the Government from alleging that a claim of micro entity status was erroneous in any of the Nesarikars’ other applications.[5] Appx22–23.

---

[5] Despite the Nesarikars’ actual allegations being limited to actions taken during prosecution of the ’288 application, their “Relief Requested”

The Nesarikars' Complaint asserts they are the ***listed inventors*** on the '288 application and that they filed the non-provisional application. Appx8–9. Notably, they do not allege on the face of the Complaint that they are ***owners*** of the '288 application. *Id.* The only statements regarding ownership or assignment refer to materials submitted to the USPTO—and attached as exhibits to the Complaint—in which the Nesarikars contended that they had assigned another application to a family member and that the '288 application was under an obligation to be assigned. *See, e.g.,* Appx18–19. Nowhere in the Complaint, or the attachments, do the Nesarikars plead (or provide evidentiary support) for any terms of their claimed obligation to assign.

Though the '288 application was abandoned as a result of their failure to respond to the USPTO, the representation that they have assigned—or are obligated to assign—all rights in ten of the applications at issue to former employers, including the '288 application, is relevant to their claims of error. *See, e.g.,* Appx9–11, Appx18–21; *see also* Appx69–71, Appx72–73. Specifically, the Nesarikars' purported entitlement to

---

purports to demand relief across an undefined number of "Inventors' applications." Appx22–23.

micro entity status rests on their claim that they must assign or have assigned all their rights away as a result of former employment. *Id.* Otherwise, if the Nesarikars had ***not*** impaired all ownership rights in ten of their applications—including the ’288 application—they would have no basis to claim micro entity status in either the ’288 application or others.

Concurrent with the Complaint, the Nesarikars filed a motion for a preliminary injunction, requesting relief related to ***any and all*** of the Nesarikars’ past, present, and future applications. Appx097. Alleging “extortion [that] may be traced back to the Notices of Payment Deficiency” sent in connection with ’288 application, the Nesarikars claimed irreparable harm including “disrupting examinations already underway in other applications, financial harm, reputational harm, and loss of patent rights.” Appx097. Notably, allegations made in this motion relating to applications other than the ’288 application were not contained within the Nesarikars’ Complaint.

As relief, the Nesarikars requested that the district court: (1) “[p]rohibit Defendants from any future actions alleging erroneous micro entity status in applications and patents naming Inventors”;

(2) "[o]rder the reversal of papers sent by Defendants arising out of allegations of erroneous micro entity status in Inventors applications, including Notices of Payment Deficiency sent on 04/22/2024"; (3) "[p]rohibit disruptions by Defendants arising out of allegations of erroneous micro entity status in the prosecution of Inventors patent applications"; and (4) "[o]rder Defendants to return excess payments made by Inventors arising out of Notices of Payment Deficiency sent on 04/22/2024". Appx103–104.

### V. THE GOVERNMENT'S MOTION TO DISMISS AND OPPOSITION

On June 10, 2025, the Government filed its Motion to Dismiss as well as its Opposition to the Motion for Preliminary Injunction. Appx418. The Government moved to dismiss on the basis that the Nesarikars failed to establish standing to maintain the action and that they had failed to exhaust all administrative remedies. Appx212–217. The Government also opposed the Nesarikars' request for injunctive relief on multiple bases including: the same failure to establish standing; the relief sought exceeded the scope of their Complaint and the APA; and that the Nesarikars could not meet the requirements for preliminary injunctive relief. Appx181–193.

The Nesarikars responded to the Government's motion that "all applications which Inventors identified as obligated to assign rights in are currently owned by Inventors" and that "Inventors' obligation to assign in the future does not alter current ownership or Inventors' Article III standing." Appx329–330. But the Nesarikars did not cite to the record to support their claim. Rather than present any evidence of ownership, further details regarding an obligation to assign, or citation to the record, the Nesarikars merely stated that they were "presumed" to be owners and that the Government had failed to overcome the presumption. Appx330.

In reply, the Government acknowledged the general presumption of inventor ownership but contended that "[h]aving asserted to the USPTO—and pled here—that '288 application is under an obligation to be assigned, [the Nesarikars] must affirmatively plead sufficient facts to demonstrate that they retained sufficient ownership to maintain this action." Appx390–391.

The Government also noted in connection with the Motion for Preliminary Injunction, that the alleged "contradictory position" taken by the USPTO—that the Nesarikars may not have any rights to be

vindicated ***and*** that they have proffered no evidence that any obligation to assign exists—is precisely why the Nesarikars have not met their burden to demonstrate standing. Appx288. Specifically, even assuming any threatened or actual harm, the Nesarikars' pleading leaves unclear whose rights would be harmed by any USPTO action. *Id.*

## VI. THE DISTRICT COURT'S DISMISSAL OF THE COMPLAINT

On August 2, 2025, Magistrate Judge John D. Love issued a Report and Recommendation setting forth his conclusion that the Government's Motion to Dismiss should be granted, that the Nesarikars' claims should be dismissed without prejudice for lack of standing, and that the Nesarikars' motion for a preliminary injunction should be denied.[6] Appx416–423.

As an initial matter, the Magistrate noted that the Nesarikars had opposed the Government's motion to dismiss based, in part, on reference to three other patent applications—16/591,555, 18/069,382, and

[6] Because the Magistrate recommended dismissal for lack of standing, neither the Magistrate nor the district court reached the Government's argument regarding a failure to exhaust all administrative remedies related to the '288 application under the APA. Appx422.

18/611,669. Appx416. The Magistrate found, however, that even "after liberally construing Plaintiffs' complaint, Plaintiffs' allegations only relate to the '288 application" and the court therefore "disregards any allegations related to patent applications other than the '288 application." *Id.*

Recognizing that the "threshold issue" of jurisdiction must be addressed before a federal court can consider the merits of any claim, and that the Government had challenged whether the Nesarikars had alleged sufficient facts indicating that they have retained ownership of the rights to the '288 application, the Magistrate turned first to the issue of standing. Appx419–422. He noted that "a plaintiff can satisfy Article III's standing requirement by showing that he has an ownership interest or a concrete financial interest in the patent itself." Appx420. But the Magistrate found that the Nesarikars "have failed to sufficiently allege that they either currently maintain an ownership interest, a concrete financial, or reputational interest in the '288 patent." Appx421.

With respect to ownership, the Magistrate found that "[i]t is unclear from Plaintiffs' complaint and the parties' briefing whether Plaintiffs have any remaining ownership interest in the '288 patent." *Id.* Though

the Nesarikars had included in their pleading that they had "a current obligation to assign their rights in the '288 patent as a result of their prior employment," they failed to include any other allegations that would support ownership, including "any of their employment agreements or the associated patent assignment clauses." *Id.* "The court, therefore, [could not] readily determine whether the assignment created an automatic assignment or merely a promise to assign." *Id.* (internal citations omitted). In reaching this conclusion, the Magistrate expressly considered that an invention is generally presumed to belong to the inventor. Appx420. But given the Nesarikars' pleading that they were obligated to assign their rights, as well as the absence of information about that obligation or specific pleading regarding ownership, the Magistrate could not conclude that presumption held here. Appx421.

As with ownership of the '288 application, the Magistrate concluded that "[b]ecause it is unclear whether [the Nesarikars] have assigned all of their interests in the '288 patent to their former employers, it is likewise unclear whether they have retained any financial interest in the patent." Appx422. And the Magistrate determined that the Nesarikars

"have not made any attempt to allege that they have standing based on a reputational interest." *Id.*

The Magistrate also rejected the Nesarikars' "claims for violations to the [Paperwork Reduction Act, 44 U.S.C. § 3512] in this case because the PRA does not create a private right of action for alleged violations of the statute." Appx420–421. And the Magistrate recommended denial of the Nesarikars' motion for preliminary injunction, finding that "because all of Plaintiffs' claims are subject to dismissal for the reasons discussed herein, Plaintiffs cannot show a likelihood of success on the merits." Appx423.

On October 1, 2025, the district court accepted the Report and Recommendation, granted the Government's Motion to Dismiss, denied the Nesarikars' motion for preliminary injunction as moot, and dismissed the action without prejudice. Appx1–7. The district court discerned four discrete objections by the Nesarikars to the Report and Recommendation and, on a *de novo* review, overruled each of them. Appx1–5.

***First***, the district court rejected the claim that the Magistrate failed to consider certain filings by the Nesarikars, finding that they did

"not identify, and the court cannot ascertain on independent review, which specific portions of [those documents] would have materially altered the report's conclusions." Appx2.

***Second***, the district court agreed that "it is the burden of the party invoking jurisdiction—here, plaintiffs—to establish standing once a defendant has filed a motion to dismiss under Rule 12(b)(1)." *Id.* Distinguishing between different types of obligations to assign, the district court found that "Plaintiffs leave the court to only speculate whether the assignment to their previous employers automatically assigned the rights to the '288 application or whether they maintained an interest in the patents when they filed suit." Appx3. The district court rejected the asserted relevance of the assignment of a different application to Shalaka A. Nesarikar. *Id.* And the district court found that "Plaintiffs have also failed to show either a concrete financial or reputational interest in the '288 application." Appx4. Thus, the district court agreed that "Plaintiffs have failed to carry their burden that they maintained any legal, financial, or reputational rights to the '288 application" and that "there is no concrete, particularized injury for the court to redress, and it was not error for the report to conclude that

plaintiffs have not carried their burden in proving standing to assert their claims." *Id.*

***Third***, "because plaintiffs do not assert the protections of the PRA as a defense, and the court agree[d] that the PRA does not create a private right of action, it was not error for the report to recommend dismissing plaintiffs' claims under the PRA." Appx5.

And ***fourth***, "because plaintiffs failed to plead a claim under § 552a in their complaint," the district court found that it was not error for the Magistrate to not consider such a claim. *Id.*

## SUMMARY OF THE ARGUMENT

The district court did not err in dismissing the Nesarikars' claims for a failure to establish standing. It is a plaintiff's burden to plead and establish standing. And the Nesarikars have done neither here.

The Nesarikars' principal invocation of standing on appeal rests on the claim that they, as inventors and applicants, are the owners of the '288 application until those rights are assigned away. But the Nesarikars did not plead that they own the '288 application; rather, they were silent in their Complaint on ownership and pleaded only that they were obligated to assign the '288 application as a result of former employment. And they offered no evidence or information to support ownership in response to either the Government's Motion to Dismiss or the Report and Recommendation. Absent any information regarding the terms or scope of that pleaded obligation to assign all rights in '288 application, the district court correctly determined that the Nesarikars had failed to plead ownership and thus failed to establish standing.

The Nesarikars' claims of error by the district court are both legally flawed and contradicted by the record. The district court did not—as alleged by the Nesarikars—impose an improperly heightened standard

at the pleading stage. Nor was the district court's finding that the Nesarikars ***failed to establish*** ownership a determination of what entity in fact owns the '288 application. Similarly, the district court appropriately considered the distinction between an assignment and an obligation to assign, determining that the Nesarikars had failed to provide the court with sufficient information to do more than speculate as to the legal effect of their claimed obligation to assign. Having pleaded an obligation to assign, but providing no information as to the terms of that obligation, bare reliance on a general "presumption" of ownership is insufficient to establish standing.

The Nesarikars remaining allegations of standing also fail to carry their burden required to invoke the district court's jurisdiction. They have pleaded no concrete financial or reputational interest that would exist independently of ownership. The district court correctly determined that the Paperwork Reduction Act does not create an affirmative cause of action that would confer independent standing here. And their remaining objections regarding the district court's treatment of their claims are both incorrect and beyond the scope of the present appeal.

Finally, the Nesarikars' claim for relief exceeds that available to them on appeal. They have developed no argument that their Motion for Preliminary Injunctive Relief—denied as moot by the district court—could or should be granted by this Court. And the Nesarikars ignore that the district court reserved additional grounds for dismissal in light of its finding that the Nesarikars failed to establish standing.

The Court should affirm the district court's dismissal.

# ARGUMENT

## I. STANDARD OF REVIEW

This Court reviews a district court's dismissal under regional circuit law, here the Fifth Circuit. *See, e.g., In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 610 (Fed. Cir. 2016). The Fifth Circuit reviews a district court's grant of a Federal Rules of Civil Procedure 12(b)(1) motion to dismiss *de novo*. *Choice Inc. of Texas v. Greenstein*, 691 F.3d 710, 714 (5th Cir. 2012).

This Court may affirm a district court's dismissal on any grounds supported by the record, including a party's lack of standing. *See R2 Investments LDC v. Phillips*, 401 F.3d 638 (5th Cir. 2005); *Breaux v. U.S. Postal Serv.*, 202 F.3d 820, 820 (5th Cir. 2000) (per curiam). Only pleaded facts, as opposed to legal conclusions, are entitled to an assumption of the truth. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

"Courts must strictly construe all waivers of the federal government's sovereign immunity, resolving all ambiguities in favor of

the sovereign." *Chapa v. U.S. Dep't of Justice*, 339 F.3d 388, 389 (5th Cir. 2003).

## II. THE NESARIKARS HAVE NOT ESTABLISHED STANDING

### A. Plaintiffs Have the Burden to Establish Standing

Standing is a constitutional requirement pursuant to Article III and is a threshold jurisdictional issue. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). The "irreducible constitutional minimum" of standing has three elements: (1) the plaintiff must have suffered an injury in fact—the invasion of a legally protected interest that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) that injury must be fairly traceable to the defendant's challenged conduct; and (3) it must be likely, as opposed to merely speculative, that the plaintiff's injury will be redressed by a favorable judicial decision. *Id.*

In the patent context, a plaintiff can satisfy Article III's standing requirement by showing that he has an ownership interest or a concrete financial interest in the patent itself. *Larson v. Correct Craft, Inc.*, 569 F.3d 1319, 1325–26 (Fed. Cir. 2009). "It is elementary that inventorship and ownership are separate issues." *Beech Aircraft Corp. v. EDO Corp.*,

990 F.2d 1237, 1248 (Fed. Cir. 1993). "[I]nventorship is a question of who actually invented the subject matter claimed in a patent . . . [o]wnership, however, is a question of who owns legal title to the subject matter claimed in a patent . . . ." *Id.*

Under patent law[7], "the general rule [is] that rights in an invention belong to the inventor." *Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 563 U.S. 776, 785–86 (2011) (citations omitted). But "[i]t is equally well established that an inventor can assign his rights in an invention to a third party." *Id.* at 786. An employment agreement with a patent assignment clause can assign a prospective patent automatically—"in which no further acts to effectuate the assignment are necessary"—or it can promise to assign any resulting patent in the future. *Omni MedSci, Inc. v. Apple Inc.*, 7 F.4th 1148, 1152 (Fed. Cir. 2021). The precise language of the agreement must be analyzed to determine what sort of assignment has been effectuated. *Id.*

---

[7] While state law governs the interpretation of contracts and the ownership of a patent, the question of whether contractual language effects a present assignment of patent rights, or an agreement to assign rights in the future is a matter of Federal Circuit law. *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1364 (Fed. Cir. 2010).

The plaintiff, as the party invoking federal jurisdiction, has the burden of proving the facts necessary to establish its standing. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 411–12 (2013). "Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. But "[w]hen challenged by a court (or by an opposing party) concerned about standing, the party invoking the court's jurisdiction cannot simply allege a nonobvious harm, without more." *Wittman v. Personhuballah*, 578 U.S. 539, 545 (2016). Furthermore, this Court has ***rejected*** the contention that a plaintiff "did not have to prove standing" and, instead "the government had to ***disprove*** it." *Ad Glob. Fund, LLC v. United States*, No. 2024-1252, 2025 U.S. App. LEXIS 21491, at *6 (Fed. Cir. Aug. 22, 2025).

### B. The Nesarikars Have Not Adequately Pleaded an Ownership Interest

The Nesarikars' pleadings are insufficient to meet their burden to establish standing based on an ownership interest in the '288 application. On the face of the Complaint itself, the Nesarikars allege that they are

the ***inventors*** and ***filers*** of the ’288 application. Appx8 (“Plaintiffs, Ashlesha A. Nesarikar, Anika A. Nesarikar, and Abhijit R. Nesarikar (hereinafter Inventors) . . .”); Appx9 (“Inventors filed nonprovisional US Patent Application No. 18/069,288 . . .”). But they do not allege that they are ***owners*** of the ’288 application.

Rather, the Nesarikars’ pleadings reference numerous communications with the USPTO asserting that the ’288 application was subject to an obligation to assign. Appx19–20; *see also* Appx48 (“Each of the inventors…was obligated to assign the rights in the provisional patent application No. 63365932 and its child applications [including the ’288 application] as a result of each of inventors’ previous employment in the state of Texas.”); Appx70 (“Ashlesha Nesarikar and Anika Nesarikar have been obligated to assign the rights in provisional patent applications 62/705,296 an 63/265,932 (and their child applications) as a result of each of their prior employment with My Dentist, PLLC, Plano, TX.”); *Id.* (“Abhijit Nesarikar has been obligated to assign the rights in provisional patent applications 62/705,296 an 63/265,932 (and their child applications) as a result, of his prior employment with Advantech Consulting, Inc, Plano, TX.”); Appx72, Appx75, Appx77.

These allegations do not adequately plead an ownership interest in the ’288 application that would give rise to standing. Rather, the only information related to ownership of the ’288 application, pleaded by the Nesarikars in their Complaint, references a transfer of all rights in that application as a result of former employment. And as the district court appreciated, the Nesarikars “have admitted that they are, at a minimum, obligated to assign their rights in [the ’288 application] to their former employers. Appx3.

While the Nesarikars’ Complaint purports to challenge the adequacy of the USPTO’s actions and alleges arbitrary and capricious treatment, the Nesarikars’ assertions of entitlement to micro entity status depend on them having assigned, or being obligated to assign, all rights in the ’288 application and others. Appx10–11, Appx18–19. The Nesarikars’ own representations to the USPTO and to the district court thus establish that they cannot be the ultimate owner of the applications or prospective patent that may issue from them. Appx19–20, Appx48, Appx70–77. But the Nesarikars assert harms to the value of a prospective patent that would flow to the ultimate owner of the

application—in the form of increased fees, loss of patent rights and term, etc.—not to the inventors themselves. Appx20–23.

In response to challenges from both the Government and the district court on standing, and specifically the impact of their claims to the USPTO on an implicit claim of standing, the Nesarikars merely offered the legal conclusion that they are presumed to be owners of the '288 application.[8] Appx330 (citing *Bd. of Trustees of the Leland Stanford Junior Univ. v. Roche Molecular Systems, Inc.*, 563 U.S. 776 (2011)), Appx425 (same). While it is true that inventors are generally presumed to be the owner of an application, that legal presumption doesn't survive the allegation of a contractual encumbrance in the Nesarikars' Complaint. *See, e.g., Omni MedSci*, 7 F.4th at 1152 ("A patent assignment clause may presently assign a to-be-issued patent automatically—in which case no further acts to effectuate the assignment are necessary—or may merely promise to assign the patent

[8] Of note, even after the issuance of the Magistrate's Report and Recommendation, finding that the court could not determine standing in the absence of the contractual language, the Nesarikars made no request to amend their Complaint nor did they provide any information regarding the pleaded obligation. Appx424.

in the future."). Having pleaded to the district court—and asserted to the USPTO—that the '288 application is under an obligation to be assigned, the Nesarikars were obligated to affirmatively plead sufficient facts to demonstrate that they retained sufficient ownership to maintain this action. *See Larson v. Correct Craft, Inc.*, 569 F.3d 1319, 1325–27 (Fed. Cir. 2009).

Specifically, as the district court correctly recognized, the language of an alleged obligation to assign matters for the purpose of establishing ownership and thus standing. *See, e.g., Omni MedSci*, 7 F.4th at 1152 ("Which type of assignment is intended depends on the contractual language.") (internal citations omitted). The Nesarikars' pleadings "leave the court to only speculate whether the assignment to their previous employers automatically assigned the rights to the '288 application or whether they maintained an interest in the patents when they filed suit." Appx3. And because the Nesarikars did not "provide, plead, or include anywhere in their various filings" the contractual language of the pleaded obligation, "their standing to proceed with their allegations involving the '288 application is too speculative considering defendants' motion." *Id.*

This Court's analysis in *Omni MedSci,* and the related proceedings in the district court, are instructive. There, the defendant filed a motion to dismiss alleging that an entity other than the plaintiff owned the asserted patents and that the plaintiff thus lacked standing to bring an infringement action. *Omni MedSci,* 7 F.4th at 1151. Though the plaintiff in *Omni MedSci* was able to avoid dismissal, it did so by reference to the specific terms and language of the obligation to assign in question. *Id.* at 1152. And this Court was only able to reach its conclusion—that "[t]he only reasonable reading of this operative language is as a statement of an intended outcome rather than a present assignment"—through analysis of the actual contractual provisions. *Id.* Here, the Nesarikars have affirmatively pleaded an obligation to assign—and entitlement to a benefit that depends on that obligation—but have withheld any reference to the operative language.

The Nesarikars attempt to distinguish *Omni MedSci* on the basis that the defendant there was already in possession of the relevant contractual language and argue that the district court did not "identify any evidence allegedly produced by the USPTO to rebut the presumption [of ownership]." IB. at 9. But they are incorrect as to the import of the

claimed distinction between *Omni MedSci* and the present case. Whereas the Court in *Omni MedSci* could analyze the language at issue, the only record evidence here is the Nesarikars' own pleadings that they obligated themselves to assign all rights in the '288 application such that the application did not count against their limit for the purposes of obtaining micro entity status. Appx19–20, Appx48, Appx70–77.

Contrary to the Nesarikars' claims, it was not speculation by the district court to rely on that evidence in evaluating whether the Nesarikars have adequately pleaded standing. Rather, it would be speculation for the district court to assume that the pleaded assignment obligation was of one specific type—where the Nesarikars had retained rights to the '288 application—as opposed to another—where the obligation has already been triggered.[9] Appx3 ("Plaintiffs leave the court to only speculate whether the assignment to their previous employers

---

[9] The lone assignment in the record is for a related application, assigns rights to an apparent family member who resides at the same address as the Nesarikars, and makes no reference to any employment agreement. Appx89–90 (recording an assignment to Shalaka A. Nesarikar). The Nesarikars allege that this other assignment resulted from the same obligation that covers the parent application to '288 application, but they do not explain how one application was assigned but the other was—allegedly—not.

automatically assigned the rights to the ’288 application or whether they maintained an interest in the patents when they filed suit.”).

Having not pleaded sufficient facts to support ownership—and having admitted through their pleadings that they are, at a minimum, obligated to assign—the Nesarikars have failed to establish whose rights are being vindicated here and, consequently, failed to establish standing.

### C. The District Court Did Not Impose an Improper Standard at the Pleading Stage

The Nesarikars additionally claim that the district court erred by “adopting the violations of 35 USC 123 and erroneously precluding determination of merits of the case,” thus violating Supreme Court and Fifth Circuit precedent. IB. at 5, 19–21. To the extent the Nesarikars are contending that the district court improperly resolved the merits of their Complaint “under the guise of challenging jurisdiction,” the Nesarikars are incorrect. IB. at 20.

The Nesarikars cite to *Perttu v. Richards*, 605 U.S. 460 (2025), *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir.1981), and *Montez v. Department of the Navy*, 392 F.3d 147 (5th Cir. 2004), but none support the proposition that the district court erred here in “disregarding the

intertwinement of merits of the case and the jurisdictional challenge." IB. at 21.

In *Perttu*, the Supreme Court considered the Seventh Amendment entitlement to a jury trial on exhaustion of administrative remedies where the dispute is intertwined with the merits of the underlying suit. *Perttu v. Richards*, 605 U.S. at 464 ("The parties agree that the exhaustion and First Amendment issues are intertwined, because both depend on whether Perttu did in fact destroy Richards's grievances and retaliate against him."). Recognizing that "certain cases must be heard and determined on the merits even when constitutionally implicated jurisdictional disputes are at play," the Supreme Court accepted that the intertwined affirmative defense of exhaustion should have been resolved on the merits. *Id.* at 473 (cleaned up). Similarly, in *Williamson*, the Fifth Circuit reversed a dismissal for lack of jurisdiction because the district court resolved factual issues dispositive of both the merits and jurisdiction without making the appropriate findings. 645 F.2d at 416 ("The question in this case is whether certain joint venture interests and certain promissory notes are 'securities' within the meaning of the 1933 Act and the 1934 Act."). And in *Montez*, the Fifth Circuit reversed a

determination that the alleged tortfeasor was not acting within the scope of his naval employment, resolving at the motion to dismiss stage both jurisdiction and merits. 392 F.3d at 148.

The Nesarikars are wrong, however, that the challenge to their standing is either a challenge to the existence of a federal cause of action or a resolution of the merits of their claim. Resolution of questions relating to ownership, obligation, or assignment of the ’288 application is not analogous to the circumstances of any of their cited cases nor is it dispositive of the Nesarikars’ claims. Specifically, the Nesarikars’ merits dispute is not dependent on the ownership or assignment status of the ’288 application; but rather whether the USPTO acted arbitrarily and capriciously in deeming that application abandoned after the Nesarikars refused to respond to multiple requests for information. Appx9; *see also Dep’t of Com. v. New York*, 139 S. Ct. 2551, 2569 (2019) (describing a court’s review under the Administrative Procedures Act).

Moreover, the district court did not determine ownership of the ’288 application. Rather, the district court found that the Nesarikars had ***failed to plead ownership*** such that they met their burden to establish standing. Appx3 (“[T]heir standing to proceed with their allegations

involving the ’288 application is too speculative considering defendants’ motion.”). A subsequent pleading may ultimately require a determination on ownership. But there was no error in the district court’s conclusion that ***this*** Complaint should be dismissed without prejudice.

### D. The Nesarikars’ Remaining Objections Regarding Ownership Lack Merit

Throughout their brief, the Nesarikars raise additional objections, claiming the district court’s Order dismissing their Complaint was contradictory and legally erroneous. None of these objections identify any actual error or demonstrate that the Nesarikars met their burden to establish standing.

***First***, the Nesarikars claim that the district court misapprehended a distinction between “has assigned” and “is under an obligation to assign” in finding that they had failed to establish standing. IB. at 2 (“Order failed to recover from the misdirection, undermining the congressional intent of 35 USC 123 and inventors’ ownership rights under established patent law.”), IB. at 7 (“Order erroneously disregards

35 USC 123 and misconstrues 'is under an obligation to assign' as 'has assigned.'"). The record directly contradicts the Nesarikars' claim.

The Report and Recommendation specifically recognized the Nesarikars' argument that they had retained ownership despite being under an obligation to assign all rights in the '288 application. Appx421 ("Plaintiffs allegations show that they informed Defendants that the individual Plaintiffs each had a current obligation to assign their rights in the '288 patent as a result of their prior employment"); *see also* Appx419. But the Report and Recommendation concluded that, with the Nesarikars having pleaded an obligation to assign and having also withheld any details of that obligation, "[t]he court, therefore, cannot readily determine whether the assignment created an automatic assignment or 'merely a promise to assign.'" Appx421.

The district court similarly differentiated between types of assignment obligations and acknowledged the Nesarikars' contention that they had retained ownership. Appx3 ("Plaintiffs have admitted that they are, at a minimum, obligated to assign their rights in patent application no. 18/069,288 ("'288 application") to their former employers."), *Id.* ("But as the report appreciates, an "assignment" of a

patent to a previous employer can mean one of two things—automatic assignment or a promise to assign the patent in the future.”). And the district court concluded that, given the distinction between the types of obligations and the Nesarikars' failure to plead sufficient facts, "their standing to proceed with their allegations involving the '288 application is too speculative considering defendants' motion." *Id.*

***Second***, the Nesarikars allege that that the district court "relie[d] on anachronistic fallacy in determining lack of standing" in connection with the court's consideration of the assignment of another of the Nesarikars' applications. IB. at 12. But the district court's conclusion, that another application assignment is at best irrelevant and rather "casts further doubt on [the Nesarikars'] standing to assert causes of action for rights associated with the '288 application," is plainly correct and evidences no "fallacy."

While the Nesarikars claim that the timing of a ***different assignment*** shows that the obligation impairing the '288 application must ***not*** be automatic, the district court correctly appreciated that a different assignment does not shed light on the nature of the relevant obligation. Appx3 ("For one, if plaintiffs allege that this language is

associated with the ’844 application, such an assignment has no bearing on the effect of plaintiffs’ assignment of the ’288 patent.”). Even accepting the Nesarikars’ unsupported contention that both the ’844 and ’288 applications were obligated as a “result from the same employment,” IB. at 13, neither the language nor the timing of the ’844 application’s assignment foreclose that the claimed obligation was an automatic one. Nor does that assignment language establish anything—let alone ownership by the Nesarikars—with respect to the ’288 application. Rather, the language simply raises additional questions—and calls for more speculation—as to whether the Nesarikars retained ownership of the ’288 application.

***Third***, the Nesarikars claim that the district court was misled by the Government’s motion, which was “predicated on a contradictory stance that alleged Inventors do not own ‘288 due to Inventors’ statement regarding the applicability of 35 USC 123(b).” IB. at 28. But there is no inconsistency or contradiction in either the Government’s arguments or the district court’s Order. Fundamentally, the Nesarikars fail to appreciate both the scope of the proceedings before the USPTO and their burden to avail themselves of the federal judicial system.

The USPTO ***did not*** conclude "that there was no assignment in '288 [sic], leaving Inventors as the owners of at least '288 [sic]." IB. at 28. Rather, the record reflects that the USPTO questioned—based on *prima facie* evidence—whether the Nesarikars were entitled to micro entity status. Appx26–27; *see also* Appx35–38. The USPTO thus provided the Nesarikars with a choice: demonstrate entitlement to micro entity status or revise the information provided and pay the difference in fees for small entity status. *Id.* The '288 application was ultimately abandoned because the Nesarikars failed to substantively respond, not because the USPTO determined that there was no assignment. Appx82.

Moreover, the alleged "contradictory position" taken by the USPTO—that the Nesarikars may not have any rights to be vindicated ***and*** that the Nesarikars failed to substantiate entitlement to micro entity status—makes clear the Nesarikars' failure to meet their burden to demonstrate standing. The question facing the district court on standing is whose rights were harmed, assuming any cognizable harm. Ownership of rights in the '288 application and the ultimate recipient of the alleged harm depends on the language and terms of any obligation to assign, which the Nesarikars have refused to plead or provide. The

naked pleading of an obligation to assign the ’288 application renders it unclear whether the Nesarikars possess the necessary rights to proceed here.

***Finally***, the Nesarikars’ claim that an affirmance “would outright deny an inventor her constitutional patent rights if she were ever employed” mischaracterizes—or misunderstands—the district court’s Order. IB. at 1. No constitutional rights have been impaired, no “foolproof defense” has been created, and no change in how to determine ownership has occurred. *See id.* The district court’s dismissal did not hinge on the contention that the Nesarikars were previously employed or set forth a broad requirement that a patent plaintiff could only establish standing “by presenting all her past employment agreements.” *Id.*

Rather, the district court recognized that the ***Nesarikars’ own pleading*** identifies an obligation to assign the relevant application while failing to provide any information about the terms of the obligation from which a court could conclude standing was established. Appx3. The Nesarikars’ apparent belief that they need never reveal specific information relating to ownership—especially when simultaneously claiming a benefit to reduced fees ***predicated on an obligation to***

***assign those rights***—is unsupportable. The district court correctly found their pleadings legally insufficient and dismissed the Complaint without prejudice.

### E. The Nesarikars Have Not Established a Financial or Reputational Interest to Support Standing

The district court was additionally correct in finding that, "aside from a lack of ownership interest, Plaintiffs have also failed to show either a concrete financial or reputational interest in the '288 application." Appx4. The Nesarikars, on appeal, argue harm both to them as applicants and to their "professional reputation as AI inventors." IB. at 22–25. Neither are sufficiently pleaded to establish standing.

The Nesarikars claim the USPTO "denied Inventors' right to apply for and prosecute [the] '288 [application] and denied Inventors' right to due process." IB. at 22–23. But this claim does not independently confer standing to someone other than the owner of the application. In pointing to the USPTO's requirement that they, as applicants, comply with USPTO regulations regarding micro entity status, the Nesarikars do not identify a harm—let alone one that occurred to them as applicants as opposed to the ultimate owner of the application. Contrary to the

Nesarikars' arguments, they were not the "object" of any agency action under *Lujan*; rather the question of micro entity status is application specific. And any alleged harm that resulted from the applicants' failure to adequately respond to the USPTO resulted to the owner of the application. The district court was thus correct in finding that "because the court agrees that plaintiffs have not adequately pleaded that they have sufficient ownership rights of the '288 application, the court cannot readily conclude that plaintiffs' alleged harm is "particularized" to them. Appx4 (citing *Lujan*, 504 U.S. at 560, n.1).

The Nesarikars also claim that "pernicious agency actions in at least the '288 [application] harmed Inventors' reputations." IB. at 25. While a "concrete and particularized reputational injury" can give a plaintiff standing to sue to be added as an inventor, a generalized allegation relating to one's reputation as an inventor is insufficient. *See Shukh v. Seagate Tech., LLC*, 803 F.3d 659, 663 (Fed. Cir. 2015). And neither the Nesarikars' Complaint nor their arguments on appeal

approach the "concrete and particularized reputational injury" standard set forth by *Shukh*.[10]

In *Shukh*, the plaintiff was seeking to be added as an inventor on issued patents and, in support of his claim, he provided concrete claims and evidence that omission from those specific patents harmed him in a particularized way. *Shukh*, 803 F.3d at 664–65 (detailing expert and fact testimony, employment records, and his employer's policies). The Court thus concluded there was a material issue of fact as to whether the plaintiff's reputation was harmed. *Id.*

Since then, however, this Court has rejected other attempts to invoke reputational harm at the pleading stage. For example, in *Kamdem-Ouaffo v. PepsiCo, Inc.*, this Court opined that *Shukh* does not authorize standing when the "sole claim of injury" is plaintiff's bare assertion he will "sustain and/or might sustain" reputational injury. 657

---

[10] The Nesarikars cite to but fail to develop an argument regarding for standing based on *Chou v. Univ. of Chicago*, 254 F.3d 1347 (Fed. Cir. 2001). Regardless, the Court in *Chou* expressly declined to consider whether reputational injury could satisfy Article III standing requirements because the claimed inventor had alleged a concrete financial interest in the patent. *Id.* at 1359.

F. App'x 949, 954 (Fed. Cir. 2016). As the plaintiff had alleged a pure reputational injury without any "economic consequences, such as loss of employment prospects," he thus could not proceed under *Shukh*. *Id.* In *Huster v. j2 Cloud Services, Inc.*, this Court similarly rejected a plaintiff's claimed standing where she merely alleged patent acknowledgment can impact an inventor's reputation, but did not allege or proffer evidence showing she suffered any reputational injury herself. 682 F. App'x 910, 916 (Fed. Cir. 2017).

The Nesarikars' allegations of reputational harm related to their un-issued applications are merely general both in form and impact, more in line with *Kamdem-Ouaffo* and *Huster* than *Shukh*, and thus insufficient to conclude that the alleged harm is sufficiently "concrete and particularized." *See* Appx4. There is no support, either in the Nesarikars' briefing or in their cited case law, for the proposition that discontinued examination is generally harmful to every applicant's reputation.[11] Nor is there any specific impact that is alleged to have

[11] Director Squires' public statements, cited at IB. at 24, regarding patent eligibility standards have no relevance to the question here of harm and standing.

occurred. The Nesarikars solely contend that they have been "confidentially prospecting large industrial conglomerates" and that their "prospecting efforts" have been harmed. IB. at 25. But all they reference is an acknowledgement of receipt of a communication related to a ***different*** application. Appx413.

The Nesarikars have thus failed to adequately plead or establish any reputational interest that would support standing in the absence of an ownership interest.

### F. The Paperwork Reduction Act Does Not Provide Standing

The district court additionally and correctly concluded that PRA does not provide a basis for the Nesarikars to establish standing. Appx5 ("Here, because plaintiffs do not assert the protections of the PRA as a defense, and the court agrees that the PRA does not create a private right of action, it was not error for the report to recommend dismissing plaintiffs' claims under the PRA.").

The Nesarikars assert that the district court erred in disregarding their arguments with respect to claimed violations of the PRA and that they provided argument and explanation for how they "did raise the PRA

as a defense, bar, and otherwise." IB. at 26. And specifically, the Nesarikars appear to balance their argument on the inclusion of the language "or otherwise" in 44 U.S.C. § 3512(b).

The Nesarikars continue to misapprehend, however, that the PRA "provides a defense to administrative or judicial enforcement actions, but does not create a private right of action for alleged violations of the statute." *Smith v. United States*, No. 08-10288, 2008 WL 5069783, at *1 (5th Cir. Dec. 2, 2008) (unpublished) (citing 44 U.S.C. § 3512; *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 844 (9th Cir. 1999)). As the Ninth Circuit has explained, it is apparent from subsection (b) that the PRA authorizes its protections to be used as a defense; "it does not authorize a private right of action." *Sutton*, 192 F.3d at 844; *see also Springer v. I.R.S. ex rel. U.S.*, 231 F. App'x 793, 800 (10th Cir. 2007) ("[W]e readily conclude that 'or otherwise' in § 3512(b) embraces only procedural devices similar to complete defenses or bars; the phrase does not function to expand subsection (b) into a right of action."). There was thus no error in the district court's finding that the PRA does not provide an independent ground for standing to the Nesarikars.

## III. NO PRIVACY ACT CLAIM WAS ADEQUATELY PLEADED

The district court also correctly determined that 5 U.S.C. § 552a (the Privacy Act) "cannot be found anywhere on the face of plaintiffs' complaint," and that "plaintiffs failed to plead a claim under § 552a." Appx5.

While the Nesarikars are correct that courts "liberally construe" *pro se* complaints and hold them "to less stringent standards than formal pleadings drafted by lawyers," leniency has limits. *King v. U.S. Postal Serv. Agency*, No. 25-10442, 2025 WL 2683994, at *2 (5th Cir. Sep. 19, 2025) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). *Pro se* litigants "must still brief contentions in order to preserve them." *Longoria v. Dretke*, 507 F.3d 898, 901 (5th Cir. 2007). There is simply no allegation in the Complaint from which a court could discern a claim or cause of action under the Privacy Act.

On appeal, the Nesarikars generally allege due process violations related to 5 U.S.C. § 552a. IB. at 27. But their arguments to the district court were different. In the Nesarikars' objections to the Report and Recommendations, they stated only that "Defendants violated the Privacy Act, 5 USC 552a, which also provides the Court with jurisdiction

in this case (Doc. 30, pg. 21-22) and which Report disregards." Appx430. That citation to their opposition to the Government's Motion to Dismiss reveals, however, that the Nesarikars' arguments relating to the Privacy Act were wholly embedded within their arguments regarding the PRA. *Id.* It was thus not error for the district court to have found no Privacy Act allegation pleaded by the Nesarikars. And "[i]ssues not properly raised before the district court are waived on appeal." *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1295–96 (Fed. Cir. 2009).

## IV. THE NESARIKARS' REMAINING ARGUMENTS ON APPEAL ARE UNAVAILING

Though unrelated to standing, and thus beyond the scope of this appeal, the Government responds briefly to several additional arguments raised by the Nesarikars through their Informal Brief.

***First***, the Nesarikars allege at various points in their Informal Brief that the USPTO, the district court, or both, changed the standards for micro entity status without notice, in violation of 35 U.S.C. § 123(e). *See, e.g.*, IB. at 7–11, 14–15, 19–20. Though an interpretation of 35 U.S.C. § 123 is beyond the scope of this appeal, there has been no alteration of the standards for micro entity status or statutory

interpretation that would run afoul of *Kisor v. Wilkie*, 588 U.S. 558 (2019).

The Nesarikars claim that "[s]urprising small inventors by 'the upending of reliance' (*Kisor*) on, among others, recorded assignments and accepted MES certifications—without evidence and without due process—harms trust in USPTO and violates inventors' constitutional rights." IB. at 4. But the Nesarikars' reliance on *Kisor* is inapposite and their description of the USPTO's actions are contradicted by the record. In *Kisor*, the Supreme Court examined the scope of deference to "agencies' reasonable readings of genuinely ambiguous regulations" and discussed the guideposts of that deference including that "the regulatory interpretation must be one actually made by the agency . . . rather than any more ad hoc statement not reflecting the agency's views." *Kisor*, 588 U.S. at 577. Here, the Nesarikars don't identify what regulatory interpretation they allege occurred.

To the extent the Nesarikars are again claiming that the district court failed to appreciate or misinterpreted the language of 35 U.S.C. § 123(b), stating "has assigned, or is under an obligation by contract or law to assign," that contention is readily foreclosed by the record. *See,*

*e.g.,* Appx3 (discussing the distinction between an "automatic assignment or a promise to assign the patent in the future"). Nor is there is any aspect of standing that "depend[s] at least on the congressional intent of 35 USC 123 - Micro entity defined, including 35 USC 123(b)." IB. at Cover Form (ECF 7-1). The issue before the district court—and on appeal—is whether the Nesarikars adequately pleaded ownership and met their burden to establish standing.

And to the extent the Nesarikars are asserting that once self-certified, no challenge could be made to the self-certification, such a contention is both beyond the scope of this appeal and at odds with the text of 35 U.S.C. § 123. *See* IB. at 11 ("USPTO's new interpretations contradict the '288 Transaction History for 1/12/2023: 'Applicant Has Filed a Verified Statement of Micro Entity Status in Compliance with 37 CFR 1.29' and its confirmation in a filing receipt on 1/13/2023"). Requiring that an applicant actually meet the requirements of § 123—including limitations on previously filed applications, whether certain applications were actually under an obligation to be assigned, and whether that obligation was as a result of former employment—is not an addition or change to a requirement; it is merely compliance with the

existing requirement. *See, e.g.,* Appx26–27, Appx29–32, Appx34–38, Appx296–299 (describing the penalty system for failure to comply with micro entity status requirements).

In contrast, the Nesarikars' position—taken to its logical conclusion—would render the provisions of § 123 unenforceable and certifications of micro entity status effectively unchallengeable. *But see* § 123(f) ("[A]n entity that is found to have falsely made a certification under this section shall be subject to a fine, to be determined by the Director").

***Second***, the Nesarikars' reference to applications other than the '288 application and argument that the "Order disregarded that harm to Inventors in the other applications arises at least from USPTO's actions in '288 [application]" continues to misapprehend the scope of their Complaint and the present appeal. *See* IB. at 16–18. While the Nesarikars referenced other applications—and adverse decisions in those applications—in their communications with the USPTO in relation to the '288 application, *see, e.g.,* Appx58, the actual allegations in their Complaint are limited to the '288 application. Appx9–19. And while the Nesarikars sought injunctive relief—both from the district court and on

appeal—relating to applications ***other*** than the ’288 application, Appx422, those allegations do not expand the scope of their Complaint.

The district court was therefore correct in concluding that “after liberally construing Plaintiffs’ complaint, Plaintiffs’ allegations only relate to the ’288 application . . . [t]hus, the court disregards any allegations related to patent applications other than the ’288 application.” Appx416.

At bottom, the issue on appeal is whether the district court properly dismissed the Nesarikars’ Complaint—directed at actions that resulted in the abandonment of the ’288 application—for failure to adequately plead jurisdiction. Thus, the Court may disregard allegations relating to applications other than the ’288 application.[12] And to the extent the Nesarikars are attempting to argue that the district court improperly denied their motion for injunctive relief as moot, Appx5, such contention

---

[12] The Court denied the Nesarikars’ motion for injunctive relief relating to applications other than the ’288 application on December 12, 2025, ECF 21, and denied the Nesarikars’ motion for reconsideration on January 22, 2026, ECF 26.

was not developed either before the district court or here on appeal and is therefore waived. *Fresenius*, 582 F.3d at 1295–96.

***Third***, the Nesarikars make several due process allegations, claiming that the district court's "review [of the Report and Recommendation] was incomplete and erroneous" and that the USPTO "denied Inventors' right to apply for and prosecute '288 [application]." IB. 18–19, 22–23. While the Nesarikars cite generally to Article I, Section 8, Clause 8, relating to Congress's powers with respect to intellectually property, they have not identified the requisite interest to support a due process challenge. The Due Process Clause protects against the deprivation "of life, liberty, or property, without due process of law." U.S. Const. amend. V. And "[t]he first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest" in liberty or property. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999).

But the Nesarikars identify no protected interest or any deprivation of due process either before the USPTO or the district court. *See, e.g.*, *Alberico v. United States*, 783 F.2d 1024, 1027 (Fed. Cir. 1986) ("Once a property interest is shown, all due process requires is notice and an

opportunity to be heard.") (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985)). The record reflects substantial opportunity for the Nesarikars to be heard before the USPTO in connection with the '288 application. *See, e.g.*, Appx34–38, Appx82. And there is no indication that the district court failed to conduct the *de novo* review it expressly stated it conducted. Appx1–2. Nor do the Nesarikars cite any precedent for the proposition that due process permits a party to dictate the contents of a court's analysis and opinion.

## V. THE NESARIKARS' CLAIMED RELIEF IS UNSUPPORTED AND UNAVAILABLE

In the cover form to their Informal Brief, the Nesarikars demand that this Court "reverse Order (the district court order of US District Judge J. Campbell Barker), and grant the motion for preliminary injunction." ECF 7-1 at 2. The full extent of relief available to the Nesarikars from this Court, however, is a remand to the district court for further proceedings to address standing and the Government's remaining arguments in support of its Motion to Dismiss.

As an initial matter, the Nesarikars fail to develop any argument in support of their contention that this Court either could or should grant

their Motion for Preliminary Injunction that was denied by the district court. Nor does it follow logically that the motion, which was denied as moot, should now be granted—assuming this Court reverses the district court's dismissal without prejudice. For this reason alone, the requested relief should be denied as waived. *Fresenius*, 582 F.3d at 1295–96.

In any event, if this matter were returned to the district court, the Government raised additional arguments—unaddressed by the district court in light of its finding that the Nesarikars had failed to establish standing—that would need to be resolved prior to the award of any relief. For example, the Government moved to dismiss the Nesarikars' Complaint based on a failure to exhaust all administrative remedies. Appx213–217; Appx422 ("Because the court recommends dismissal of Plaintiffs' claims for lack of standing, the court does not reach Defendants' alternative argument that Plaintiffs failed to exhaust all administrative remedies related to the '288 application under the APA.").

And the Government opposed the Nesarikars' motion for preliminary injunction on multiple bases, including no likelihood of success on the merits and no showing of irreparable harm, that were left unaddressed by the district court. Appx423 ("[B]ecause all of Plaintiffs'

claims are subject to dismissal for the reasons discussed herein, Plaintiffs cannot show a likelihood of success on the merits.”). As the Government argued, Appx186–190, arbitrary and capricious review of agency action is highly deferential and judicial review under this standard is “narrow” and limited to “whether the [agency] examined ‘the relevant data’ and articulated ‘a satisfactory explanation’ for [its] decision, ‘including a rational connection between the facts found and the choice made.’” *Dep’t of Com. v. New York*, 139 S. Ct. 2551, 2569 (2019) (quoting *Motor Vehicle Mfrs. Ass’n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). The Nesarikars have showed neither below nor on appeal that the USPTO’s examination of the ’288 application was arbitrary and capricious or otherwise not in accordance with the law. And, as argued before the district court, Appx190–192, the harms alleged by the Nesarikars are specifically considered non-irreparable under binding precedent.

## CONCLUSION

For the foregoing reasons, the Court should affirm the district court’s dismissal.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

SCOTT BOLDEN
*Director*

January 23. 2026

*Philip Charles Sternhell*
PHILIP CHARLES STERNHELL
*Assistant Director*
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, DC 20530
*philip.c.sternhell@usdoj.gov*
T: (202) 353-0522
F: (202) 307-0345

## CERTIFICATE OF SERVICE

I hereby certify that on January 23, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system, and served the foregoing brief on Plaintiffs-Appellants via the same.

*Philip Charles Sternhell*
PHILIP CHARLES STERNHELL

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the requirements and type-volume limitation of Fed. R. App. P. 32 and Fed. Cir. R. 32. This brief contains 12,799 words and 1,262 lines, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b). This brief has been prepared using Microsoft Word in size 14-point Century Schoolbook font, a proportionally spaced typeface.

*Philip Charles Sternhell*
PHILIP CHARLES STERNHELL