No. 2026-1167

# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FEDERAL CIRCUIT

**ASHLESHA A. NESARIKAR, ANIKA A. NESARIKAR, ABHIJIT R. NESARIKAR,**

*Plaintiffs-Appellants*

v.

**THE UNITED STATES PATENT AND TRADEMARK OFFICE, JOHN A. SQUIRES, Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office,**

*Defendants-Appellees*

On Appeal from the United States District Court for the Eastern District of Texas in Case No. 4:25-cv-00423-JCB-JDL, District Judge J. Campbell Barker

**Informal Reply Brief of Appellants Filed under FCR 34(a)**

Of:
Ashlesha A. Nesarikar, *pro se;*
Anika A. Nesarikar, *pro se;*
and Abhijit R. Nesarikar, *pro se;*
hereinafter "Inventors", "we", or "us"

# Table of Contents

**I** Introduction.................................................................................................... 1

 **I.a** USPTO attempts to conceal its failure in implementing 35 USC 123.............2
 **I.b** USPTO's exercise of alleged authority under the guise of 35 USC 123 is predatory.........................................................................................8
 **I.c** USPTO admits that Inventors are subject to an injury in fact by identifying specific penalties to Inventors arising from its actions.............13

**II** Inventors are the owners of the unassigned patent applications.........................16

**III** Order conflates "has assigned" with "is under an obligation to assign", contradicting 35 USC 123(b).................................................................19

**IV** Order relies on anachronistic fallacy in determining lack of standing...............20

**V** Order's dismissal stands on violation of 35 USC 123(e)....................................21

**VI** Order disregards USPTO's contradictory stances on other applications...........24

**VII** Inventors request de novo review by CAFC....................................................25

 **VII.a** Order's review was incomplete and erroneous..........................................25
 **VII.b** Order imposed improper requirements at the pleading stage....................25
 **VII.c** Even if Inventors were not owners, Inventors are still harmed as patent applicants and objects of USPTO's adverse actions...............................27
 **VII.d** Order errs in finding no reputational harm to Inventors...........................29
 **VII.e** Order erred in disregarding PRA evidence and arguments......................30
 **VII.f** Order violated due process in construing Inventors' Complaint................36

**VIII** Order disregarded USPTO's overt attempt to subvert judicial review............36

**IX** Order violated FRCP 8(f)................................................................................37

**X** Inventors traverse USPTO's arguments against the requested relief...................37

 **X.a** Inventors have not waived arguments.........................................................37
 **X.b** There is no remedy left within USPTO, and USPTO failed to traverse the evidence of exhaustion of administrative remedies in the Complaint......38
 **X.c** Remanding to the district court is moot if CAFC finds standing.................40

**XI** If the district court's decision stands, it will disproportionately harm small businesses...........................................................................................41

# I	Introduction

[1,2]USPTO argues that inventors certifying micro entity status lack standing for judicial review of USPTO's enforcement of who may make the certification under 35 USC 123, thereby rejecting any accountability for its enforcement. USPTO reiterates its arguments from the district court, and its *post-hoc* characterizations of its agency actions diverge from the agency record itself.

It is revealing that USPTO alleges without evidence, reasoning, or discussion of the text of the statute[3] that "an interpretation of 35 U.S.C. § 123 is beyond the scope of this appeal" (FC 27, pg. 69) while simultaneously relying on allegations that inherently denote a disputed interpretation of the statute, not only in the judiciary, but also in USPTO's agency actions. See, e.g., Appx0010-0012, Appx0017-0018, Appx0213, Appx0389-0390, FC 27, pg. 48. Since our first response to the agency actions on 05/23/2024, we have consistently challenged USPTO's violations of 35 USC 123. Appx0048; FC 7-1, pg. 8-9. Throughout its brief (FC 27), USPTO admonishes CAFC, erroneously and without supporting authority, on the scope of the appeal. These admonishments are attempts to conceal

---

[1]	"FC" refers to CAFC filings in the CM/ECF system.

[2]	Addendum A (FC 7-2) at AA063 contains a Glossary of Abbreviations. When cited, Addendum A (FC 7-2), Addendum B (FC 14-3), Addendum C (FC 22-2), and Addendum D (attached herewith) are referenced by "AA", "AB", "AC", and "AD" respectively, followed by page numbers.

[3]	37 CFR 1.29 represents regulations regarding parts of 35 USC 123.

that USPTO undermined the intent of Congress and disparaged small businesses.

**I.a    USPTO attempts to conceal its failure in implementing 35 USC 123.**

This case represents a severe failure[4] of USPTO's implementation of 35 USC 123 (AA001-003), rooted in its bias against small businesses and ignorance of small business operations. To conceal its severe failures, USPTO demanded we falsely admit to making an erroneous certification under 35 USC 123 and make excess payments across multiple applications. We responded to every agency action and repeatedly urged USPTO to comply with 35 USC 123. USPTO's excess payment demands were met in many of our applications. However, we would not make the false admission. Regardless of whether the payment demand was met or not, USPTO deviated from its established procedure, misappropriated payments, and withheld responses to our petitions. Congress defined micro entity status in 35 USC 123 ("Micro entity defined") to promote and protect small businesses' and inventors' innovation by allowing payment of reduced patent fees. 35 USC 123(a) and 35 USC 123(b) define micro entity (AA001):

§ 123. Micro entity defined
(a) In General.—For purposes of this title, the term "micro entity" means

---

4    USPTO attempts to conceal this failure from the judiciary and the public, employing evasions, obfuscation, material misrepresentations, misappropriation of payments, refusal to respond, refusal to make IP records complete and truthful, and retaliation. USPTO's two distinct offers to settle out of court (initiated in emails beginning on 05/23/25 and 12/12/25) would not have cured harm to the public.

an applicant who makes a certification that the applicant—
(1) qualifies as a small entity, as defined in regulations issued by the Director;
(2) has not been named as an inventor on more than 4 previously filed patent applications, other than applications filed in another country, provisional applications under section 111(b), or international applications filed under the treaty defined in section 351(a) for which the basic national fee under section 41(a) was not paid;
(3) did not, in the calendar year preceding the calendar year in which the applicable fee is being paid, have a gross income, as defined in section 61(a) of the Internal Revenue Code of 1986, exceeding 3 times the median household income for that preceding calendar year, as most recently reported by the Bureau of the Census; and ...
(b) Applications Resulting From Prior Employment.—
An applicant is not considered to be named on a previously filed application for purposes of subsection (a)(2) if the applicant has assigned, or is under an obligation by contract or law to assign, all ownership rights in the application as the result of the applicant's previous employment.

Congress, in its foresight and awareness of USPTO's shortcomings,

codified in 35 USC 123(e):

(e) DIRECTOR'S AUTHORITY.—In addition to the limits imposed by this section, the Director may, in the Director's discretion, impose income limits, annual filing limits, or other limits on who may qualify as a micro entity pursuant to this section if the Director determines that such additional limits are reasonably necessary to avoid an undue impact on other patent applicants or owners or are otherwise reasonably necessary and appropriate. **At least 3 months before any limits proposed to be imposed pursuant to this subsection take effect, the Director shall inform the Committee on the Judiciary of the House of Representatives and the Committee on the Judiciary of the Senate of any such proposed limits.**[emphasis added]

USPTO chose not to promulgate regulations corresponding to 35 USC 123(e).

In 2024, USPTO retroactively imposed additional limits for applications

claiming micro entity status, more than a year after duly accepting micro entity certifications under 35 USC 123 in those same applications. The first sign of the additional limits was not promulgation of new regulations, but issuance of the Demand, a notice preemptively and retroactively penalizing inventors and demanding inventors either submit to new inquiry of undisclosed scope or admit to erroneously certifying micro entity status and make additional payments under threat of abandonment of their applications. Appx0025-27. The Demand alleged a "*prima facie*" case of erroneous certification, but that allegation violated 35 USC 123(b) and USPTO's own long-standing and published guidance ("There is no limit on the number of previously-filed patent applications that may be excluded from the "four previously filed application" limit contained in the "gross income" definition for micro entity status on the basis of prior employment." Appx0048).

USPTO misrepresents that the Demand was "merely compliance with the existing requirement", and that "there has been no alteration of the standards for micro entity status or statutory interpretation". FC 27, pg. 69-72. We received the Demand in several applications, including U.S. patent application 18/069,288 ('288), on 04/22/24. Appx0025-27. On 04/26/24, Ashlesha Nesarikar asked the examiner assigned to '288 about what specific information USPTO needed from us to support micro entity status. The examiner admitted she did not know and that

this was a new process and the first time USPTO had sent out the Demand in utility patent applications. Appx0012. In an attempt to legitimize its misrepresentation before CAFC, USPTO heavily cites a *post hoc* document dated 06/06/25 and published in its Official Gazette on 07/08/25—**over a year after it sent the Demand on 04/22/24.** FC 27, pg. 16-20, 71-72. Appx0296-0299. The *post hoc* document purports to derive authority from 35 USC 123(f) which was enacted, the document acknowledges, by the "Consolidated Appropriations Act of 2023" and further amended in "December 2024". Appx0297. Thus the *post hoc* document could not have represented USPTO policy on the filing date of our micro entity certifications, 12/21/2022. Even worse, USPTO's actions in the district court indicate USPTO created and published the *post hoc* document **in response to our district court action against USPTO**[5]. As such the *post hoc* document, and USPTO's *post hoc* justifications based on it, lack credibility[6] and should be

---

[5] The Complaint and motion for preliminary injunction were filed on 04/24/25. On 05/09/25, after we notified the district court that the time to respond to the motion had expired without a response from USPTO, USPTO requested a 28 day extension to respond. Appx0143-0147. The district court granted the extension over our opposition. Appx0150-0158. USPTO filed its motion to dismiss and opposition to the motion for injunction on 06/10/25. On 06/23/25, in opposition to the motion for injunction, USPTO relied on the *post hoc* document as an exhibit. USPTO created the *post hoc* document—during the extension of time—to retroactively justify agency actions already under judicial review.

[6] USPTO falsely alleges that the *post hoc* document "summarizes the applicable regulations and highlights the agency's existing authority to collect additional

afforded no deference (*Kisor v. Wilkie,* 588 U.S. ___ (2019)). Moreover, Order[7]

erred as USPTO's interpretations of 35 USC 123 "are not entitled to deference" in

light of *Loper Bright*[8].

Further, USPTO identified a host of information—that was not required

by statute, regulation, or guidance to be submitted to USPTO at the time of

certification—that it demanded we provide. USPTO identified the alleged absence

of such information as justification to retroactively "preclude micro entity status".

FC 27, pg. 23-27. The first time USPTO alleged a requirement to disclose such

information was progressively[9] over the course of several adverse agency actions

throughout 2024, alleging requirements *ad hoc* in an attempt to counter our

---

information and levy fines where appropriate". FC 27, pg. 19. The existing
regulations do not justify the document. The document constitutes a
""convenient litigating position" or "*post hoc* rationalizatio[n] advanced" to
"defend past agency action against attack."" as rejected in *Kisor.*

[7] Final judgment and accompanying order by District Judge J. Campbell Barker
of the district court on 10/01/2025. Appx0001-0007.

[8] *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024) states "agency
interpretations of statutes—like agency interpretations of the Constitution—are
not entitled to deference. Under the APA, it thus "remains the responsibility of
the court to decide whether the law means what the agency says."".

[9] The requirements for information were imposed in an *ad hoc* manner, were
based on factually incorrect information, and exhibited a lack of understanding
of small businesses and small business operations. When a demand for
information was satisfied, USPTO responded by demanding a broader scope of
information. This continued until USPTO refused to respond to our petitions,
misappropriated payments made, carried out its threat to abandon applications,
and failed to answer our subsequent petitions regarding misappropriated
payments for over a year. Appx0100-0101.

responses while disregarding our evidence. USPTO duly approved our certifications under 35 USC 123 as early as January 13, 2023, but over a year later it challenged its own approvals, unlawfully demanding more information and upending our reliance on the approvals and 35 USC 123. USPTO imposed the Demand without OMB[10] approval and, in a matter of months, sent the Demand identically to over a dozen distinct applicants[11], violating the Paperwork Reduction Act (PRA), 44 USC 3501-3521. Appx0235-0280. See, e.g., 44 USC 3502 defining "collection of information" (AD004); 44 USC 3507 requiring OMB approval of a collection of information in advance, public notice and comment, and display of an OMB control number (AD006-008); and 44 USC 3512 codifying "Public Protection" (AA009-010).

USPTO's misrepresentations are a desperate attempt to characterize the Demand as anything other than an *ad ho*c, retroactive, unlawful, and nontransparent policy change enforced on the demographic least likely to seek judicial review. Judicial review of USPTO's unlawful actions are predominantly sought by large entities as opposed to micro entities. As a result, USPTO's patent

---

[10]  Office of Management and Budget

[11]  Appx0235-0280 evidences merely **a sample** of the identical demands for collection of information sent to more than 10 persons between 04/19/24 – 01/17/25. Only USPTO, as the custodian of records, knows the true scope of the violations.

allowance rate for micro entities is half that for large entities. A legal scholar

researched the trend, reporting: "Frankly, I was surprised by the disparity...the

allowance rate varies dramatically by entity size: large entities achieved an 80%

allowance rate…and micro entities just 40%" (AD012). It is plain that USPTO is

surprised by, and penalizing us for, publicly voicing its unlawful procedural flaws

and systemic failure in implementing 35 USC 123.

**I.b    USPTO's exercise of alleged authority under the guise of 35 USC 123 is predatory.**

Not only did USPTO violate 35 USC 123(b), it overtly disregarded SEC.

30. SENSE OF CONGRESS in the America Invents Act, reflecting its bias against

small businesses and its ignorance of small business operations (AD001-002):

> SEC. 30. SENSE OF CONGRESS. It is the sense of Congress that the patent system should promote industries to continue to develop new technologies that spur growth and create jobs across the country which includes **protecting the rights of small businesses and inventors from predatory behavior that could result in the cutting off of innovation.** [emphasis added]

This case lays bare an extensive record of USPTO's predatory behavior

in violating rights of small businesses and individual inventors. USPTO was

warned on several occasions of its bias against small businesses and ignorance of

small business operations, including (Appx0427-428):

> [USPTO] dismissed the assignment in '844, stating "...assigns rights to an apparent family member who resides at the same address" (Doc. 17, pg. 15 and Doc. 16, pg. 24) and "...who shares the same last name and

resides at the same address as all Plaintiffs" (Doc. 16, pg. 14), as indicated at least in Doc. 32, pg. 5. The assignee in '844—Dr. Shalaka Nesarikar—is a respected small business owner and a dentist who graduated from Baylor College of Dentistry (now known as Texas A&M College of Dentistry) in Dallas, TX. Dr. Nesarikar and her businesses have served her community for over 20 years. Defendants' statements undermine, if not disparage, small business owners.

Despite the warning, USPTO continues (FC 27, pg. 26) to undermine Dr. Shalaka Nesarikar, her businesses, and the evidenced assignment in '844[12,13], e.g., by falsely reiterating in CAFC that we provided no patent assignments. FC 27, pg. 23, 36.

Despite USPTO's lack of small business expertise, USPTO alleges it has "broad authority" to accuse small business operations of "fraud" without evidence under the guise of interpreting 35 USC 123. FC 27, pg. 18. By mandating oversight of all additional limits to the micro entity definition, Congress rejected such "broad authority" in 35 USC 123(e), and it prohibited predatory behavior that cuts off innovation in SEC. 30. SENSE OF CONGRESS. Further, USPTO misrepresents the agency record, falsely alleging we "...refused...to respond to a Notice of

---

[12] U.S. patent application 17/906,844 issued as U.S. Patent 11,741,562 on 08/29/2023.

[13] The '844 assignment was disregarded by USPTO in issuing the Demand. Appx0026-27, Appx0019-0020, Appx0072, Appx0075, Appx0077. The magistrate judge disregarded the '844 assignment even though it was explained in the Complaint and evidenced in the district court and agency record. In response to our objections, the district court judge acknowledged the assignment, but in doing so, applied an anachronistic fallacy resulting in erroneous dismissal (also see FC 7-1, pg. 14-16).

Payment Deficiency and substantiate...entitlement to micro entity status". FC 27, pg. 12. The agency record shows we responded to **every** communication, even though, as confirmed by multiple inquiries to different USPTO personnel and departments[14], USPTO lacked published and vetted provisions to respond under 35 USC 123(b). We filed multiple petitions with USPTO. Each new decision from USPTO reflected predatory and increasingly irrational attempts to justify the Demand—e.g., misrepresentation, fabrication, disregarding requests to correct its errors, refusal to provide evidence for its allegations, and violations of its own procedures (e.g., 37 CFR 1.104(d)(2)). In an attempt to cope with USPTO's irrational decisions arising out of the Demand, excess payments were made.

A table with examples of the excess payments and retaliatory actions in several of our applications is included below. It shows the date of micro entity certification under 35 USC 123, the payments made to USPTO pursuant to the certification, the excess payments arising out of the Demand (and total payments

---

[14] This includes, among others: **(a)** the examiner stated "I am not examining the application" and directed us to contact the Office of Patent Legal Administration (OPLA); **(b)** OPLA did not respond except to require us to contact the Patent Ombuds Office (POO); **(c)** POO outright evaded our inquiry and advised us to admit to erroneous certification; **(d)** the signatory to the Demand, the Technology Center Group Director, did not respond; and **(e)** in the months to come, the Office of Petitions, outdoing all the others, attempted to gain a false admission of erroneous certification by predatory tactics. Appx0011-0020.

up to that time), and some of USPTO's retaliation during USPTO and judiciary proceedings.

| Application #: 35 USC 123 certification date | Payment under 35 USC 123 | Excess payment arising out of the Demand | In addition to adding the Complaint in all the applications[15], USPTO's retaliatory actions include: |
|---|---|---|---|
| 15/940,792 ('792): 03/29/2018 | $2,676 | $2,164 paid on 10/29/2024 (Total Paid: $4,840) | USPTO stopped responding after the Complaint was filed. |
| 16/591,555 ('555): 10/02/2019 | $3,639 | $3,473 paid on 10/29/2024 (Total Paid: $7,112) | USPTO stopped responding after the Complaint was filed. USPTO made errors in the IP record, including payment misappropriation, and failed to correct them, despite being provided with evidence of those errors. |
| 18/069,263 ('263): 12/21/2022 | $751 | $1,833 paid on 11/19/2024 (Total Paid: $2,584) | Despite our petition with the demanded excess payments submitted under threat of abandonment, USPTO misappropriated the excess payments and carried out its threat of abandonment. The petition has gone unanswered for more than a year. |

---

[15] USPTO entered the Complaint from the district court case into the IP records of these and other applications, in an attempt to justify altering their IP records and designating them as "Involved in Court Proceedings". Duplicitously, USPTO admonished the district court that these altered applications are irrelevant to the district court's review.

| | | | |
|---|---|---|---|
| 18/069,382 ('382): 12/21/2022 | $856 | $1,896 paid on 11/19/2024 (Total Paid: $2,752) | Despite our petition with the demanded excess payments submitted under threat of abandonment, USPTO misappropriated the excess payments and carried out its threat of abandonment. USPTO admitted that a response to our petition is outstanding. The petition has gone unanswered for more than a year. |

USPTO proffers that the judiciary should ignore evidence of USPTO's retaliation for our Complaint because the retaliatory actions during judicial proceedings are not pled in the Complaint. Accepting this argument shields USPTO from accountability for retaliation against commencement of civil action —a prospect fatal to small businesses seeking judicial review against USPTO.

USPTO continued its predatory behavior in CAFC. In its agency action USPTO materially misrepresented (Appx0030):

> To assist applicant in checking its records, the Office is providing applicant with the application numbers of **published applications** …
> 10165455 (Abhijit R. Nesarikar only)...
> 15940792 … [emphasis added]

USPTO disregarded our attempts to correct the misrepresentation (Appx69-70, Appx0072, Appx0075, Appx0077)[16], including:

---

[16] Though 15940792 was also unpublished, as the applicants of 15940792, we could access 15940792.

Despite [our] searches after receiving [USPTO's] letter, [we] have not found application #10165455. [We], in good faith, conclude that application #10165455, if it exists, is not published. [USPTO's] error undermines [our] ability to respond to [USPTO's] letter.

To reiterate, Abhijit Nesarikar does not recognize application #10165455. Based on filing dates of neighboring application numbers, the application appears to have been filed in 2002. To the best of his recollection, Abhijit Nesarikar did not authorize filing of an application on his behalf in 2002.

USPTO continued to cite alleged application 10165455 in an attempt to justify the Demand and the adverse agency actions arising therefrom. USPTO maintained the material misrepresentation in the district court, disregarding evidence in Appx0091[17]. Only after we explained in CAFC that USPTO relied on fabricated evidence, did USPTO admit to the material misrepresentation, stating "[10165455] is an unpublished application". FC 27, pg. 25. However, continuing its predatory tactics in an attempt to justify the fabrication, USPTO resorted to the absurd and false allegation that "the Nesarikars are aware [of 10165455]", even though in 2002, Anika Nesarikar was not yet born and Ashlesha Nesarikar had not yet started elementary school. FC 27, pg. 25.

**I.c     USPTO admits that Inventors are subject to an injury in fact by identifying specific penalties to Inventors arising from its actions.**

In attempting to justify its agency actions under review, USPTO alleges

---

[17] USPTO's own patent search system confirmed: "Sorry, the entered Application Number '10165455' is not available. The number may have been incorrectly typed, or assigned to an application that is not yet available for public inspection". Appx0091.

(FC 27, pg. 19):

> … "[a]n entity is subject to the penalty provisions of 35 U.S.C. 41(j)) and 123(f) only when inappropriately discounted fees were paid on or after December 29,2022." … The Nesarikars filed the '288 application on December 21, 2022, and have paid numerous fees in connection with that prosecution after December 29, 2022.

USPTO itself identifies an "injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized… and (b) actual or imminent" arising from its agency actions, including the Demand, as required in *Lujan*[18] (internal quotes omitted). USPTO's application of "35 U.S.C. 41(j)) and 123(f)" is an admission that we have standing to bring our Complaint, independent of other reasons for standing. Moreover, USPTO's attempted justification further proves that USPTO erred in its agency actions, including sending the Demand to us —all of the fees ($455) in '288 were paid on its filing date[19] of 12/21/22 (AD011). USPTO's attempted justification is an admission that it violated its own interpretation of 35 USC 123(f) (AA002-003) in taking adverse action against us.

Regardless of factual error in USPTO's allegation, USPTO makes clear that we are objects of its agency action under *Lujan* at least by identifying us as "an entity...subject to the penalty provisions". The fact that the penalty provisions are wrongfully applied only exacerbates harm to us (AD011).

---

[18]  *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)
[19]  Based on the filing date of the provisional application, the nonprovisional filing deadline for '288 was 12/22/22.

The wrongfully applied penalty continues USPTO's predatory tactics from the agency actions and the district court, signifying a pattern of predatory responses to us identifying its systemic failure in implementing 35 USC 123 (see, e.g., sections I.a and I.b). The systemic failure harms not only us but also other small businesses and inventors. USPTO sent the Demand identically to over a dozen distinct small businesses and inventors. Our 11/19/24 petitions objected to the Demand, sent in each of applications "18069263, 18069288, 18069382, 18069474, 18069596, 18069721, 18069819, and 18069883", and subsequent agency actions attempting to justify it. Appx0039-0045. Those petitions evidenced USPTO's failed implementation of 35 USC 123 rooted in bias against small business and unlawful and predatory tactics. USPTO simultaneously abandoned all applications containing that evidence without responding—even misappropriating payments accompanying petitions to do so. Appx0098-0101, Appx0381, Appx0106-0108[20]. USPTO's pattern of penalizing us for publicly voicing USPTO's procedural flaws and systemic failure in implementing 35 USC 123 is retaliation against our speech, violating our free speech and First Amendment rights.

---

[20] As already evidenced, extension of time fees are not applicable to USPTO petitions. Appx0098, Appx0340. USPTO demanded them for timely filed petitions, then misappropriated them and other excess payments and abandoned our applications.

**II      Inventors are the owners of the unassigned patent applications.**

USPTO failed to substantively traverse our arguments that the district court erred in disregarding Rule 301 of the Federal Rules of Evidence (AA039) and that Apple, the defendant in *Omni*, produced the evidence required for Apple to allege lack of standing.

USPTO argues that "the plaintiff in *Omni…* avoid[ed] dismissal… by reference to the specific terms and language of the obligation to assign in question". FC 27, pg. 51. However, USPTO does not substantively traverse that Order erred at least by disregarding that in *Omni*: **(1) Omni, the plaintiff, was not the inventor** (and therefore not presumed the owner) and **(2) Apple, the defendant, did not speculate on ownership of the inventor, Dr. Islam.** Instead, complying with Rule 301, Apple produced evidence to argue "Dr. Islam could not have assigned any rights to Omni because he never owned the asserted patents—as the record demonstrates... ", including "the specific terms and language" in support of its motion to dismiss. Appx0425. The district court disregarded our arguments and misconstrued *Omni*. Should the Court condone USPTO's speculation, inventors' patent ownership conferred by the Constitution and upheld by *Roche*[21] is at risk (see section XI).

---

[21] *Board of Trustees of the Leland Stanford Junior Univ. v. Roche Molecular Systems, Inc.*, 563 U.S. 776 (2011)

USPTO produced no evidence of transfer of ownership ("has assigned" as recited in 35 USC 123(b)), violating Rule 301 (AA001, AA039). USPTO relies solely on our statements before the agency asserting rights under 35 USC 123(b) based on obligation to assign. FC 27, pg 47. Therefore, a determination other than confirmation of our standing necessarily requires analysis of the application of Rule 301 and interpretation of 35 USC 123 by CAFC. The district court erred in forgoing the analysis and the interpretation. USPTO's speculation (that our explanation regarding obligation to assign in the context of 35 USC 123(b) during the agency actions proves a consummated transfer of ownership) contradicts CAFC's decision in *Omni*. CAFC did not waver in presuming inventors to be owners of their patents. In *Omni*, *Advanced Video Techs*[22]*,* and *Abraxis Bioscience*[23], CAFC did not entertain mere speculation and instead relied on evidence produced by the party alleging that ownership transfer had been executed. Under Rule 301, it is USPTO's burden to produce evidence to rebut the presumption of our ownership. All of USPTO's allegations of "evidence" that Inventors are not owners stand on erroneous interpretation of 35 USC 123 (AA001-003). The district court disregarded these violations of Constitutional rights of inventors, Rule 301, and 35 USC 123.

---

[22] *Advanced Video Techs LLC v. HTC Corp.*, 879 F.3d 1314 (Fed. Cir. 2018)
[23] *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359 (Fed. Cir. 2010)

USPTO appears to newly cite the Complaint as its "evidence" but provides no quotation, and it is unclear to what text it refers (e.g., FC 27, pg. 52). To the extent USPTO references Complaint paragraph 52 (by citing "Appx19-20"), that paragraph does not support USPTO's argument[24]. USPTO's only other references are to the agency record that is the subject of judicial review.

Further, USPTO newly alleges that the ownership presumption "doesn't survive the allegation of a contractual encumbrance in the Nesarikars' Complaint" and "the only information related to ownership of the '288 application, pleaded by the Nesarikars in their Complaint, references a transfer of all rights in that application as a result of former employment". FC 27, pg. 48, 49. It is unclear to what text in the Complaint, if any, USPTO newly refers. Neither USPTO nor the district court identified any such allegations in the Complaint. USPTO evasively attempts to obscure the issues in the Complaint: USPTO's arbitrary, capricious, and unlawful actions employed in attempting to conceal its failures in implementing 35 USC 123.

---

[24] "Appx19-20" shows that in attempting to retroactively justify the Demand, USPTO misrepresented that its own records, "Office assignment records", contained no evidence of recorded assignments for '844 even though "assignment of application number 17906844 was recorded on 07/13/2023 and is publicly accessible through the USPTO's website (reel/frame: 064245/0121)".

**III** **Order conflates "has assigned" with "is under an obligation to assign", contradicting 35 USC 123(b).**

Contrary to USPTO's argument (FC 27, pg. 70-71), the district court's opinion in Appx0003 conflates "has assigned" with "is under an obligation to assign", at least by erroneously holding that there has been an "assignment" in '288 based solely on the premise that "Plaintiffs have admitted that they are...obligated to assign their rights", rendering "obligation to" superfluous. Appx0003. Order's conflation violated 35 USC 123. All our statements regarding '288 were of **obligation to assign** yet the district court decides that it "can mean...automatic assignment", referencing *Omni*. Appx0003. All interpretations of our statements of obligation to assign are governed by 35 USC 123 (AA001-003), as evident from the agency record and USPTO's own argument that "the Nesarikars averred [they are] micro entity applicants because they are obligated to assign all rights...as a result of former employment". FC 27, pg. 12. None of the authorities cited by USPTO and the district court are case law regarding 35 USC 123. Without judicial interpretation of 35 USC 123—which the district court failed to provide—the cited authorities are peripheral at best and our due process rights are denied. The absence of judicial interpretation of 35 USC 123—in light of USPTO's *ad hoc* implementation of 35 USC 123—disproportionately disadvantages small businesses and upends their reliance on Article 1, Section 8,

Clause 8 of the Constitution.

USPTO's retroactive characterization that the district court is "[d]istinguishing between different types of obligations to assign" is false. FC 27, pg. 38. Order does not purport to distinguish between "obligations". There is no dispute that Order's determination was made without interpretation of 35 USC 123(b), on which merits of the agency actions, the Complaint, and the CAFC appeal hinge. We relied on the distinction Congress codified between "has assigned" and "is under an obligation…to assign" in 35 USC 123(b). USPTO upended that reliance. The district court disregarded the upending of reliance and disregarded that our statements of obligation to assign were under the purview of 35 USC 123(b).

**IV      Order relies on anachronistic fallacy in determining lack of standing.**

USPTO misrepresents the agency record to avoid addressing the anachronistic fallacy. USPTO does not substantively traverse our argument or the anachronistic fallacy. Instead USPTO relies on conclusory assertions and resorts to falsely labeling evidence from the agency record an "unsupported contention" in an attempt to conceal its failures. FC 27, pg. 59.

However, the evidence shows: **(a)** we notified USPTO of child applications of specific provisional patent applications applicable under the "is under an obligation ... to assign" exception defined in 35 USC 123(b) "on and

before the filing date" of 12/21/2022 (Appx0070);  **(b)** '844 is one of those child applications (Appx0072); **(c)** '288 is one of those child applications (Appx0048 and Appx0036); **(d)** we identified to USPTO the specific prior employment resulting in the obligation to assign those child applications (Appx0070); and **(e)** on 07/13/2023, ownership in '844 was transferred by a consummated assignment which the assignee recorded with the USPTO on the same day (Appx0089-0090). We presented this evidence to USPTO and the district court to inform them "[t]he assignment in '844 and the obligation to assign in '288 result from the same employment" and that their "speculation of "automatic assignment" (as alleged in *Omni*)… constitutes an allegation that the '844 assignment is at least superfluous or invalid". Appx0426; FC 7-1, pg. 15. The speculation contravenes CAFC's reasoning in *Abraxis*, including: "under our "promise to assign" cases, a subsequent written agreement is necessary to consummate the assignment" and "the purported assignment is a nullity if the assignor had nothing to assign". Order's dismissal erroneously relied on holding the '844 assignment "a nullity".

**V**     **Order's dismissal stands on violation of 35 USC 123(e).**

USPTO does not substantively traverse our arguments regarding the violations of 35 USC 123(e) in the agency actions and in the dismissal, relying primarily on conclusory assertions. Section I.a shows USPTO misrepresents its procedures and regulations before the district court and CAFC. USPTO attempts

to, "under the guise of interpreting a regulation…create *de facto* a new regulation", which *Christensen v. Harris County*, 529 U.S. 576 (2000) rejected. Congress expressly prohibited USPTO's "*de facto*...new regulation", including conflating "has assigned" with "is under an obligation...to assign" in 35 USC 123(b), which would limit "who may qualify as a micro entity" without informing Congress as required by 35 USC 123(e). However, the district court's overly deferential adoption of USPTO's interpretation accepts and perpetuates "additional limits" in violation of 35 USC 123(e). Under *Loper Bright*, Order erred in failing to set out its own interpretation of 35 USC 123. Under *Kisor* and given that the relevant regulation USPTO relies on, 37 CFR 1.29(b), parrots 35 USC 123(b), USPTO is not entitled to such deference—neither in agency actions, nor in federal courts. There is no question of **any** deference to USPTO under *Kisor*, as USPTO did not promulgate regulations for 35 USC 123(e). In fact, USPTO suppressed 35 USC 123(e) in agency actions, guidance, and regulation.

USPTO argues that the "self-certification", as **defined by Congress in 35 USC 123 and adopted by USPTO in 37 CFR 1.29** does not bind USPTO in any way, even after USPTO duly accepts it. FC 27, pg. 71. This means small businesses and inventors who made that certification, even after its due acceptance, are left to contend with perpetual ambiguity. Worse, alleging "broad authority", USPTO

would at its convenience and at an arbitrary time of its choosing, upend the small businesses' and inventors' reliance on the due acceptance with an unregulated and irrational investigation of scope so ever-expanding that they are practically compelled to accept any demand made by USPTO. FC 27, pg. 18.

Contrary to USPTO's allegations (FC 27, pg. 71-72), we are not challenging **legal** investigations. The issues before the Court are clear from the Complaint and Inventors' briefing—e.g., USPTO's unlawful issuance and maintenance of the Demand without evidence, without published and vetted provisions, in violation of statute (e.g, 35 USC 123(b) and (e), the PRA, and the Privacy Act), and while denying due process. USPTO now illogically admonishes CAFC that "taken to its logical conclusion—[the Complaint] would render the provisions of § 123 unenforceable". FC 27, pg. 72. It was USPTO's choice not to promulgate regulations to implement 35 USC 123(e) and (f), and merely parrot 35 USC 123(b) under the guise of rule-making. USPTO's actions indicate that it is impossible for small businesses to rely on the provisions of 35 USC 123(b), (e), and (f). USPTO unlawfully enforced the Demand on a large group of individual inventors and small businesses, venturing on the impracticality of seeking judicial review for that group. USPTO's alleged "logical conclusion" simply reflects its miscalculation and that USPTO shirked its duty to promulgate regulations.

The Court's interpretation of 35 USC 123 is integral not only in determining ownership and standing, but also so that inventors and small businesses can decide whether to certify micro entity status with knowledge and acceptance of the requirements and legal ramifications at the time of filing a patent application, rather than face "unfair surprise"[25] after already disclosing their inventions. Without that interpretation, rationality dictates that to avoid fatally damaging their intellectual property, individual inventors and small business should avoid filing patents and publicly disclosing their inventions to USPTO.

**VI      Order disregards USPTO's contradictory stances on other applications.**

USPTO failed to substantively traverse our arguments regarding the errors of Order. For example, USPTO does not address or dispute the portions of the Complaint that we identified as encompassing applications beyond '288. FC 7-1, pg. 19-20.

Further, as evidenced in the opening brief, FC 14-1, FC 14-2, and FC 22-1, in response to our challenge of its agency actions in the district court, USPTO adversely altered the IP records of our applications while arguing that those altered applications are irrelevant to the district court's review. See section I.b and the

---

[25] The Supreme Court states in *Kisor*: "a court may not defer to a new interpretation, whether or not introduced in litigation, that creates "unfair surprise" to regulated parties… This Court, for example, recently refused to defer to an interpretation that would have imposed retroactive liability on parties for longstanding conduct that the agency had never before addressed…".

table on page 11.

## VII  Inventors request *de novo* review by CAFC.

## VII.a Order's review was incomplete and erroneous.

USPTO failed to substantively traverse our arguments regarding the errors of Order.

## VII.b Order imposed improper requirements at the pleading stage.

USPTO's conclusory denial of intertwinement is defeated by its own arguments in its response brief. USPTO by its own arguments predicated its standing arguments on the validity of its agency actions, "indirectly arguing the merits in the context of federal jurisdiction" as prohibited in *Williamson*[26].

USPTO has proven incapable of arguing jurisdiction independently from causes of action (e.g., "…the representation that [Inventors] have assigned—or are obligated to assign—all rights in ten of the applications at issue…including the '288 application, is relevant to their claims of error". FC 27, pg. 30). In attacking the merits of the district court case under the guise of its jurisdictional challenge, USPTO proves intertwinement of the jurisdictional challenge and the merits of the case. USPTO does not deny that it already acknowledged intertwinement in at least Appx0213 and Appx0389-0390. For example, USPTO argued to the district court (Appx0213):

---

[26]  *Williamson v. Tucker*, 645 F.2d 404 (5th Cir.1981)

Plaintiffs have represented that they have assigned—or are obligated to assign—all rights in ten of the applications at issue… **ECF 1-1 at 47**. **Plaintiffs therefore lack the requisite standing to sue**. This is no mere technicality as Plaintiffs' purported entitlement to micro entity status, **errors alleged with respect to the Notices of Payment Deficiency**, and ultimate abandonment all **flow from the claim that Plaintiffs must assign all their rights**... [emphasis added].

USPTO *post hoc* argues that the merits are not intertwined with the jurisdictional challenge by mischaracterizing the "merits dispute". FC 27, pg. 55. The Complaint challenges USPTO's Notice of Payment Deficiency (the Demand). The Demand stands on a violation of 35 USC 123(b). The Complaint challenges the Demand's alleged "*prima facie*" case that "the submitted certification is in error" and resultant immediate conclusion that "the payments made...are deficient" as violating 37 CFR 1.29(b)—which parrots 35 USC 123(b). Appx0010, Appx0026. The Complaint also challenges the Demand as "omitt[ing] reference to 37 CFR 1.29(b) [parroting 35 USC 123(b)]". Appx0010. Moreover, to justify the Demand and agency actions arising therefrom, USPTO violated 35 USC 123(b) in deciding that "no assignment has been recorded" constitutes "evidence of erroneous certification" under 35 USC 123. Appx0018. USPTO repeatedly conflates "has assigned" with "is under an obligation to assign" under the guise of and in violation of 35 USC 123(b) throughout the agency record. Interpretation of 35 USC 123(b) and a ruling on the conflation is integral to the merits and resolving

USPTO's jurisdictional challenge.

**VII.c  Even if Inventors were not owners, Inventors are still harmed as patent applicants and objects of USPTO's adverse actions.**

USPTO's conclusory argument that we, the patent applicants, are not the object of the agency actions boils down to an absurd result: no one is the "object", no one is harmed, and no one has standing to bring USPTO's unlawful actions for judicial review. USPTO addressed the Demand and subsequent actions to us **by name**, an admission that we are "object[s] of the action...at issue" as described in *Lujan*, leaving "little question that the action ... caused [us] injury". Appx0025, Appx0428. Further, the agency record shows USPTO took multiple adverse agency actions against us in attempting to secure a false admission of erroneous micro entity certification. These include at least: subjecting us to indiscriminate inquiry spanning "sensitive, proprietary, or nonpublic information" and the threat of its public disclosure (Appx0042); newly expanding the scope of inquiry and demanding more information after we met the initial demand for information; refusing to answer duly-filed petitions; disregarding our requests for evidence for USPTO's conclusory allegations; demanding we admit to false allegations of "payment deficiency"; demanding we make excess payments to USPTO to avoid the indiscriminate inquiry and harm (Appx0025-27); and demanding that we admit to erroneously certifying micro entity status under 35 USC 123.

The right and procedure to claim micro entity status in an application is defined in 35 USC 123 by Congress: "For purposes of this title, the term "micro entity" **means an applicant** who makes a certification..." [emphasis added]. The Demand sent in '288 is a **determination of our rights and interests under 35 USC 123 for payments in all applications listing us as inventors, and not just in '288** (USPTO during the agency actions stated "[t]his application and any other application any of these inventors are on submitted after this application does not qualify for micro entity status" and in the district court stated "the ordering of Plaintiffs' applications is important to understanding their claims". Appx0087, Appx0325-0326. Appx0171). The Complaint and the agency record show USPTO deprived us of our rights under 35 USC 123 in all our applications filed on or after 12/21/22 (the filing date of '288). All our applications filed on or after 12/21/22 claiming micro entity status are refused examination and threatened with abandonment unless we pay excess fees. Appx0021, Appx0114-0116, Appx0384-0386. USPTO undermines our rights even in applications in which it does not dispute our ownership. (e.g., see Appx0228). Even considering evidence from '288 alone (as the district court erroneously did), it is plain given the definition of micro entity and USPTO's violations evidenced in the Complaint that USPTO deprived us personally of an interest guaranteed by Congress (see, e.g., Appx0018-0019,

Appx0021). As further evidenced by the request for relief (e.g., "in Inventors' **applications**" [emphasis added]. Appx0023), the harm set forth in the Complaint is not dependent on owning '288. For example, given the definition in 35 USC 123, the Demand of '288 unlawfully deprives us of the fee reduction provided for by Congress in all of our other applications.

**VII.d Order errs in finding no reputational harm to Inventors.**

Despite USPTO's conclusory allegation, our argument regarding *Chou v. Univ. of Chicago*, 254 F.3d 1347 (Fed. Cir. 2001) has been developed throughout the district court and CAFC. Appx0408-0409. Order recognized that we argued reputational harm. However, Order disregarded at least that USPTO's unlawful actions, even in one application, causes us reputational harm with pecuniary consequences, e.g, to prospecting efforts and industry interest in all our inventions (see, e.g., FC 14-1 and FC 14-2, Declaration of Ashlesha A. Nesarikar). Moreover, in an attempt to conceal its failure regarding 35 USC 123, USPTO retaliates across several of our applications in response to our lawful challenges to its agency actions, exacerbating reputational harm (FC 14-1, FC 14-2, FC 22-1) and undermining our prospecting and entrepreneurial efforts. See, e.g, section I.b.

USPTO asserts without evidence that USPTO's public statements linking U.S. patents, particularly in AI, to financial benefit "have no relevance". FC 27, pg.

65. This assertion serves only as an attempt to obscure that USPTO's generic and conclusory denial of reputational harm before CAFC contradicts its own Statement for the Record before the US Senate Judiciary Committee (e.g., "Every patent issued represents not only a piece of intellectual property but also a potential job, a competitive advantage, a business formed, and an industry strengthened". AA045). USPTO does not deny that filing and prosecuting '288, and the resultant granted patent, would directly contribute to our professional reputation as AI inventors. FC 7-1, pg. 24-26. Nor does it deny the loss in reputation caused by USPTO's denial of our right to apply for and prosecute '288, denial of due process, and cascading errors (e.g., Appx0021, Appx0408-0409, Appx0101, Appx0304-0306) arising from USPTO's attempt to conceal its failures in implementing 35 USC 123.

**VII.e Order erred in disregarding PRA evidence and arguments.**

44 USC 3501 enumerates purposes of the PRA, including (AD003):

(1) minimize the paperwork burden for individuals, small businesses…
and other persons resulting from the collection of information by or for
the Federal Government...
(4) improve the quality and use of Federal information to strengthen
decisionmaking, accountability, and openness in Government and
society...
(8) ensure that the creation, collection, maintenance, use, dissemination,
and disposition of information by or for the Federal Government is
consistent with applicable laws, including laws relating to— (A) privacy
and confidentiality, including section 552a of title 5...
(11) improve the responsibility and accountability of the Office of
Management and Budget [OMB] and all other Federal agencies to

Congress and to the public for implementing the information collection review process, information resources management, and related policies and guidelines established under this subchapter.

The display of an OMB Control Number indicates OMB approval of an agency's

collection of information and an assurance to those affected by the collection of

information that the agency fulfilled its congressionally mandated responsibilities

(e.g., gaining OMB approval of a collection of information in advance, public

notice and comment, complying with the Privacy Act, etc. 44 USC 3506-3507).

The Complaint challenges USPTO's indiscriminate inquiry initiated with

the Demand sent on 04/22/24. The Demand contains no OMB control number,

which USPTO does not deny. The Demand and USPTO's adverse agency actions

arising therefrom violate the PRA, including 44 USC 3512 – Public Protection

(AA009-010):

(a) Notwithstanding any other provision of law, no person shall be subject to any penalty for failing to comply with a collection of information that is subject to this subchapter if—
(1) the collection of information **does not display a valid control number** assigned by the Director in accordance with this subchapter; or
(2) the agency **fails to inform the person who is to respond to the collection of information** that such person is not required to respond to the collection of information unless it displays a valid control number.
(b) The protection provided by this section may be raised in the form of a complete defense, bar, or otherwise at any time during the agency administrative process or judicial action applicable thereto. [emphasis added]

All of the adverse agency actions set forth in the Complaint and motions for injunction flow from the Demand. The district court erroneously decided we lack standing under the PRA by citing decisions in inapposite cases with facts that differed or even conflict with the facts in this case. For example, the magistrate judge cited *Ohio Stands Up! v. U.S. Dep't of Health & Human Servs.*, 564 F. Supp. 3d 605, 613–14 (N.D. Ohio 2021) to recommend dismissal. The district court adopted that recommendation without responding to our specific objections to the recommendation, including that the *Ohio Stands Up* decision—in contrast to the facts of this case—reasoned "Plaintiffs are not the subject of any administrative or judicial enforcement action, nor are they being required to report information". The reasoning in *Ohio Stands Up* supports our standing and argument that the district court erred. Further, the district court's decision and USPTO's interpretations contradict *Saco River*[27], which states:

> In 1995 the Congress added subsection (b) to the "public protection" provision of the PRA…
> The Commission...understood the 1995 amendments to the PRA as allowing any adversely affected person "to raise PRA violations without limitation, so long as the administrative or judicial process in connection with a particular license or with a particular application continues." Id. at 20003. We agree with that reading of the Act as amended.

In the district court, USPTO initially proffered that the PRA is "only a defense" (Appx0216) but later acquiesced to our responses that it misconstrued the

---

[27]*Saco River Cellular Inc. v. FCC*, 133 F.3d 25 (D.C. Cir. 1998)

text of the statute, congressional intent, and case law and that it disregarded the administrative action taken against us. On appeal, USPTO proffers a new interpretation that the PRA "embraces only procedural devices similar to complete defenses or bars". FC 27, pg. 67. USPTO's new interpretation on appeal constitutes an admission that its original interpretation—relied on by the district court—is erroneous. Nevertheless, under the new interpretation, the district court would have had to determine whether the USPTO took adverse administrative action and whether that action violated the PRA, then determine whether the action we took in the district court has a "similar" effect to "complete defenses or bars" against the specific adverse actions. Intertwinement here is plain—it is unreasonable to determine whether an action is "similar to complete defenses or bars" without evaluating the nature of the thing against which the alleged defense or bar (or similar) is invoked. Even if USPTO's new interpretation were correct, the Complaint with our requested relief effects a defense or bar.

USPTO argues we "misapprehend" the PRA and that the district court "correctly concluded that PRA does not provide a basis for the Nesarikars to establish standing". FC 27, pg. 66-67. However, both USPTO's original and new interpretations, as well as Order's reasoning, directly contradict the intent of

Congress. That intent (and our standing) is clear in its Conference Report[28] characterizing 44 USC 3512 as "enabling a person to assert this protection at any time during an agency administrative process or any subsequent judicial review of an agency action involving a penalty" (AD010). The case before the district court was "subsequent judicial review of an agency action involving a penalty". The Conference Report continues:

> The conference agreement clarifies and strengthens the Act's "public protection" provision by explicitly providing that the protection provided by the section may be asserted or raised by a person in the form of a complete defense, bar or other manner, at any time during a agency administrative process or any subsequent judicial review. The protection provided by the section applies if the agency fails to display a valid control number…

USPTO's only remaining argument against standing was an allegation that the Demand was not subject to the PRA because it allegedly was not a "collection of information". However, we evidenced that USPTO sent identical copies of the Demand to more than 10 people, triggering a "collection of information" violating the PRA. Appx0235-0280. 44 USC 3502, "Definitions", states (AD004-005):

> (3) the term "collection of information"— (A) means the **obtaining, causing to be obtained, soliciting, or requiring the disclosure to third parties or the public, of facts or opinions by or for an agency, regardless of form or format**, calling for either—

---

[28] H. Rept. 104-99 - PAPERWORK REDUCTION ACT OF 1995, H.Rept.104-99, 104th Cong. (1995). See AD009-010.

(i) **answers to identical questions posed to, or identical reporting or recordkeeping requirements imposed on, ten or more persons**, other than agencies, instrumentalities, or employees of the United States; [emphasis added]

Despite the evidence from its own public records, USPTO alleged that the Demand was "individualized" and falsely cited *Hyatt v. OMB,* 998 F.3d 423, 426 (9th Cir. 2021) as support. We showed that USPTO mischaracterized the 9th Circuit decision, which actually states "…preclusion of individualized communications from the PRA accords with the **statute's emphasis on identical requests sent to many people**" [emphasis added]. Appx0410.

The magistrate judge disregarded that USPTO's argument constituted a hallucination (Appx0410), contradicting the magistrate judge's own STANDING ORDER ON DISCLOSURE AND CERTIFICATION REQUIREMENTS FOR USE OF GENERATIVE ARTIFICIAL INTELLIGENCE of 04/09/25, which required us to file a Certification of Generative Artificial Intelligence Usage. Appx0138-142. The standing order sets out harms arising from hallucinations by generative AI[29] and warns of the possibility of sanctions.

Further, the district court enables USPTO's illegal (under the PRA)

---

[29] Magesh, Varun, *et al. Hallucination-Free? Assessing the Reliability of Leading AI Legal Research Tools*. Journal of Empirical Legal Studies 22.2 (2025): 216-242, states: "In other words, if a model makes a false statement or falsely asserts that a source supports a statement, that constitutes a hallucination" (https://onlinelibrary.wiley.com/doi/full/10.1111/jels.12413).

collection of information by requiring us to provide the information that USPTO

unlawfully attempted to collect during the agency action, before allowing judicial

review of that agency action and unlawful collection of information to proceed.

Appx0003. It appears the district court, at the behest of USPTO, is requiring us to

forego our rights under the PRA so that it may review our rights under the PRA.

**VII.f  Order violated due process in construing Inventors' Complaint.**

USPTO does not dispute that as *pro se* plaintiffs we were explicitly

instructed by the district court not to "give any legal arguments or cite cases or

statutes" (AA036-037), nor does it dispute that the pleadings we identified show

violations of the Privacy Act. FC 7-1, pg. 29-30. USPTO's waiver argument (FC

27, pg. 69) does not account for and cannot stand in light of the district court's own

written instructions, the legal standard for *pro se* litigants in *Erickson*[30], and our

own arguments before the agency and in the Complaint. FC 7-1, pg. 29-30.

Further, the district court explicitly acknowledged that we argued

standing under 5 USC 552a (AA011-025). Our arguments and evidence originate

in the Complaint and exhibits, which the district court asserts it has already

reviewed. Therefore, the issue is properly before CAFC on appeal.

**VIII  Order disregarded USPTO's overt attempt to subvert judicial review.**

USPTO fails to substantively traverse our arguments. As explained in

---

[30] *Erickson v. Pardus*, 551 U.S. 89 (2007)

sections I.a, I.b, and I.c, USPTO continues its attempt to evade accountability for its failures in implementing 35 USC 123.

**IX    Order violated FRCP 8(f).**

USPTO fails to substantively traverse our arguments.

**X    Inventors traverse USPTO's arguments against the requested relief.**

USPTO falsely alleges failure to develop arguments. We argued against all jurisdictional challenges, including e.g, arguing standing under the Privacy Act and reputational harm. Similarly, our motion for preliminary injunction was fully briefed and concluded with "Plaintiffs' Response to Defendants' New Evidence in Sur-Reply on Motion for a Preliminary Injunction" on 06/24/2025, which addressed USPTO's "continued bad faith with increased scope". Appx0304-0319. The arguments made in the opening brief and here are relevant to and favor injunctive relief. As delay on injunctive relief continues, so too does irreparable harm accrue (see Declaration, FC 14-2). As the district court explicitly ruled to deny the motion for preliminary injunction, we have a right to CAFC's *de novo* review of that decision given the fully developed record in the district court.

**X.a    Inventors have not waived arguments.**

USPTO's citations to *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1295–96 (Fed. Cir. 2009) (FC 27, pg. 69, 74, 76) are inapposite here[31].

---

[31] USPTO provided as support an alleged quote from *Fresenius* ("[i]ssues not properly raised before the district court are waived on appeal". FC 27, pg. 69) which we could not locate in the text of the *Fresenius* opinion.

*Fresenius* concerns claim infringement and validity, which are not at issue here. Further, in *Fresenius*, CAFC deemed an argument challenging an anticipation verdict as waived after the *Fresenius* district court "did not evaluate the jury's findings [of anticipation]" as the anticipation verdict had not been challenged. By contrast, the district court here explicitly ruled on the issues before CAFC.

**X.b   There is no remedy left within USPTO, and USPTO failed to traverse the evidence of exhaustion of administrative remedies in the Complaint.**

USPTO proffers CAFC remand rather than reverse the dismissal entirely; however, jurisdictional arguments, including regarding exhaustion of administrative remedies, have been fully developed (e.g., Appx0224-225, Appx0324-0328, Appx0331-0341, Appx0405-0408, Appx0430). The Complaint substantiates with evidence that the Demand and a multitude of USPTO actions arising from the Demand, individually and jointly, exhaust administrative remedies. USPTO did not substantively traverse the allegations of exhaustion of administrative remedies in the Complaint. Appx0013-0021.

The Complaint seeks review of the Demand  (Notice of Payment Deficiency, e.g., Appx0026-27) and the agency actions arising therefrom. An agency action that is a consummation of the agency's decision-making process, and from which legal consequences flow, is final[32]. We showed that the Demand

_____

[32]  *Bennett v. Spear*, 520 U.S. 154 (1997)

and each agency decision flowing therefrom was final. USPTO never argued that its alleged exhaustion procedure, or additional petitioning of any kind, could cure the adverse legal consequences flowing from the Demand or reverse the "decision-making process" underlying the Demand and its statutory violations. USPTO's alleged exhaustion procedure, petitioning for "Revival on the basis of unintentional delay" under 37 CFR 1.137, is not applicable to the issues in this case. Further, the procedure is predicated on the validity of USPTO's actions, which are in fact arbitrary, capricious, and unlawful, as described in the Complaint. Any requirement to abide by USPTO's alleged exhaustion procedure, while USPTO violated our rights, would allow it to unduly evade judicial review of the violations.

We explained this unlawful attempt to unduly evade judicial review to the district court and USPTO has not denied it. The unlawfulness is particularly apparent as USPTO alleges petitioning requirements to exhaust remedies in applications in which USPTO misappropriated payments from our petitions while failing to answer those petitions for over a year (see table on pg. 11), thereby irrationally requiring that we file petitions as a precondition for USPTO to respond to previously-filed outstanding petitions. Appx0326, Appx0401. Refusing to answer petitions to misappropriate payments is another example of USPTO's predatory behavior in contravention of congressional intent (see section I.b).

39

Further, any allegation that USPTO might reconsider the lawfulness or constitutionality of the Demand—and USPTO has not made one—is undermined by USPTO's own attempt to justify the Demand by citing the *post hoc* document signed by USPTO's Acting Director and published in the Official Gazette. Appx0296-0299. By invoking the Acting Director's *post hoc* attempt to justify the Demand, USPTO makes clear that no other remedy is available within the agency and that the Demand and the agency actions arising out of the Demand are final. Contrary to USPTO's argument—even if USPTO had offered to reconsider the lawfulness of the Demand—*Sackett*[33] shows that further petitioning is not required to exhaust administrative remedies as "[t]he mere possibility that an agency might reconsider [an agency action]... and invited contentions of inaccuracy does not suffice to make an otherwise final agency action nonfinal". Appx0334, Appx0406.

## X.c    Remanding to the district court is moot if CAFC finds standing.

A finding that USPTO violated statute would render moot a remand back to the district court for deliberation on USPTO's "remaining arguments in support of its Motion to Dismiss". FC 27, pg. 75. USPTO's "remaining arguments", including those against exhaustion, cannot stand if its arguments against standing fall—they turn on the same issues (e.g., 35 USC 123, PRA, and Privacy Act violations). For example, USPTO's allegation that we did not respond to the

---

[33]    *Sackett v. EPA,* 566 U.S. 120 (2012)

Demand is false. FC 27, pg. 12. See Appx0039-80, e.g, our 05/23/2024 response

pursuant to 35 USC 123(b) on Appx0048-0068. However in making the false

allegation, USPTO admits that the Demand led to abandonment. Therefore, a

determination, e.g, rejecting the district court's opinion on standing in light of 35

USC 123, renders USPTO's alleged requirement to revive an abandoned

application moot as that same determination would merit reversal of the Demand

itself. Accordingly, USPTO's arguments on petitioning to revive are at least

superfluous.

Jurisdiction is intertwined with merits in this case. An opinion of CAFC

supporting our standing by rejecting USPTO's statutory violation (of, e.g., 35 USC

123 or PRA) would supersede USPTO's alleged petitioning requirements. Given

the merits dispute in this case, following the procedures inherent in the alleged

petitioning requirement (e.g., 37 CFR 1.137) would perpetuate and compound the

same statutory violations.

**XI    If the district court's decision stands, it will disproportionately harm
small businesses.**

The ramifications of USPTO undermining inventors' rights under Article

1, Section 8, Clause 8 are plain and widely evidenced. For example, World

Intellectual Property Organization[34] reports: "Not only does China have the largest

---

[34]  World Intellectual Property Organization (WIPO). (2024). Generative Artificial
Intelligence. Patent Landscape Report. Geneva: WIPO.

share of all patent families published globally but also is growing at the rate of 50% per year" (AD014). Against the backdrop that "[b]oth China and the US dominate scientific publications, both publishing at similar levels" (AD014), USPTO's failure in this competitive landscape is vivid. Between 2014 and 2023, the United States had 6,276 published generative AI patent families, severely lagging behind China's 38,210 (AD015).

In this case, USPTO attempts to challenge *Roche*'s ruling that "rights in an invention belong to the inventor". The district court erred in disregarding that USPTO based the challenge on speculation that "is under an obligation to assign" all rights means "has assigned" all rights.

USPTO admonishes, in an overt violation of *Roche* (FC 27, pg. 12):

> In their Complaint, the Nesarikars included no statement of ownership while claiming an obligation to assign all rights in the '288 application as a result of former employment.

Should the Court condone USPTO's speculation, inventors' patent ownership conferred by the Constitution and upheld by *Roche* is at risk. Any infringing entity could simply speculate "automatic assignment" as adopted by the district court, citing an inventor's former employment. Making a showing that the former employer requires at least an obligation to assign all rights is not a barrier in this information age. For a resource-rich entity, USPTO's tactic is an invitation to

(https://doi.org/10.34667/tind.49740). See AD013-015.

infringe. To our dismay, this will disproportionately hurt small businesses. Once in practice—including by foreign entities—this tactic will be fatal to the patent rights of small businesses and individual inventors and will weaken the inventive spirit of America.

The record in USPTO, the district court, and CAFC make plain that the Demand was arbitrary, capricious, unlawful, and unconstitutional, including by upending the reliance of small businesses on Article 1, Section 8, Clause 8 of the Constitution. For the benefit of all small businesses and individual inventors, we respectfully request that as a matter of law, CAFC order the withdrawal of the Demand and grant the relief requested in the district court.

In the alternative, we respectfully request CAFC: find that we have standing and that the district court has subject matter jurisdiction, reverse Order, and grant the motion for preliminary injunction. Appx0097-0104.

Respectfully submitted,

| | | |
|---|---|---|
| _____ | _____ | _____ |
| Ashlesha A. Nesarikar | Anika A. Nesarikar | Abhijit R. Nesarikar |
| 8025 Ambiance Way | 8025 Ambiance Way | 8025 Ambiance Way |
| Plano, Texas 75024 | Plano, Texas 75024 | Plano, Texas 75024 |
| 469-371-4983 | 469-371-4983 | 469-371-4983 |
| asedt0425@icloud.com | anedt0425@icloud.com | edt0425@nesarikar.com |

Date: April 03, 2026                                    Inventors and Appellants