# Addendum D

## Table of Contents for Addendum D

| Name | Date | Page # |
|---|---|---|
| Leahy-Smith America Invents Act,  Pub. L. No. 112-29, 125 Stat. 284 (Sept. 16, 2011) (Pages: 125 STAT. 284 and 125 STAT. 339) | 09/16/11 | AD001 |
| Title 44, United States Code, 'Public Printing and Documents'. 44 USC §3501 (pg. 136), 44 USC §3502 (pg. 153, 154), 44 USC §3507 (pg. 166-168) | 2024 | AD003 |
| H. Rept. 104-99 - PAPERWORK REDUCTION ACT OF 1995, H.Rept.104-99, 104th Cong. (1995). (pg. 1, 36) | 04/03/95 | AD009 |
| Fee payment history, Application No. 18/069,288 | 02/18/26 | AD011 |
| "Large Entities Achieve Double the Patent Allowance Rate of Micro Entities" by Dennis Crouch, Law Professor at the University of Missouri School of Law. https://web.archive.org/web/20260209085314/https://patentlyo.com/patent/2026/01/entities-achieve-allowance.html | 01/29/26 | AD012 |
| Patent Landscape Report - Generative Artificial Intelligence (GenAI), WIPO (World Intellectual Property Organization) (2024) (Title page and pg. 42, 49) | 2024 | AD013 |


AUTHENTICATED
U.S. GOVERNMENT
INFORMATION
GPO

125 STAT. 284          PUBLIC LAW 112–29—SEPT. 16, 2011

Public Law 112–29
112th Congress

## An Act

Sept. 16, 2011
[H.R. 1249]

To amend title 35, United States Code, to provide for patent reform.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

Leahy-Smith
America Invents
Act.
35 USC 1 note.

**SECTION 1. SHORT TITLE; TABLE OF CONTENTS.**

(a) SHORT TITLE.—This Act may be cited as the "Leahy-Smith America Invents Act".

(b) TABLE OF CONTENTS.—The table of contents for this Act is as follows:

Sec. 1. Short title; table of contents.
Sec. 2. Definitions.
Sec. 3. First inventor to file.
Sec. 4. Inventor's oath or declaration.
Sec. 5. Defense to infringement based on prior commercial use.
Sec. 6. Post-grant review proceedings.
Sec. 7. Patent Trial and Appeal Board.
Sec. 8. Preissuance submissions by third parties.
Sec. 9. Venue.
Sec. 10. Fee setting authority.
Sec. 11. Fees for patent services.
Sec. 12. Supplemental examination.
Sec. 13. Funding agreements.
Sec. 14. Tax strategies deemed within the prior art.
Sec. 15. Best mode requirement.
Sec. 16. Marking.
Sec. 17. Advice of counsel.
Sec. 18. Transitional program for covered business method patents.
Sec. 19. Jurisdiction and procedural matters.
Sec. 20. Technical amendments.
Sec. 21. Travel expenses and payment of administrative judges.
Sec. 22. Patent and Trademark Office funding.
Sec. 23. Satellite offices.
Sec. 24. Designation of Detroit satellite office.
Sec. 25. Priority examination for important technologies.
Sec. 26. Study on implementation.
Sec. 27. Study on genetic testing.
Sec. 28. Patent Ombudsman Program for small business concerns.
Sec. 29. Establishment of methods for studying the diversity of applicants.
Sec. 30. Sense of Congress.
Sec. 31. USPTO study on international patent protections for small businesses.
Sec. 32. Pro bono program.
Sec. 33. Limitation on issuance of patents.
Sec. 34. Study of patent litigation.
Sec. 35. Effective date.
Sec. 36. Budgetary effects.
Sec. 37. Calculation of 60-day period for application of patent term extension.

35 USC 1 note.

**SEC. 2. DEFINITIONS.**

In this Act:

(1) DIRECTOR.—The term "Director" means the Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office.

**AD001**

of the House of Representatives on the findings of the study and provide recommendations for establishing the availability of such independent confirming genetic diagnostic test activity.

**SEC. 28. PATENT OMBUDSMAN PROGRAM FOR SMALL BUSINESS CONCERNS.**

35 USC 2 note.

Using available resources, the Director shall establish and maintain in the Office a Patent Ombudsman Program. The duties of the Program's staff shall include providing support and services relating to patent filings to small business concerns and independent inventors.

**SEC. 29. ESTABLISHMENT OF METHODS FOR STUDYING THE DIVERSITY OF APPLICANTS.**

Deadline.

The Director shall, not later than the end of the 6-month period beginning on the date of the enactment of this Act, establish methods for studying the diversity of patent applicants, including those applicants who are minorities, women, or veterans. The Director shall not use the results of such study to provide any preferential treatment to patent applicants.

**SEC. 30. SENSE OF CONGRESS.**

It is the sense of Congress that the patent system should promote industries to continue to develop new technologies that spur growth and create jobs across the country which includes protecting the rights of small businesses and inventors from predatory behavior that could result in the cutting off of innovation.

**SEC. 31. USPTO STUDY ON INTERNATIONAL PATENT PROTECTIONS FOR SMALL BUSINESSES.**

(a) STUDY REQUIRED.—The Director, in consultation with the Secretary of Commerce and the Administrator of the Small Business Administration, shall, using the existing resources of the Office, carry out a study—

(1) to determine how the Office, in coordination with other Federal departments and agencies, can best help small businesses with international patent protection; and

(2) whether, in order to help small businesses pay for the costs of filing, maintaining, and enforcing international patent applications, there should be established either—

(A) a revolving fund loan program to make loans to small businesses to defray the costs of such applications, maintenance, and enforcement and related technical assistance; or

(B) a grant program to defray the costs of such applications, maintenance, and enforcement and related technical assistance.

(b) REPORT.—Not later than 120 days after the date of the enactment of this Act, the Director shall issue a report to the Congress containing—

(1) all findings and determinations made in carrying out the study required under subsection (a);

(2) a statement of whether the determination was made that—

(A) a revolving fund loan program described under subsection (a)(2)(A) should be established;

(B) a grant program described under subsection (a)(2)(B) should be established; or



classified to sections 139 to 139f of former Title 5, transferred to chapter 12 (§ 421 et seq.) of former Title 44, and repealed by Pub. L. 90–620 upon the enactment of this title. Subsequent to its original enactment by Pub. L. 90–620, this chapter was amended generally by Pub. L. 96–511 and again by Pub. L. 104–13. As a result, this chapter is shown herein as having been added beginning with Pub. L. 104–13 without reference to earlier amendatory laws. See Prior Provisions notes throughout this chapter.

#### AMENDMENTS

2019—Pub. L. 115–435, title II, § 202(d)(2)(A), (e)(2), (f)(2), title III, §§ 302(b), 303(b), Jan. 14, 2019, 132 Stat. 5541–5543, 5552, 5556, substituted ''Data inventory and Federal data catalogue'' for ''Establishment and operation of Government Information Locator Service'' in item 3511 and ''Chief Data Officers'' for ''Establishment of task force on information collection and dissemination'' in item 3520, added item 3520A, and added heading for subchapter III, headings for parts A to D of subchapter III, and items 3561 to 3564, 3571, 3572, 3575, 3576, and 3581 to 3583.

2018—Pub. L. 115–114, § 2(b), Jan. 10, 2018, 131 Stat. 2278, added item 3559.

2014—Pub. L. 113–283, § 2(e)(1), Dec. 18, 2014, 128 Stat. 3086, added heading for subchapter II and items 3551 to 3558 and struck out heading for former subchapter II and items 3531 to 3538 and heading for subchapter III and items 3541 to 3549. Prior to amendment, headings for both subchapters II and III read ''INFORMATION SECURITY'' and items under each subchapter were substantially similar to items 3551 to 3558.

2002—Pub. L. 107–347, title III, § 301(b)(2), Dec. 17, 2002, 116 Stat. 2955, added heading for subchapter III and items 3541 to 3549.

Pub. L. 107–296, title X, § 1001(b)(2), Nov. 25, 2002, 116 Stat. 2267, reenacted items 3531 to 3535 without change, substituted ''National security systems'' for ''Expiration'' in item 3536, and added items 3537 and 3538.

Pub. L. 107–198, § 3(b), June 28, 2002, 116 Stat. 732, added item 3520 and renumbered former item 3520 as 3521.

2000—Pub. L. 106–398, § 1 [[div. A], title X, § 1064(a)(1)], Oct. 30, 2000, 114 Stat. 1654, 1654A–275, inserted subchapters I and II headings and added items 3531 to 3536.

1995—Pub. L. 104–13, § 2, May 22, 1995, 109 Stat. 163, amended chapter heading and analysis generally.

1980—Pub. L. 96–511, § 2(a), Dec. 11, 1980, 94 Stat. 2812, substituted in chapter heading ''INFORMATION POLICY'' for ''REPORTING SERVICES'', and amended analysis generally.

### SUBCHAPTER I—FEDERAL INFORMATION POLICY

#### Editorial Notes

##### AMENDMENTS

2000—Pub. L. 106–398, § 1 [[div. A], title X, § 1064(a)(2)], Oct. 30, 2000, 114 Stat. 1654, 1654A–275, inserted subchapter heading.

### § 3501. Purposes

The purposes of this subchapter are to—

(1) minimize the paperwork burden for individuals, small businesses, educational and nonprofit institutions, Federal contractors, State, local and tribal governments, and other persons resulting from the collection of information by or for the Federal Government;

(2) ensure the greatest possible public benefit from and maximize the utility of information created, collected, maintained, used, shared and disseminated by or for the Federal Government;

(3) coordinate, integrate, and to the extent practicable and appropriate, make uniform Federal information resources management policies and practices as a means to improve the productivity, efficiency, and effectiveness of Government programs, including the reduction of information collection burdens on the public and the improvement of service delivery to the public;

(4) improve the quality and use of Federal information to strengthen decisionmaking, accountability, and openness in Government and society;

(5) minimize the cost to the Federal Government of the creation, collection, maintenance, use, dissemination, and disposition of information;

(6) strengthen the partnership between the Federal Government and State, local, and tribal governments by minimizing the burden and maximizing the utility of information created, collected, maintained, used, disseminated, and retained by or for the Federal Government;

(7) provide for the dissemination of public information on a timely basis, on equitable terms, and in a manner that promotes the utility of the information to the public and makes effective use of information technology;

(8) ensure that the creation, collection, maintenance, use, dissemination, and disposition of information by or for the Federal Government is consistent with applicable laws, including laws relating to—

(A) privacy and confidentiality, including section 552a of title 5;

(B) security of information, including section 11332 of title 40[1]; and

(C) access to information, including section 552 of title 5;

(9) ensure the integrity, quality, and utility of the Federal statistical system;

(10) ensure that information technology is acquired, used, and managed to improve performance of agency missions, including the reduction of information collection burdens on the public; and

(11) improve the responsibility and accountability of the Office of Management and Budget and all other Federal agencies to Congress and to the public for implementing the information collection review process, information resources management, and related policies and guidelines established under this subchapter.

(Added Pub. L. 104–13, § 2, May 22, 1995, 109 Stat. 163; amended Pub. L. 106–398, § 1 [[div. A], title X, § 1064(b)], Oct. 30, 2000, 114 Stat. 1654, 1654A–275; Pub. L. 107–217, § 3(l)(3), Aug. 21, 2002, 116 Stat. 1301.)

#### Editorial Notes

##### REFERENCES IN TEXT

Section 11332 of title 40, referred to in par. (8)(B), was repealed by Pub. L. 107–296, title X, § 1005(a)(1), Nov. 25, 2002, 116 Stat. 2272, and Pub. L. 107–347, title III, § 305(a), Dec. 17, 2002, 116 Stat. 2960.

##### PRIOR PROVISIONS

A prior section 3501, added Pub. L. 96–511, § 2(a), Dec. 11, 1980, 94 Stat. 2812; amended Pub. L. 99–500, § 101(m)

---

[1] See References in Text note below.

dural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

(7) The Director of the Office of Management and Budget is authorized and directed to publish this memorandum in the Federal Register.

BARACK OBAMA.

## § 3502. Definitions

As used in this subchapter—

(1) the term "agency" means any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency, but does not include—

(A) the Government Accountability Office;

(B) Federal Election Commission;

(C) the governments of the District of Columbia and of the territories and possessions of the United States, and their various subdivisions; or

(D) Government-owned contractor-operated facilities, including laboratories engaged in national defense research and production activities;

(2) the term "burden" means time, effort, or financial resources expended by persons to generate, maintain, or provide information to or for a Federal agency, including the resources expended for—

(A) reviewing instructions;

(B) acquiring, installing, and utilizing technology and systems;

(C) adjusting the existing ways to comply with any previously applicable instructions and requirements;

(D) searching data sources;

(E) completing and reviewing the collection of information; and

(F) transmitting, or otherwise disclosing the information;

(3) the term "collection of information"—

(A) means the obtaining, causing to be obtained, soliciting, or requiring the disclosure to third parties or the public, of facts or opinions by or for an agency, regardless of form or format, calling for either—

(i) answers to identical questions posed to, or identical reporting or recordkeeping requirements imposed on, ten or more persons, other than agencies, instrumentalities, or employees of the United States; or

(ii) answers to questions posed to agencies, instrumentalities, or employees of the United States which are to be used for general statistical purposes; and

(B) shall not include a collection of information described under section 3518(c)(1);

(4) the term "Director" means the Director of the Office of Management and Budget;

(5) the term "independent regulatory agency" means the Board of Governors of the Federal Reserve System, the Commodity Futures Trading Commission, the Consumer Product Safety Commission, the Federal Communications Commission, the Federal Deposit Insurance Corporation, the Federal Energy Regulatory Commission, the Federal Housing Finance Agency, the Federal Maritime Commission, the Federal Trade Commission, the Interstate Commerce Commission, the Mine Enforcement Safety and Health Review Commission, the National Labor Relations Board, the Nuclear Regulatory Commission, the Occupational Safety and Health Review Commission, the Postal Regulatory Commission, the Securities and Exchange Commission, the Bureau of Consumer Financial Protection, the Office of Financial Research, Office of the Comptroller of the Currency, and any other similar agency designated by statute as a Federal independent regulatory agency or commission;

(6) the term "information resources" means information and related resources, such as personnel, equipment, funds, and information technology;

(7) the term "information resources management" means the process of managing information resources to accomplish agency missions and to improve agency performance, including through the reduction of information collection burdens on the public;

(8) the term "information system" means a discrete set of information resources organized for the collection, processing, maintenance, use, sharing, dissemination, or disposition of information;

(9) the term "information technology" has the meaning given that term in section 11101 of title 40 but does not include national security systems as defined in section 11103 of title 40;

(10) the term "person" means an individual, partnership, association, corporation, business trust, or legal representative, an organized group of individuals, a State, territorial, tribal, or local government or branch thereof, or a political subdivision of a State, territory, tribal, or local government or a branch of a political subdivision;

(11) the term "practical utility" means the ability of an agency to use information, particularly the capability to process such information in a timely and useful fashion;

(12) the term "public information" means any information, regardless of form or format, that an agency discloses, disseminates, or makes available to the public;

(13) the term "recordkeeping requirement" means a requirement imposed by or for an agency on persons to maintain specified records, including a requirement to—

(A) retain such records;

(B) notify third parties, the Federal Government, or the public of the existence of such records;

(C) disclose such records to third parties, the Federal Government, or the public; or

(D) report to third parties, the Federal Government, or the public regarding such records;

(14) the term "penalty" includes the imposition by an agency or court of a fine or other punishment; a judgment for monetary damages or equitable relief; or the revocation, suspension, reduction, or denial of a license, privilege, right, grant, or benefit;

**AD004**

(15) the term ''comprehensive data inventory'' means the inventory created under section 3511(a), but does not include any underlying data asset listed on the inventory;

(16) the term ''data'' means recorded information, regardless of form or the media on which the data is recorded;

(17) the term ''data asset'' means a collection of data elements or data sets that may be grouped together;

(18) the term ''machine-readable'', when used with respect to data, means data in a format that can be easily processed by a computer without human intervention while ensuring no semantic meaning is lost;

(19) the term ''metadata'' means structural or descriptive information about data such as content, format, source, rights, accuracy, provenance, frequency, periodicity, granularity, publisher or responsible party, contact information, method of collection, and other descriptions;

(20) the term ''open Government data asset'' means a public data asset that is—

(A) machine-readable;

(B) available (or could be made available) in an open format;

(C) not encumbered by restrictions, other than intellectual property rights, including under titles 17 and 35, that would impede the use or reuse of such asset; and

(D) based on an underlying open standard that is maintained by a standards organization;

(21) the term ''open license'' means a legal guarantee that a data asset is made available—

(A) at no cost to the public; and

(B) with no restrictions on copying, publishing, distributing, transmitting, citing, or adapting such asset;

(22) the term ''public data asset'' means a data asset, or part thereof, maintained by the Federal Government that has been, or may be, released to the public, including any data asset, or part thereof, subject to disclosure under section 552 of title 5; and

(23) the term ''statistical laws'' means subchapter III of this chapter and other laws pertaining to the protection of information collected for statistical purposes as designated by the Director.

(Added Pub. L. 104–13, § 2, May 22, 1995, 109 Stat. 164; amended Pub. L. 104–106, div. E, title LVI, § 5605(a), Feb. 10, 1996, 110 Stat. 700; Pub. L. 105–85, div. A, title X, § 1073(h)(5)(A), Nov. 18, 1997, 111 Stat. 1907; Pub. L. 106–398, § 1 [[div. A], title X, § 1064(b)], Oct. 30, 2000, 114 Stat. 1654, 1654A–275; Pub. L. 107–217, § 3(l)(4), Aug. 21, 2002, 116 Stat. 1301; Pub. L. 108–271, § 8(b), July 7, 2004, 118 Stat. 814; Pub. L. 109–435, title VI, § 604(e), Dec. 20, 2006, 120 Stat. 3242; Pub. L. 110–289, div. A, title II, § 1216(e), July 30, 2008, 122 Stat. 2792; Pub. L. 111–203, title III, § 315, title X, § 1100D(a), July 21, 2010, 124 Stat. 1524, 2111; Pub. L. 115–435, title II, § 202(a), Jan. 14, 2019, 132 Stat. 5534.)

### Editorial Notes

#### PRIOR PROVISIONS

A prior section 3502, added Pub. L. 96–511, § 2(a), Dec. 11, 1980, 94 Stat. 2813; amended Pub. L. 98–443, § 9(h), Oct. 4, 1984, 98 Stat. 1708; Pub. L. 99–500, § 101(m) [title VIII, § 812], Oct. 18, 1986, 100 Stat. 1783–308, 1783–335, and Pub. L. 99–591, § 101(m) [title VIII, § 812], Oct. 30, 1986, 100 Stat. 3341–308, 3341–335; Pub. L. 101–73, title VII, § 744(e), Aug. 9, 1989, 103 Stat. 438, defined terms used in this chapter prior to the general amendment of this chapter by Pub. L. 104–13.

Another prior section 3502, Pub. L. 90–620, Oct. 22, 1968, 82 Stat. 1302; Pub. L. 93–153, title IV, § 409(a), Nov. 16, 1973, 87 Stat. 593, defined ''Federal agency'', ''person'', and ''information'', prior to the general amendment of this chapter by Pub. L. 96–511.

#### AMENDMENTS

2019—Pars. (15) to (23). Pub. L. 115–435 added pars. (15) to (23).

2010—Par. (5). Pub. L. 111–203, § 1100D(a), which directed amendment of section 2(5) of the Paperwork Reduction Act (44 U.S.C. 3502(5)) by inserting ''the Bureau of Consumer Financial Protection, the Office of Financial Research,'' after ''the Securities and Exchange Commission,'', was executed to this section to reflect the probable intent of Congress.

Pub. L. 111–203, § 315, inserted ''Office of the Comptroller of the Currency,'' after ''the Securities and Exchange Commission,''.

2008—Par. (5). Pub. L. 110–289 substituted ''Federal Housing Finance Agency'' for ''Federal Housing Finance Board''.

2006—Par. (5). Pub. L. 109–435 substituted ''Postal Regulatory Commission'' for ''Postal Rate Commission''.

2004—Par. (1)(A). Pub. L. 108–271 substituted ''Government Accountability Office'' for ''General Accounting Office''.

2002—Par. (9). Pub. L. 107–217 substituted ''section 11101 of title 40'' for ''section 5002 of the Clinger-Cohen Act of 1996 (40 U.S.C. 1401)'' and ''section 11103 of title 40'' for ''section 5142 of that Act (40 U.S.C. 1452)''.

2000—Pub. L. 106–398 substituted ''subchapter'' for ''chapter'' in introductory provisions.

1997—Par. (9). Pub. L. 105–85 substituted ''the Clinger-Cohen Act of 1996 (40 U.S.C. 1401)'' for ''the Information Technology Management Reform Act of 1996'' and inserted ''(40 U.S.C. 1452)'' after ''that Act''.

1996—Par. (9). Pub. L. 104–106 added par. (9) and struck out former par. (9) which read as follows: ''the term 'information technology' has the same meaning as the term 'automatic data processing equipment' as defined by section 111(a)(2) and (3)(C)(i) through (v) of the Federal Property and Administrative Services Act of 1949 (40 U.S.C. 759(a)(2) and (3)(C)(i) through (v));''.

#### Statutory Notes and Related Subsidiaries

##### EFFECTIVE DATE OF 2019 AMENDMENT

Amendment by Pub. L. 115–435 effective 180 days after Jan. 14, 2019, see section 403 of Pub. L. 115–435, set out as a note under section 306 of Title 5, Government Organization and Employees.

##### EFFECTIVE DATE OF 2010 AMENDMENT

Amendment by section 315 of Pub. L. 111–203 effective 1 day after July 21, 2010, except as otherwise provided, see section 4 of Pub. L. 111–203, set out as an Effective Date note under section 5301 of Title 12, Banks and Banking.

Amendment by section 1100D(a) of Pub. L. 111–203 effective on the designated transfer date, see section 1100H of Pub. L. 111–203, set out as a note under section 552a of Title 5, Government Organization and Employees.

##### EFFECTIVE DATE OF 2000 AMENDMENT

Amendment by Pub. L. 106–398 effective 30 days after Oct. 30, 2000, see section 1 [[div. A], title X, § 1065] of Pub. L. 106–398, Oct. 30, 2000, 114 Stat. 1654, formerly set out as an Effective Date note under former section 3531 of this title.

AD005

activities with State, local, and tribal governments on the Y2K problem, and promote appropriate Federal roles with respect to private sector activities in this area.

(d) The Chair and the Director of the Office of Management and Budget shall report jointly at least quarterly to me on the progress of agencies in addressing the Y2K problem.

(e) The Chair shall identify such resources from agencies as the Chair deems necessary for the implementation of the policies set out in this order, consistent with applicable law.

SEC. 3. *Responsibilities of Agency Heads.* (a) The head of each agency shall:

(1) assure that efforts to address the Y2K problem receive the highest priority attention in the agency and that the policies established in this order are carried out; and

(2) cooperate to the fullest extent with the Chair by making available such information, support, and assistance, including personnel, as the Chair may request to support the accomplishment of the tasks assigned herein, consistent with applicable law.

(b) The heads of executive departments and the agencies designated by the Chair under section 2(a) of this order shall identify a responsible official to represent the head of the executive department or agency on the Council with sufficient authority and experience to commit agency resources to address the Y2K problem.

SEC. 4. *Responsibilities of Interagency and Executive Office Councils.* Interagency councils and councils within the Executive Office of the President, including the President's Management Council, the Chief Information Officers Council, the Chief Financial Officers Council, the President's Council on Integrity and Efficiency, the Executive Council on Integrity and Efficiency, the National Science and Technology Council, the National Performance Review, the National Economic Council, the Domestic Policy Council, and the National Security Council shall provide assistance and support to the Chair upon the Chair's request.

SEC. 5. *Information Coordination Center.* (a) To assist the Chair in the Y2K response duties included under section 2(c) of this order, there shall be established the Information Coordination Center (ICC) in the General Services Administration.

(b) At the direction of the Chair, the ICC will assist in making preparations for information sharing and coordination within the Federal Government and key components of the public and private sectors, coordinating agency assessments of Y2K emergencies that could have an adverse affect on U.S. interests at home and abroad, and, if necessary, assisting Federal agencies and the Chair in reconstitution processes where appropriate.

(c) The ICC will:

(1) consist of officials from executive agencies, designated by agency heads under subsection 3(a)(2) of this order, who have expertise in important management and technical areas, computer hardware, software or security systems, reconstitution and recovery, and of additional personnel hired directly or by contract, as required, to carry out the duties described under section 5 of this order;

(2) work with the Council and the Office of Management and Budget to assure that Federal efforts to restore critical systems are coordinated with efforts managed by Federal agencies acting under existing emergency response authorities.

(d) The Chair of the President's Council on Year 2000 Conversion shall designate a Director of the ICC.

SEC. 6. *Judicial Review.* This Executive order is intended only to improve the internal management of the executive branch and does not create any right or benefit, substantive or procedural, enforceable at law or equity by a party against the United States, its agencies, or instrumentalities, its officers or employees, or any other person.

WILLIAM J. CLINTON.

## § 3507. Public information collection activities; submission to Director; approval and delegation

(a) An agency shall not conduct or sponsor the collection of information unless in advance of the adoption or revision of the collection of information—

(1) the agency has—

(A) conducted the review established under section 3506(c)(1);

(B) evaluated the public comments received under section 3506(c)(2);

(C) submitted to the Director the certification required under section 3506(c)(3), the proposed collection of information, copies of pertinent statutory authority, regulations, and other related materials as the Director may specify; and

(D) published a notice in the Federal Register—

(i) stating that the agency has made such submission; and

(ii) setting forth—

(I) a title for the collection of information;

(II) a summary of the collection of information;

(III) a brief description of the need for the information and the proposed use of the information;

(IV) a description of the likely respondents and proposed frequency of response to the collection of information;

(V) an estimate of the burden that shall result from the collection of information; and

(VI) notice that comments may be submitted to the agency and Director;

(2) the Director has approved the proposed collection of information or approval has been inferred, under the provisions of this section; and

(3) the agency has obtained from the Director a control number to be displayed upon the collection of information.

(b) The Director shall provide at least 30 days for public comment prior to making a decision under subsection (c), (d), or (h), except as provided under subsection (j).

(c)(1) For any proposed collection of information not contained in a proposed rule, the Director shall notify the agency involved of the decision to approve or disapprove the proposed collection of information.

(2) The Director shall provide the notification under paragraph (1), within 60 days after receipt or publication of the notice under subsection (a)(1)(D), whichever is later.

(3) If the Director does not notify the agency of a denial or approval within the 60-day period described under paragraph (2)—

(A) the approval may be inferred;

(B) a control number shall be assigned without further delay; and

(C) the agency may collect the information for not more than 1 year.

(d)(1) For any proposed collection of information contained in a proposed rule—

(A) as soon as practicable, but no later than the date of publication of a notice of proposed

rulemaking in the Federal Register, each agency shall forward to the Director a copy of any proposed rule which contains a collection of information and any information requested by the Director necessary to make the determination required under this subsection; and

(B) within 60 days after the notice of proposed rulemaking is published in the Federal Register, the Director may file public comments pursuant to the standards set forth in section 3508 on the collection of information contained in the proposed rule;

(2) When a final rule is published in the Federal Register, the agency shall explain—

(A) how any collection of information contained in the final rule responds to the comments, if any, filed by the Director or the public; or

(B) the reasons such comments were rejected.

(3) If the Director has received notice and failed to comment on an agency rule within 60 days after the notice of proposed rulemaking, the Director may not disapprove any collection of information specifically contained in an agency rule.

(4) No provision in this section shall be construed to prevent the Director, in the Director's discretion—

(A) from disapproving any collection of information which was not specifically required by an agency rule;

(B) from disapproving any collection of information contained in an agency rule, if the agency failed to comply with the requirements of paragraph (1) of this subsection;

(C) from disapproving any collection of information contained in a final agency rule, if the Director finds within 60 days after the publication of the final rule that the agency's response to the Director's comments filed under paragraph (2) of this subsection was unreasonable; or

(D) from disapproving any collection of information contained in a final rule, if—

(i) the Director determines that the agency has substantially modified in the final rule the collection of information contained in the proposed rule; and

(ii) the agency has not given the Director the information required under paragraph (1) with respect to the modified collection of information, at least 60 days before the issuance of the final rule.

(5) This subsection shall apply only when an agency publishes a notice of proposed rulemaking and requests public comments.

(6) The decision by the Director to approve or not act upon a collection of information contained in an agency rule shall not be subject to judicial review.

(e)(1) Any decision by the Director under subsection (c), (d), (h), or (j) to disapprove a collection of information, or to instruct the agency to make substantive or material change to a collection of information, shall be publicly available and include an explanation of the reasons for such decision.

(2) Any written communication between the Administrator of the Office of Information and Regulatory Affairs, or any employee of the Office of Information and Regulatory Affairs, and an agency or person not employed by the Federal Government concerning a proposed collection of information shall be made available to the public.

(3) This subsection shall not require the disclosure of—

(A) any information which is protected at all times by procedures established for information which has been specifically authorized under criteria established by an Executive order or an Act of Congress to be kept secret in the interest of national defense or foreign policy; or

(B) any communication relating to a collection of information which is not approved under this subchapter, the disclosure of which could lead to retaliation or discrimination against the communicator.

(f)(1) An independent regulatory agency which is administered by 2 or more members of a commission, board, or similar body, may by majority vote void—

(A) any disapproval by the Director, in whole or in part, of a proposed collection of information of that agency; or

(B) an exercise of authority under subsection (d) of section 3507 concerning that agency.

(2) The agency shall certify each vote to void such disapproval or exercise to the Director, and explain the reasons for such vote. The Director shall without further delay assign a control number to such collection of information, and such vote to void the disapproval or exercise shall be valid for a period of 3 years.

(g) The Director may not approve a collection of information for a period in excess of 3 years.

(h)(1) If an agency decides to seek extension of the Director's approval granted for a currently approved collection of information, the agency shall—

(A) conduct the review established under section 3506(c), including the seeking of comment from the public on the continued need for, and burden imposed by the collection of information; and

(B) after having made a reasonable effort to seek public comment, but no later than 60 days before the expiration date of the control number assigned by the Director for the currently approved collection of information, submit the collection of information for review and approval under this section, which shall include an explanation of how the agency has used the information that it has collected.

(2) If under the provisions of this section, the Director disapproves a collection of information contained in an existing rule, or recommends or instructs the agency to make a substantive or material change to a collection of information contained in an existing rule, the Director shall—

(A) publish an explanation thereof in the Federal Register; and

(B) instruct the agency to undertake a rulemaking within a reasonable time limited to consideration of changes to the collection of information contained in the rule and thereafter to submit the collection of information

for approval or disapproval under this sub-chapter.

(3) An agency may not make a substantive or material modification to a collection of information after such collection has been approved by the Director, unless the modification has been submitted to the Director for review and approval under this subchapter.

(i)(1) If the Director finds that a senior official of an agency designated under section 3506(a) is sufficiently independent of program responsibility to evaluate fairly whether proposed collections of information should be approved and has sufficient resources to carry out this responsibility effectively, the Director may, by rule in accordance with the notice and comment provisions of chapter 5 of title 5, United States Code, delegate to such official the authority to approve proposed collections of information in specific program areas, for specific purposes, or for all agency purposes.

(2) A delegation by the Director under this section shall not preclude the Director from reviewing individual collections of information if the Director determines that circumstances warrant such a review. The Director shall retain authority to revoke such delegations, both in general and with regard to any specific matter. In acting for the Director, any official to whom approval authority has been delegated under this section shall comply fully with the rules and regulations promulgated by the Director.

(j)(1) The agency head may request the Director to authorize a collection of information, if an agency head determines that—

(A) a collection of information—

(i) is needed prior to the expiration of time periods established under this subchapter; and

(ii) is essential to the mission of the agency; and

(B) the agency cannot reasonably comply with the provisions of this subchapter because—

(i) public harm is reasonably likely to result if normal clearance procedures are followed;

(ii) an unanticipated event has occurred; or

(iii) the use of normal clearance procedures is reasonably likely to prevent or disrupt the collection of information or is reasonably likely to cause a statutory or court ordered deadline to be missed.

(2) The Director shall approve or disapprove any such authorization request within the time requested by the agency head and, if approved, shall assign the collection of information a control number. Any collection of information conducted under this subsection may be conducted without compliance with the provisions of this subchapter for a maximum of 180 days after the date on which the Director received the request to authorize such collection.

(Added Pub. L. 104–13, §2, May 22, 1995, 109 Stat. 176; amended Pub. L. 104–106, div. E, title LVI, §5605(d), Feb. 10, 1996, 110 Stat. 700; Pub. L. 106–398, §1 [[div. A], title X, §1064(b)], Oct. 30, 2000, 114 Stat. 1654, 1654A–275.)

### Editorial Notes

#### PRIOR PROVISIONS

A prior section 3507, added Pub. L. 96–511, §2(a), Dec. 11, 1980, 94 Stat. 2819; amended Pub. L. 99–500, §101(m) [title VIII, §817], Oct. 18, 1986, 100 Stat. 1783–308, 1783–338, and Pub. L. 99–591, §101(m) [title VIII, §817], Oct. 30, 1986, 100 Stat. 3341–308, 3341–338, related to submission to Director of public information collection request for an approval or delegation to a senior official of an agency prior to the general amendment of this chapter by Pub. L. 104–13.

Another prior section 3507, Pub. L. 90–620, Oct. 22, 1968, 82 Stat. 1304, provided for cooperation of agencies in making information available, prior to the general amendment of this chapter by Pub. L. 96–511. See section 3510(a) of this title.

#### AMENDMENTS

2000—Subsecs. (e)(3)(B), (h), (j). Pub. L. 106–398 substituted "subchapter" for "chapter" wherever appearing.

1996—Subsec. (j)(2). Pub. L. 104–106 substituted "180 days" for "90 days".

### Statutory Notes and Related Subsidiaries

#### EFFECTIVE DATE OF 2000 AMENDMENT

Amendment by Pub. L. 106–398 effective 30 days after Oct. 30, 2000, see section 1 [[div. A], title X, §1065] of Pub. L. 106–398, Oct. 30, 2000, 114 Stat. 1654, formerly set out as an Effective Date note under former section 3531 of this title.

#### EFFECTIVE DATE OF 1996 AMENDMENT

Amendment by Pub. L. 104–106 effective 180 days after Feb. 10, 1996, see section 5701 of Pub. L. 104–106, Feb. 10, 1996, 110 Stat. 702.

#### EFFECTIVE DATE

Section effective Oct. 1, 1995, except as otherwise provided, see section 4(a) of Pub. L. 104–13, set out as a note under section 3501 of this title.

### § 3508. Determination of necessity for information; hearing

Before approving a proposed collection of information, the Director shall determine whether the collection of information by the agency is necessary for the proper performance of the functions of the agency, including whether the information shall have practical utility. Before making a determination the Director may give the agency and other interested persons an opportunity to be heard or to submit statements in writing. To the extent, if any, that the Director determines that the collection of information by an agency is unnecessary for any reason, the agency may not engage in the collection of information.

(Added Pub. L. 104–13, §2, May 22, 1995, 109 Stat. 179.)

### Editorial Notes

#### PRIOR PROVISIONS

A prior section 3508, added Pub. L. 96–511, §2(a), Dec. 11, 1980, 94 Stat. 2821, related to determination of whether collection of information is necessary for proper performance of functions of agency prior to the general amendment of this chapter by Pub. L. 104–13.

Another prior section 3508, Pub. L. 90–620, Oct. 22, 1968, 82 Stat. 1304, related to unlawful disclosure of information, penalties, and release of information to other agencies, prior to the general amendment of this

AUTHENTICATED
U.S. GOVERNMENT
INFORMATION
GPO

104TH CONGRESS
1st Session } HOUSE OF REPRESENTATIVES { REPORT
104–99

# PAPERWORK REDUCTION ACT OF 1995

APRIL 3, 1995.—Ordered to be printed

Mr. CLINGER, from the committee of conference,
submitted the following

## CONFERENCE REPORT

[To accompany S. 244]

The committee of conference on the disagreeing votes of the two Houses on the amendment of the House to the bill (S. 244), to further the goals of the Paperwork Reduction Act to have Federal agencies become more responsible and publicly accountable for reducing the burden of Federal paperwork on the public, and for other purposes, having met, after full and free conference, have agreed to recommend and do recommend to their respective Houses as follows:

That the Senate recede from its disagreement to the amendment of the House and agree to the same with an amendment as follows:

In lieu of the matter proposed to be inserted by the House amendment, insert the following:

**SECTION 1. SHORT TITLE.**

*This Act may be cited as the "Paperwork Reduction Act of 1995".*

**SEC. 2. COORDINATION OF FEDERAL INFORMATION POLICY.**

*Chapter 35 of title 44, United States Code, is amended to read as follows:*

### "CHAPTER 35—COORDINATION OF FEDERAL INFORMATION POLICY

"Sec.
"3501. *Purposes.*
"3502. *Definitions.*
"3503. *Office of Information and Regulatory Affairs.*
"3504. *Authority and functions of Director.*
"3505. *Assignment of tasks and deadlines.*
"3506. *Federal agency responsibilities.*

99–006

27. Public Information collection activities; submission to Director; approval and delegation—Improved "Fast Track" Procedures.

The Senate bill amends section 3507(j) of existing law to provide additional flexibility in the so-called "Fast Track" review process, under a proposed collection of information can be reviewed on a very expedited schedule without any opportunity for public notice or comment prior to approval by the OMB Director.

The House amendment reflects existing law.

The House recedes.

The conferees note that no instance has been identified in the 15 years of experience under the Act in which its "Fast Track" review procedures have not been made available to an agency under the current version of section 3507(j), or the proposed collection of information has not been cleared on a schedule that completely accommodated the agency's exigent circumstances.

28. Determination of necessity for information; hearing.

The Senate bill modifies section 3508 of the Act, which establishes the fundamental standard used by the Director in determining whether to approve a collection of information being proposed by an agency.

The House amendment reflects existing law.

The Senate recedes.

29. Establishment and operation of Government Information Locator Service—Specific exclusion for CIA "operational files".

The Senate bill includes a provision which provides for the establishment and operation of the Government Information Locator Service (GILS). The Senate provisions includes an explicit exclusion from GILS for "operational files" as defined in the Central Intelligence Agency Information Act.

The House amendment contains an identical provision regarding GILS, but does not include the specific exclusion for the CIA's "operational files".

The House recedes.

30. Public Protection.

The Senate bill contains a provision which changes the Act's current "public protection" provision by requiring a collection of information subject to the Act display a notice that a person is not required to respond to the collection of information unless it displays a control number which is valid.

The House amendment contains a provision which clarifies and strengthens the Act's current "public protection" provision by enabling a person to assert this protection at any time during an agency administrative process or any subsequent judicial review of an agency action involving a penalty.

The Senate recedes with an amendment. The conference agreement clarifies and strengthens the Act's "public protection" provision by explicitly providing that the protection provided by the section may be asserted or raised by a person in the form of a complete defense, bar or other manner, at any time during a agency administrative process or any subsequent judicial review. The protection provided by the section applies if the agency fails to display a valid control number, or inform the person that they are not re-

An official website of the United States government  Here's how you know ⌄

# 18/069,288 | 4as-morphism:

## Systems and Methods for Intelligent Awareness and Intent for Autonomous Vehicles

PRIVATE VIEW

| Application # | Confirmation # | Attorney Docket # | Patent # | Filing or 371 (c) date | Status |
|---|---|---|---|---|---|
| 18/069,288 | 3954 | 4as-morphism<br>Edit | - | 12/21/2022 | Application Involved in Court Proceedings 04/25/2025 |

Application Data

Documents & Transactions

Continuity

Patent Term Adjustment

Foreign priority

**Fee payment history**

Address & Attorney/Agent Information

Supplemental Content

Assignments

Display References

## Fee payment history

View maintenance fee schedule 🔗

| Accounting Date | Mailroom Date | Payment Method | Fee Code | Amount | Quantity | Total |
|---|---|---|---|---|---|---|
| 12/21/2022 | 12/21/2022 | CC | 3311 - UTILITY EXAMINATION FEE | $200.00 | 1 | $200.00 |
| 12/21/2022 | 12/21/2022 | CC | 3011 - BASIC FILING FEE- UTILITY | $80.00 | 1 | $80.00 |
| 12/21/2022 | 12/21/2022 | CC | 3111 - UTILITY SEARCH FEE | $175.00 | 1 | $175.00 |

**AD011**

The Wayback Machine - https://web.archive.org/web/20260209085314/https://patentlyo.com/patent/2026/01/entities-achieve-allowance.html

America's leading patent law source

# Large Entities Achieve Double the Patent Allowance Rate of Micro Entities

ⓘ January 29, 2026     🏷 paid     👤 Dennis Crouch

The USPTO classifies patent applicants into three entity categories: large entities (regular undiscounted), small entities (businesses with fewer than 500 employees, independent inventors, nonprofits), and micro entities (those meeting additional income and filing history limits). These classifications determine fee structures, with small entities receiving a 61% discount and micro entities an 80% discount on most USPTO fees.  These fee categories create an convenient mechanism for categorizing patent applicants and their patenting activity.



I analyzed USPTO disposition data for published patent applications from January 1-27, 2026, examining applications that either issued as patents or were abandoned during this period. Frankly, I was surprised by the disparity. Overall, 74% of disposed applications resulted in patents. But the allowance rate varies dramatically by entity size: large entities achieved an 80% allowance rate, small entities 61%, and micro entities just 40%.

........................................................................................................................

To continue reading, become a Patently-O member. Already a member? Simply log in to access the full post.

Login

## About Dennis Crouch

Law Professor at the University of Missouri School of Law.  View all posts by Dennis Crouch →

# Patent
Landscape
Report

# Generative Artificial Intelligence



AD013

*Not only does China have the largest share of all patent families published globally but also is growing at the rate of 50% per year. However, India has an even higher growth rate of 56% per year even though its world share is still small.*
**Figure 17a Country comparison of the number of GenAI-related patent families, 2014–2023**



**Figure 17b Country comparison of the share and growth rate of GenAI-related patent families, 2014–2023**



Source: WIPO, based on patent data from EconSight/IFI Claims, Orbit by Questel and PATENTSCOPE, April 2024.

Regarding scientific publications, China and the US largely dominate and are at a similar level in terms of publications (Figure 18).

*Both China and the US dominate scientific publications, both publishing at similar levels.*
**Figure 18 Number of GenAI scientific publications in the top 10 countries, 2010–2023**



Source: WIPO, based on data from The Lens, January 2024.

Figure 19 shows that China and the US, despite being comparable in terms of the number of publications, differ strongly in terms of citations. Scientific publications with at least one affiliation in the US received significantly more citations globally than those with at least one Chinese affiliation.

**AD014**

## Key locations of inventors

On a country level, China dominates in all five GenAI models in terms of patent families. The Chinese lead is particularly pronounced in diffusion models, where China has published more than 14 times as many patent families since 2014 as the second largest inventor location, the US (500 patent families compared to 35 patent families). China also has a very high global share of patents in the field of autoregressive models (Table 6).

The US is particularly strong in VAEs and LLMs. A large part of the GenAI patents from the Republic of Korea fall into the category of GAN models. For Japan, it is noteworthy that the vast majority of GenAI patent families cannot be linked to any of the five core GenAI models.

In India, GAN patent families accounted for a relatively high proportion of total GenAI patents. In the UK, many patent families belong to the GAN and VAE categories. Germany has a relatively strong research presence in GAN and VAE models.

*Patent publications in GANs outnumber patents in other models in all the top inventor locations.*

**Table 6 Published patent families in GenAI models in top inventor locations, 2014–2023**

|  | GAN | LLM | VAE | Diffusion models | Autoregressive models | GenAI Total |
|---|---|---|---|---|---|---|
| China | 7,384 | 992 | 1,164 | 500 | 295 | 38,210 |
| USA | 1,128 | 150 | 346 | 35 | 59 | 6,276 |
| Republic of Korea | 634 | 52 | 90 | 14 | 9 | 4,155 |
| Japan | 126 | 24 | 78 | 5 | 12 | 3,409 |
| India | 140 | 8 | 31 | 1 | 3 | 1,350 |
| UK | 85 | 13 | 58 | 1 | 8 | 714 |
| Germany | 153 | 11 | 72 | 3 | 4 | 708 |

Note: A large proportion of GenAI patents does not fit into any of the specific models, as these patents do not contain keywords relating to the specific model used in the patent abstract, claims or title. Therefore, the total number of GenAI patent families is larger than the sum of the five models.

Source: WIPO, based on patent data from EconSight/IFI Claims, Orbit by Questel and PATENTSCOPE, April 2024.

**AD015**