NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**ASHLESHA A. NESARIKAR, ANIKA A. NESARIKAR, ABHIJIT R. NESARIKAR,**
*Plaintiffs-Appellants*

**v.**

**THE UNITED STATES PATENT AND TRADEMARK OFFICE, JOHN A. SQUIRES, UNDER SECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE,**
*Defendants-Appellees*

---

2026-1167

---

Appeal from the United States District Court for the Eastern District of Texas in No. 4:25-cv-00423-JCB-JDL, Judge Campbell J. Barker.

---

Decided: May 12, 2026

---

ASHLESHA NESARIKAR, Plano, TX, pro se.

ANIKA NESARIKAR, Plano, TX, pro se.

ABHIJIT R. NESARIKAR, Plano, TX, pro se.

PHILIP CHARLES STERNHELL, Civil Division, Commercial Litigation Branch, United States Department of Justice, Washington, DC, for defendants-appellees. Also represented by SCOTT DAVID BOLDEN, BRETT SHUMATE.

---

Before TARANTO, HUGHES, and CUNNINGHAM, *Circuit Judges*.

PER CURIAM.

Ashlesha, Anika, and Abhijit Nesarikar are named inventors on U.S. Patent Application No. 18/069,288 and at least five other applications filed earlier. When the Nesarikars filed the ’288 application in late 2022, they certified that they qualified as a “micro entity” under 35 U.S.C. § 123 and paid only the discounted application fees that come with such status. Micro-entity status is available only to an applicant who has not been named as an inventor on more than four earlier applications, but not counted against that limit are applications that the applicant is obligated to assign based on prior employment. *See* 35 U.S.C. § 123(a)–(b).

The Patent and Trademark Office informed the Nesarikars that their micro-entity certification appeared to be erroneous because they were named on more than four previous applications. The Nesarikars responded that the certification was correct because they were obligated to assign the earlier applications, and also the ’288 application itself, as a result of prior employment. But they did not provide a copy, or even quote the language, of the alleged obligation, and the Office refused to accept their representations as sufficient for micro-entity status for the ’288 application. The Office ceased examining the ’288 application until the correct fees were paid. The Nesarikars did not pay the requested fees, and the application became abandoned.

The Nesarikars then brought suit in the U.S. District Court for the Eastern District of Texas against the Office, challenging the denial of micro-entity status for the ’288 application, invoking the Administrative Procedure Act as one cause of action, and seeking injunctive relief. They attached to the complaint their statements to the Office that they were obligated to assign the ’288 application as a result of previous employment. The Office moved to dismiss for lack of subject-matter jurisdiction, arguing that the Nesarikars’ assignment-obligation representations meant they had not shown the injury necessary to establish their Article III standing to maintain the suit. The court agreed with the Office and dismissed the complaint without prejudice. *Nesarikar v. United States Patent and Trademark Office*, No. 4:25-cv-00423, 2025 WL 2795060 (E.D. Tex. Oct. 1, 2025) (*Dismissal*). The Nesarikars appeal, and we now affirm.

## I

### A

We recite the dispositive facts from the allegations in the Nesarikars’ complaint and attached exhibits. The Nesarikars are the named inventors on four patent applications filed between March 2018 and September 2022. *See* Appx.[1] 30–31; *see also* Appx. 170–71. On December 21, 2022, they first filed U.S. Patent Application No. 18/069,263 and then filed the ’288 application, making the ’263 application at least the fifth application filed prior to the ’288 application naming the Nesarikars as inventors. *See* Appx. 29–31. In connection with the ’288 application, the Nesarikars certified to the Office that they were entitled to micro-entity status under 35 U.S.C. § 123 and paid

---

[1] “Appx.” refers to the appendix submitted with the Nesarikars’ opening brief.

the corresponding reduced application fees. Appx. 9–10, 22.

Section 123 provides in relevant part:

> (a) . . . "[M]icro entity" means an applicant who makes a certification that the applicant—
>
> . . .
>
> (2) has not been named as an inventor on more than 4 previously filed patent applications . . . .
>
> . . .
>
> (b) An applicant is not considered to be named on a previously filed application . . . if the applicant has assigned, or is under an obligation by contract or law to assign, all ownership rights in the application as a result of the applicant's previous employment.

35 U.S.C. § 123. The Leahy-Smith America Invents Act mandated a 75% reduction in certain application fees for micro-entity applicants, Pub. L. No. 112-29, § 10(b), 125 Stat. 284, 316–17 (2011), a discount later changed to 80%, *see* Unleashing American Innovators Act of 2022, Pub. L. No. 117-328, Div. W, § 107(a)(2), 136 Stat. 5518, 5521; *see also* Appx. 35 (fees schedule).

In April 2024, the Office sent the Nesarikars a notice of payment deficiency in connection with the '288 application, stating that their micro-entity certification appeared to be in error because they were named as inventors on at least the five earlier applications just discussed, and requesting that they either pay additional fees or provide "any necessary evidence" of their entitlement to micro-entity status. Appx. 9–11, 25–27. The notice set a two-month deadline for responding. Appx. 27. In May 2024, the Nesarikars filed a response, in which they invoked the 35 U.S.C. § 123(b) assignment-obligation exception, stating that "each of the inventors of . . . provisional patent

application No. 63265932 . . . was obligated to assign the rights in th[at application] and its child applications as a result of each of the inventors' previous employment . . . [including] 18069288 [*i.e.*, the '288 application]." Appx. 48, 63–64; *see* Appx. 49–62. The Nesarikars provided no other information about their alleged assignment obligation.

In August 2024, the Office sent the Nesarikars a letter stating that the May 2024 response was "insufficient" because it did not "provide an explanation *and the necessary evidence* to demonstrate [ ] entitlement to th[e § 123(b)] exception." Appx. 28–32 (emphasis added). The letter adds that any additional response would be considered late if not accompanied by a fee for an extension of time to reply to the April 2024 deficiency notice and, even with an extension, was due within seven months of the April 2024 notice. *See* Appx. 31–32; Appx. 27. The Nesarikars submitted a follow-up response in September 2024. Appx. 69–71. They insisted that "no extension of time [wa]s required," and, though they requested additional "noti[ce]" if any fees for an extension of time were necessary to prevent abandonment, they did not pay such fees. Appx. 71. While they now provided the names of the former employers to whom they were allegedly obligated to assign their rights in the '288 application and several other applications, they did not provide the assignments themselves or any other evidence supporting their alleged assignment obligation. Appx. 70.

In October 2024, the Office sent another letter to the Nesarikars, stating that their September filing was late and that, in any event, it still failed to provide "**evidence** of employment-related contractual or legal obligations to assign." Appx. 34–38 (emphasis in original). The Office further stated that a search of its own records revealed only one recorded assignment of any of the applications in question, and the assignee was neither of the identified former employers of the Nesarikars. Appx. 37. It again solicited a sufficient and timely response, warning that even with

payment for an extension of time, no further response would be accepted after November 22, 2024, and that failure to pay the application-fee deficiency or prove entitlement to micro-entity status by that time would result in treatment of the '288 application as abandoned. Appx. 37–38. On November 19, 2024, the Nesarikars submitted a third response, again not accompanied by either a payment for an extension of time or evidence of the assignment obligation. Appx. 39–43. In February 2025, the Office sent a notice of abandonment of the '288 application. Appx. 81–82.

B

In April 2025, the Nesarikars, proceeding pro se, filed suit in the Eastern District of Texas against the Office and its (then-Acting) Director. Appx. 8. Their complaint alleges that the Office, in denying micro-entity status to the Nesarikars for the '288 application, arbitrarily and capriciously failed to comply with its own micro-entity certification procedures and improperly altered those procedures. Appx. 9–10; *e.g.*, Appx. 20–21. It further alleges violations of the Paperwork Reduction Act, 44 U.S.C. § 3512. Appx. 13. Finally, the complaint contends that the Nesarikars exhausted the administrative remedies available to them and seeks an injunction that, *e.g.*, compels the Office to recognize their micro-entity status. Appx. 13, 22–23. Attached to the complaint are the communications between the Nesarikars and the Office just described, including their repeated representations about their obligation to assign the '288 application. Appx. 24–96. Neither in the complaint nor in any of the attached exhibits do the Nesarikars allege that they currently own the '288 application. The same month, the Nesarikars moved for a preliminary injunction, attaching documents from Office proceedings but no additional evidence of assignment obligations. Appx. 97–137.

In June 2025, the Office moved to dismiss the complaint under Federal Rule of Civil Procedure (Rule) 12(b)(1). Appx. 199–219. The Office argued that the district court lacked subject-matter jurisdiction because the Nesarikars' own complaint, including their statements that they were obligated to assign their rights in the '288 application, indicated (in the absence of other information) that they lacked Article III standing to sue, and the Office also argued that the Nesarikars had not sufficiently pleaded exhaustion of administrative remedies. Appx. 212–17. The Nesarikars opposed dismissal, contending that (1) title to a patent application is presumed to be in the inventors, (2) the Office had not identified an "alternate owner," and (3) "all applications which [the Nesarikars] identified as obligated to assign rights in are currently owned by [the Nesarikars]." Appx. 329–31. They did not produce the assignments themselves. *See id.*

The district court referred the dismissal and preliminary-injunction motions to a magistrate judge. *See* Appx. 416–23. The magistrate judge, in August 2025, recommended that the court grant the Rule 12(b)(1) motion on standing grounds, writing that "[i]t is unclear from the [ ] complaint and the parties' briefing whether [the Nesarikars] have any remaining ownership interest in the '288 [application]." Appx. 421. The magistrate judge declined to reach the exhaustion ground and further recommended that the preliminary injunction motion be denied. Appx. 422–23, 422 n.4. The Nesarikars objected. Appx. 424–33.

In October 2025, the district court, on its own review of the record, also concluded that the complaint must be dismissed for lack of subject-matter jurisdiction. *Dismissal*, at *1–3. The court ruled that the Nesarikars had "failed to carry their burden that they maintained any . . . rights to the '288 application." *Id.* at *2. According to the district court, the Nesarikars' assertions in opposing dismissal that they owned the '288 application were not enough to show an injury in fact, and they did "not provide, plead, or

include anywhere in their various filings" the contract language governing the undisputed obligation to assign it. *Id.* The district court thus accepted the magistrate judge's findings and recommendations and dismissed the complaint without prejudice, and at the same time the court denied the motion for a preliminary injunction. *Id.* at *2–3.

The Nesarikars timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

II

The Nesarikars principally argue that the district court legally erred by refusing to take as true their allegation that, notwithstanding their alleged obligation to assign the '288 application, they currently own it. They also contend that the district court improperly required evidence at the pleading stage, ignored the presumption that a patent application's named inventors own the application, and disregarded ownership of other patent applications or other interests (such as reputational interests) that support their standing. We reject all of these challenges.

"Article III standing determinations are reviewed de novo." *Intellectual Tech LLC v. Zebra Technologies Corp.*, 101 F.4th 807, 813 (Fed. Cir. 2024) (reviewing decision of a district court in Texas). To the extent that patent-law issues are involved in the standing determination, as in other contexts, we apply our own law, not that of the regional circuit. *See University of South Florida Research Foundation, Inc. v. Fujifilm Medical Systems U.S.A., Inc.*, 19 F.4th 1315, 1323–24 (Fed. Cir. 2021).

"When standing is challenged on the basis of the pleadings, we must accept as true all material allegations of the complaint and construe the complaint in favor of the complaining party." *Association of American Physicians & Surgeons, Inc. v. Texas Medical Board*, 627 F.3d 547, 550 (5th Cir. 2010) (cleaned up). The party asserting

jurisdiction has the burden of proof on a Rule 12(b)(1) motion to dismiss, and to overcome such a motion must "clearly allege facts demonstrating," as most relevant here, a cognizable injury. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338–39 (2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975) (cleaned up)); *see Life Partners Inc. v. United States*, 650 F.3d 1026, 1029 (5th Cir. 2011). "To establish injury in fact," a plaintiff's allegations "must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo,* 578 U.S. at 339 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

The Nesarikars, who argue that they sufficiently alleged ownership of the '288 application, have not met their burden at the dismissal stage. The exhibits to the Nesarikars' complaint are considered part of the complaint. *See* Fed. R. Civ. P. 10(c); *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007); *United States ex rel. Riley v. St. Luke's Episcopal Hospital*, 355 F.3d 370, 375 (5th Cir. 2004). The Nesarikars' complaint and exhibits, Appx. 8–23 (complaint); Appx. 24–96 (exhibits), contain repeated assertions by the Nesarikars that they were obligated to assign their rights in the '288 application, *see* Appx. 48, 70, 42–43. Those representations are insufficient to "clearly" support the Nesarikars' ownership of the '288 application so as to prevent a dismissal without prejudice. *Spokeo*, 578 U.S. at 338. And the Nesarikars in this court do not meaningfully make an argument about a concrete financial interest apart from ownership, which in any event would meet a pleading objection very similar to the one regarding ownership.

The Nesarikars have not shown that the arguments they made in opposing the government's motion are a substitute for the required pleading of facts in a complaint and its attachments. Even if such motion argument could ever be such a substitute, even for purposes of a without-

prejudice dismissal (which allows refiling), it is not so here. The Nesarikars have made only conclusory statements about the nature of the supposed assignment obligation—unsupported by any evidence and not even purporting to identify the assignment's terms, the assignee, or when the agreement takes effect or was executed. *See* Appx. 329–31 (asserting merely "current ownership" of '288 application); Appx. 403 (similar). Such statements are the kind of conclusory assertions that are properly viewed as insufficient. *See In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 210 (5th Cir. 2010) ("We do not accept as true 'conclusory allegations . . . or legal conclusions.'"); *compare Omni MedSci, Inc. v. Apple Inc.*, 7 F.4th 1148, 1151–55 (Fed. Cir. 2021) (affirming denial of Rule 12(b)(1) motion based on asserted lack of standing where party rebutted charge that it did not own patent with reference to specific assignment language).

The district court did not impose an inappropriately high burden of proof. Necessary at the pleading stage are plausible allegations that support the exercise of jurisdiction. *See Spokeo*, 578 U.S. at 338–39; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *see Lujan*, 504 U.S. at 560; *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (applying *Twombly* plausibility pleading standard in Rule 12(b)(1) context). The actions of and communications with the Office that are the subject of this lawsuit indicate that the Nesarikars have set themselves the challenge of asserting that, for standing purposes, they have a sufficient interest in the '288 application despite an obligation to assign, while not defeating their claims about assignments of earlier applications on which their 35 U.S.C. § 123(b) position depends. In these circumstances, the district court rightly insisted on more specifics to support standing to invoke Article III jurisdiction.

The Nesarikars argue that they were entitled to rely on a legal presumption that patent applications are owned by the named inventors, but such a presumption does not

require a different result here. The Supreme Court has "recognized that *unless there is an agreement to the contrary*, an employer does not have rights in an invention" of an employee. *Board of Trustees v. Roche Molecular Systems Inc.*, 563 U.S. 776, 785–86 (2011) (emphasis added). The "general rule" that named inventors, rather than their employers, own their inventions does not operate in this case, where the Nesarikars represented, consistent with their effort to secure reduced application fees in the Office, that an agreement "contrary" to that general rule existed. *See id.* at 786; Appx. 48, 70, 42–43.

The Nesarikars contend that ownership interests in other applications, or interests other than ownership, such as reputational interests, support a determination that they have standing. These arguments are unpersuasive as grounds for overturning the dismissal without prejudice. The complaint refers clearly only to the '288 application, so it was not error for the district court to refuse to consider whether the Nesarikars have standing to bring claims not raised related to applications not mentioned until after the Office moved to dismiss. *See* Appx. 9–10, 329, 430. The Nesarikars' asserted reputational interests and other non-ownership interests also do not support standing. Such a theory of standing was not clearly articulated until after the magistrate judge's report and recommendation, despite the fact that the Nesarikars filed a sur-reply during the Rule 12(b)(1) briefing, *see* Appx. 329–31, 402–04, so we treat it as forfeited. We observe, in addition, that although we have recognized that a concrete, particularized reputational interest (with employment or other economic consequences) can support standing of an inventor non-owner seeking correction of inventorship, *see Shukh v. Seagate Technologies, LLC*, 803 F.3d 659, 663 (Fed. Cir. 2015), the Nesarikars have not alleged such concrete, particularized reputational interests or identified authority covering the different circumstances here.

Aside from their arguments about their Administrative Procedure Act claims, the Nesarikars appear to contend that their complaint sufficiently alleges Article III standing for claims under the Privacy Act, 5 U.S.C. § 552a, and the Paperwork Reduction Act, 44 U.S.C. § 3512. We agree with the district court that no Privacy Act claim is to be found in the complaint, even if it is construed liberally, so the question of Article III standing to assert the claim does not arise here. The Paperwork Reduction Act claim invokes 44 U.S.C. § 3512, which provides that "no person shall be subject to any penalty for failing to comply with a [covered] collection of information." There are good reasons to doubt that a private right of action exists under that provision, *see Dismissal*, at *3; *Sutton v. Providence St. Joseph Medical Center*, 192 F.3d 826, 844 (9th Cir. 1999), and that the Act applies at all to the Notice of Payment Deficiency in this matter, *see* Appx. 216–17 (citing *Hyatt v. Office of Management and Budget*, 998 F.3d 423, 426 (9th Cir. 2021)). But we need not resolve those issues. Even this claim depends, for a concrete Article III interest, on the Nesarikars having such an interest in the '288 application (as they were subject to no independent "penalty"), but for the reasons we have set out, we agree with the district court that Nesarikars have no such interest in the '288 application.

Finally, the Nesarikars make sundry allegations that the district court or the magistrate judge ignored certain parts of the record and inadequately addressed the Nesarikars' arguments. We do not agree, but, regardless, these allegations are of no moment because on our independent and *de novo* review, we reach the same result as the district court: The Nesarikars' complaint inadequately alleges their Article III standing to sue, so dismissal was warranted.

III

We have considered the Nesarikars' remaining arguments and find them unpersuasive. For the foregoing reasons, we affirm the judgment of the district court.

The parties shall bear their own costs.

**AFFIRMED**